PAUL L. GALE (SBN 065873)
paul.gale@troutmansanders.com
PETER N. VILLAR (SBN 204038)
peter.villar@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, California 92614-2545
Telephone: (949) 622-2700
Facsimile: (949) 769-2052

JOHN M. BOWLER (*pro hac vice*)
john.bowler@troutmansanders.com
MICHAEL D. HOBBS (*pro hac vice*)
michael.hobbs@troutmansanders.com
LINDSAY MITCHELL HENNER (*pro hac vice*)
lindsay.henner@troutmansanders.com
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 5200
Atlanta, Georgia 30308-2216

*Attorneys for Defendant-Counterclaimant*
*Empire Distribution Inc.*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| TWENTIETH CENTURY FOX TELEVISION, a division of TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware company, and FOX BROADCASTING COMPANY, a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>EMPIRE DISTRIBUTION, INC., a California corporation,<br><br>        Defendant.<br><br>*AND RELATED COUNTERCLAIM.* | Case No. 2:15-cv-02158-PA-FFM<br><br>Hon. Percy Anderson<br><br>**DISCOVERY MATTER**<br>[BEFORE HON. FREDERICK F. MUMM]<br><br>**JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date:     January 5, 2016<br>Time:     10:00 a.m.<br>Place:    Courtroom 580<br><br>Discovery Cutoff:        1/25/16<br>Pretrial Conference:     3/4/16<br>Trial:                   4/5/16 |

27548066

# **TABLE OF CONTENTS**

**Page**

I.     EMPIRE'S INTRODUCTORY STATEMENT ................................... 1

II.    FOX'S INTRODUCTORY STATEMENT .......................................... 3

III.   ISSUES IN DISPUTE ................................................................... 6

A.    Issue in Dispute No. 1 ........................................................ 6

     1.    Empire's Request for Production No. 1 ..................... 6

     2.    Fox's Response to Request for Production No. 1 ...... 7

     3.    Empire's Contentions ................................................ 7

     4.    Fox's Contentions ................................................... 10

B.    Issue in Dispute No. 2 ...................................................... 14

     1.    Empire's Request for Production No. 2 ................... 14

     2.    Fox's Response to Request for Production No. 2 .... 14

     3.    Empire's Contentions .............................................. 15

     4.    Fox's Contentions ................................................... 17

C.    Issue in Dispute No. 3 ...................................................... 17

     1.    Empire's Request for Production No. 8 ................... 17

     2.    Fox's Response to Request for Production No.8 ..... 17

     3.    Empire's Contentions .............................................. 18

     4.    Fox's Contentions ................................................... 19

D.    Issue in Dispute No. 4 ...................................................... 21

     1.    Empire's Request for Production No. 14: ................ 21

     2.    Fox's Response to Request for Production No. 14 .. 21

     3.    Empire's Contentions .............................................. 21

     4.    Fox's Contentions ................................................... 24

E.    Issue in Dispute No. 5 ...................................................... 24

     1.    Empire's Request for Production No. 18 ................. 24

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

## TABLE OF CONTENTS
**(continued)**

**Page**

2.    Fox's Response to Request for Production No. 18 .................. 24

3.    Empire's Contentions ............................................................ 24

4.    Fox's Contentions ................................................................. 26

F.    Issue in Dispute No. 6 .......................................................... 27

1.    Fox's General Objections ...................................................... 27

2.    Empire's Contentions ............................................................ 32

3.    Fox's Contentions ................................................................. 33

G.    Issue in Dispute No. 7 .......................................................... 34

Fox's Cut-Off Date For Collection/Production Of Documents.......... 34

1.    Empire's Contentions ............................................................ 34

2.    Fox's Contentions ................................................................. 36

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

27548066

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

## I.      EMPIRE'S INTRODUCTORY STATEMENT

Empire Distribution, Inc. ("Empire") is a prominent record label and music distribution company that continuously since 2010 has released albums nationally and globally under the trademarks EMPIRE™, EMPIRE DISTRIBUTION™ and EMPIRE RECORDINGS™.  Over those past five years, Empire has become one of the largest producers and distributors of hip hop, rap and R&B music in the country.  It has had numerous Billboard charting releases from well-recognized artists under its EMPIRE label, including multiple platinum and gold records.  The EMPIRE mark has been used in broad advertising and promotional campaigns both online and offline.  It is a recognized symbol for quality music and music services and is well known among the relevant consuming public as identifying Empire's goods and services.

Earlier this year, Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively "Fox") created the EMPIRE television series (the "*EMPIRE SERIES*") that portrays a hip hop, rap and R&B music record label, Empire Enterprises.  It uses a virtually identical EMPIRE mark for the show and related music.  Fox has publicly stated that the show is premised on individuals, entities and events from the real-world music industry.  Fox's Senior Vice-President of TV Music stated "[w]e want **to make the world of 'Empire' almost feel like a real music-breathing entity."** Fox hired super producer Timothy "Timbaland" Mosley to craft the music for the series and has famous musicians appear as guest stars in each episode to perform music featured on the show including, for example, Ne-Yo, Gladys Knight, Estelle, Mary J. Blige, Snoop Dogg, Patti LaBelle, Jennifer Hudson, and Pitbull.

While Fox tries to justify its trademark infringement as a fictional "expressive work," there is nothing fictional or expressive about Fox's real world music production and distribution operations.  Fox advertises, distributes and sells the music featured on the show under the EMPIRE banner (the "*EMPIRE SERIES*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  *MUSIC*").  Because the music shares the same search terms and genres as Empire's

2  music, the albums and songs have been positioned in close proximity in physical

3  record stores and online stores such as iTunes, Google Play, Amazon.com, and

4  Spotify.  Like other record labels, Fox and its affiliates enter into contracts with

5  musicians, produce and release music, and promote the artists and music at radio

6  stations, live performances, events, record stores and other venues.  Fox, or its

7  affiliate Sony Music Entertainment, also has an online account with Mediabase, a

8  music industry service that monitors radio station airplay in the U.S. and Canadian

9  markets and provides in-depth analytical tools for radio/record industry

10  professionals.

11  Fox preemptively filed its Complaint for Declaratory Relief in this action

12  seeking to "protect its [alleged] intellectual property rights" in and to the Empire

13  series and music therefrom.  (Complaint ¶¶ 1, 3.)  Empire filed Counterclaims for

14  trademark infringement, unfair competition, and false advertising under federal and

15  state laws.  This is a textbook case of trademark infringement, in that the parties'

16  EMPIRE marks are virtually identical, they sell the same products to the same

17  customers, and Empire began using its trademarks over five years before the

18  broadcast of Fox's first television show.

19  Empire served its First Set of Requests for Production of Documents on Fox

20  (containing a total of 59 requests) on July 17, 2015 more than four months ago.

21  (Ex. A.)  The discovery requests were designed to elicit information regarding

22  Fox's conception and use of the EMPIRE mark, its creation and development of the

23  Empire television series and music produced in connection therewith, the litany of

24  products and services it has marketed and sold in connection with the EMPIRE

25  mark, and profits generated therefrom.  Fox asserted a laundry list of boilerplate

26  general and specific objections to each request and refused to produce numerous

27  categories of documents that are highly relevant to Fox's claims, Empire's

28  counterclaims and the issues in this case.  (Ex. B.)  Fox also imposed arbitrary date

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

1   restrictions to further reduce the scope of its production of documents.  For

2   example, Fox has refused to produce *any* documents created after the date that

3   Empire sent its first pre-suit cease and desist letter to Fox on February 16, 2015.

4   Fox's pre-litigation discovery cut-off date would arbitrarily exclude from

5   production numerous documents even if they are admittedly relevant to the claims,

6   issues, and damages to the case.  In the intervening nine months since the demand

7   letter, Fox has embarked on Season 2 of the Empire series and widely expanded and

8   leveraged its Empire brand and infringement, including into multiple marketing,

9   sales, and musical opportunities and properties, which Fox would wrongfully

10   withhold from Empire and the trier of fact.

11         Empire sent its initial meet and confer letter to counsel for Fox on September

12   25, 2015.  (Ex. C.)  The parties participated in the initial Rule 37-1 Conference on

13   October 5, 2015 and, since that time, have had extensive meet and confer

14   discussions by phone and in writing.  In an effort to compromise, in virtually every

15   instance, Empire agreed to significantly limit the scope of the requests.  Despite

16   Empire's willingness to limit the scope of its requests, Fox still refuses to produce

17   documents responsive to many requests, based on unreasonable claims of

18   "relevance," "burden," or "privacy rights" despite the comprehensive Protective

19   Order Concerning Confidential Information issued by the Court in this case on

20   September 24, 2015.  (Ex. D.)

21         The discovery deadline in this case is January 25, 2016 and trial is set for

22   April 5, 2016, but Empire has yet to receive a single document from Fox.  A copy

23   of the Court's Scheduling Order issued July 23, 2015 is attached as Ex. E.

24   **II.    FOX'S INTRODUCTORY STATEMENT**

25         This motion, like defendant's underlying claims, lacks merit.  Both were

26   brought for one purpose only—to try to force a monetary "settlement" from Fox.

27   The motion should be denied for what it is, a premature and meritless attempt to

28   increase Fox's litigation expenses for settlement purposes.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Plaintiffs Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively, "Fox") created, produce, and distribute the hit musical dramatic television series *Empire.* The show tells the fictional story of a feuding entertainment-industry family. After rapper and drug dealer turned music mogul Lucious Lyon is diagnosed with a fatal disease, viewers watch his ex-wife, Cookie, and their three sons fight for control over Lucious' powerhouse music and entertainment company. This company is fittingly called Empire Enterprises, as it is a veritable—and fantastical—conglomerate based in New York City.

The show is a massive hit, garnering widespread attention, critical acclaim, and unprecedented ratings success. The original music featured on the show, which is produced by Grammy Award-winning producer Timothy "Timbaland" Mosley, has enjoyed similar success. Through Columbia Records, Fox releases songs following the broadcast of each new episode and also released an *Empire* compilation soundtrack (collectively, the "Soundtrack Music"). The album, *Empire: Original Soundtrack from Season 1*, debuted as the number-one album on the Billboard 200 chart for the week of March 28, 2015.

Fox commenced this action after defendant sought to leverage *Empire*'s success for its own financial gain, demanding that Fox pay it millions of dollars to continue to use the word "Empire." Defendant's motion repeatedly claims that the marks at issue are "virtually identical." *See supra* at 1:16-17, 2:16. They are not *See* Dkt. 1 ¶¶ 17, 25.




In addition to lacking any factual basis, defendant's claims are contrary to law. Fox's use of the word "Empire" for the title of the show and the Soundtrack

Music is fully protected by the First Amendment.  Fox is susceptible to claims of trademark infringement for these expressive works only if its use of "Empire": (1) has no artistic relevance to the underlying works; or (2) explicitly misleads consumers as to the source of the works.  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).[1]  No amount of discovery can save defendant from this defense.  *See, e.g.*, *Brown*, 724 F.3d 1235, 1247-48 (9th Cir. 2013).

Based on its meritless allegations, defendant brings this motion seeking to impose, without justification, punitive discovery burdens on Fox.  Underscoring its true motives, defendant terminated the parties' ongoing meet and confer discussions without warning so that it could serve the instant stipulation the evening before the court-ordered mediation.  Lens Dec., Ex. H, p. 165.  Discovery motions should not be served for strategic purposes or to try to extract settlement.  Fox respectfully requests that the motion be denied in full as premature.

Defendant reveals its efforts to manufacture controversy and impose punitive burdens on Fox throughout its motion:

- Defendant claims that Fox is withholding "highly relevant" documents, when the reality is that Fox has already agreed to produce all requested documents with any conceivable relevance to the underlying dispute.  In order to meet its discovery obligations to these requests, Fox has had a team of 10 attorneys reviewing documents full-time for the last two months, at significant expense.  Lens

---

[1] As discussed in more detail below, to qualify for protection under the first prong, the level of artistic relevance must only be "above zero."  *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).  "Empire" reverberates the show's central themes as it is about a family living in New York City, the "Empire State," fighting—literally and figuratively—over an "Empire," namely their company, appropriately titled Empire Enterprises.  With respect to the second prong, use of the mark is not sufficient; rather, there must be some affirmative statement of sponsorship or affiliation.  *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245-48 (9th Cir. 2013).  Far from making any explicit misstatements, for obvious reasons, Fox consistently brands Empire as its own.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

27548066

- 5 -

Dec. ¶ 14.  Defendant now asks the Court to more than double this burden by producing irrelevant documents.  For example, defendant asks the Court to order Fox to produce all of its creative and development files for the show, even though these documents—such as scripts—have nothing to do with the trademarks at issue.

- Defendant complains that it has received no documents from Fox but does not inform the Court that defendant too has not produced any documents.  Nor does defendant reveal that Fox proposed—back on November 18—that the parties complete their productions on December 3 and that defendant took 12 days to respond to this proposal.  Lens Dec., Ex. K, p. 188; Ex. J, p. 186.

- Defendant repeatedly mischaracterizes Fox's position.  Defendant claims, for instance, that "Fox has refused to produce *any* documents created after the date that Empire [Distribution] sent its first pre-suit cease and desist letter to Fox on February 16, 2015," *supra* at 3:2-3.  This is patently false.  As defendant well knows, Fox has agreed to produce documents responsive to all requests through the date of the complaint as well as 12 categories of documents without regard to a cut off.  Lens Dec., Ex. G, p. 157-58.

- Defendant asks this Court to undo all of the parties' progress during their meet-and-confer efforts.  As defendant admits, it has agreed to substantially narrow most of its requests.  *See supra* at 3:14-15.  Notwithstanding, defendant asks this Court to order Fox to produce documents responsive to its original requests— not the requests as narrowed through the meet-and-confer process.  To the extent that the Court orders the production of any additional documents, which it should not, Fox respectfully requests that it does so with respect to narrowed requests.

## III.   ISSUES IN DISPUTE

### A.   Issue in Dispute No. 1

#### 1.   Empire's Request for Production No. 1

All DOCUMENTS reflecting, referring or relating to FOX's creation and development of the *EMPIRE SERIES,* from the time the series was first conceived

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

through the date of the first pilot episode on January 7, 2015, including, without limitation, any notes, drafts, memos, treatments, scripts, scriptments, synopsis, outlines, pitches or COMMUNICATIONS relating to the concepts, themes, plots, premises, topics and/or characters of the series.

### 2.   Fox's Response to Request for Production No. 1

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to Fox's creation and development of the *Empire* series, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "the time the series was first conceived;" (c) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; and (d) seeks documents outside Fox's possession, custody, and control. Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents that reflect, refer, or relate to the use of the mark "Empire" in connection with Fox's creation and development of the *Empire* series from the time Fox learned of the series that became *Empire* through January 7, 2015, if any such documents are within Fox's possession, custody, or control.

### 3.   Empire's Contentions

A party is entitled to obtain information and documents that are relevant to any party's claim or defense or the "subject matter" of the case, which is broadly interpreted to include any information that might reasonably assist a party in evaluating the case, preparing for trial or facilitating settlement.  FRCP 26(b)(1); *Hickman v. Taylor*, 329 U.S. 495, 506-507 (1947)("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into facts underlying his opponent's case."); *Goodrich Corp. v. Emhart Indus.*, NO. EDCV

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

- 7 -

27548066

04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 25160, *10-11 (C.D. Cal. Oct. 6, 2005) ("Relevance is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party . . . A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of any party.").

Fox improperly limits its response to "documents that reflect, refer, or relate to the use of the mark 'Empire'" in connection with Fox's creation and development of the *EMPIRE SERIES* from the time of conception of the series that became *Empire* through January 7, 2015. But Fox's "use" of the mark 'Empire' is not the only issue of relevance in this case. The request seeks information regarding the origin of Fox's *EMPIRE SERIES* including, but not limited to, whether Fox intended to portray individuals, entities and events from the real-world music industry (including but not limited to any individual, entity or event relating to Empire), and whether Fox intended to use the *EMPIRE SERIES* to promote and sell music in competition with other record labels including Empire. Moreover, the parties' respective claims and defenses in this trademark case have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents for this limited period of time (presumably less than a year) from its own files. *See A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper — especially when a party fails to submit any evidentiary declarations supporting such objections."); *Zuniga v. Western Apts.*, 2014 U.S. Dist. LEXIS 83135, 6-7 (D. Cal. March 25, 2014) (overruling "unduly burdensome and oppressive" objection where the objections were "conclusory and provide[ed] no information to support a finding that provision of the requested discovery would unduly burden" the party resisting discovery).

While Empire believes that Request No. 1 is appropriate as crafted, during the meet and confer process Empire proposed significantly narrowing the scope of the Request to include the following categories within the limited timeframe set forth in the request:  (1) the initial series of communications with Fox (both internal and external) regarding the potential creation/development of the television show that became "Empire"; (2) any treatments, synopses, outlines or other "pitch" materials provided to Fox regarding the creation or development of the show from the creators Lee Daniels or Danny Strong or the executive producers Brian Grazer (Imagine Entertainment), Francie Calfo (Imagine Entertainment) or Ilene Chaiken (Little Chicken Productions); (3) any communications/documents discussing the fictional "Empire" record label and any potential relation to/inspiration from real life individuals, artists, musicians, events, companies or record labels, or any intent to portray a real life record label; (4) any communications/documents regarding the use, production, or sale of music in connection with the Empire series (including but not limited to the use of real musicians/artists/composers in connection with the series); (5)  all documents/communications relating to the origin/use of the name

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

1  "Empire" for the show; and (6) any communications/documents regarding the

2  target audience/markets for the Empire series or music.

3      Unfortunately, Fox refused to produce documents responsive to the Request

4  (even as narrowed) with the exception of certain documents responsive to

5  subcategory 3, 4 and 5 above.  Therefore, Empire had no choice but to seek relief

6  from the Court.  Fox should be compelled to produce all responsive documents

7  without objection.

8          **4.    Fox's Contentions**

9      Request No. 1 seeks all documents relating to the creation and development

10  of the *Empire* television series, prior to the premiere of the show in January 2015.

11  With this Request, defendant seeks all the scripts, treatments, outlines, drafts, notes,

12  *etc*. that went into creating the television show, as well as all communications

13  related thereto.  Essentially, Request No. 1 seeks every scrap of paper about *Empire*

14  prior to its premiere.

15      Defendant admits as much.  Tellingly, defendant argues that the documents

16  are relevant because they relate to the "subject matter" of the dispute.  *See supra* at

17  7:22-25.  Put differently, defendant asks this Court to order the production of

18  documents based on nothing more than the fact that they relate to the *Empire*

19  television show.  But a party cannot obtain discovery, much less the type of

20  burdensome discovery at issue here, simply because it relates to the subject matter

21  of the dispute; were the law otherwise, Fox could seek discovery of any document

22  relating to defendant, full stop.

23      To support its argument, defendant quotes language that has been stricken

24  from the text of Rule 26.  *Id.*  In fact, this language was deleted as a result of reports

25  about litigants "seek[ing] to justify discovery requests that sweep far beyond the

26  claims and defenses of the parties on the ground that they nevertheless have a

27  bearing on the 'subject matter' involved in the action.  *See* Advisory Committee

28  Notes, 2000 Amendments.  Notably, even while this repealed portion of Rule 26

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

27548066                                    - 10 -

1   remained in effect, a court could order discovery regarding the "subject matter" of

2   the dispute *only after a showing of good cause*, which defendant also fails to

3   mention.

4   　　　The trademark allegations in this case cannot come close to supporting such a

5   grossly overbroad and incredibly burdensome request.  Accordingly, Fox attempted

6   to work with defendant to narrow the scope of the request.  At Fox's request,

7   defendant narrowed its request to six categories of information. *See supra* at 9:12-

8   27.

9   　　　As defendant reluctantly admits, but not until the penultimate sentence of its

10   argument section, Fox has agreed to produce documents responsive to many of the

11   requested categories (which stands in contrast to the opening sentence of paragraph

12   two of the section which, incorrectly, states that Fox has agreed to produce only

13   documents relating to the use of the "Empire" mark).  *Compare supra* at 10:3-5

14   with 8:7-10.  As detailed below, Fox has now agreed to produce any document

15   relating to the show's creation and development with any conceivable relevance.

16   　　　1.　　*"The Initial Series of Communications with Fox regarding the*

17   *potential creation/development of the television show that became Empire"*:  As

18   Fox explained, and defendant never disputed, the "initial series" of communications

19   is too amorphous for a document request.  Lens Dec., Ex. G, p. 156.  More

20   fundamentally, defendant has never articulated why it contends such creative and

21   development materials are relevant.  Nor could it, as Fox has already agreed to

22   produce, for example, any documents:  (a) relating to the name of the show; (b)

23   relating to the use of "Empire" mark; (c) relating to the design of the mark; (d)

24   relating to the use of a skyline, if any; (e) relating to Fox's alleged ambition to act

25   as a record label; (f) relating to the potential to derive revenue based on the sale of

26   music; (g) relating to defendant; (h) discussing the fictional company in the show

27   and any relation to/inspiration from real-life individuals, artists, musicians, events,

28   companies, or record labels; and (i) relating to any attempt to portray a real life

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

27548066

- 11 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

record label.[2]  The balance of the creative and development documents are simply not relevant, as evidenced by defendant's inability to identify any such documents in response to Fox's repeated requests.[3]

     2.    *"Any treatments, synopses, outlines or other pitch materials provided to Fox regarding the creation or development of the show from creators Lee Daniels or Danny strong or the executive producers Brian Grazer, Francie Calfo, or Ilene Chaiken"*:  As explained above, Fox has already agreed to produce any such documents with any conceivable relevance to this dispute.

     3.    *"Any communications/documents discussing the fictional "Empire" record label and any potential relation to/inspiration from real life individuals, artists, musicians, events, companies or record labels, or any intent to portray a real life record label"*:  This is moot as Fox has agreed to produce any responsive, non-privileged documents.  Lens Dec., Ex. G, p. 156.

     4.    *"Any communications/documents regarding the use, production, or sale of music in connection with the Empire series (including but not limited to the use of real musicians/artists/composers in connection with the series)"*:  Fox has agreed to produce any responsive, non-privileged documents regarding the sale of music in connection with the *Empire* series, and did so back on October 28.  *Id.*  As

---

[2] Fox will be serving amended responses to reflect the compromises reached during the meet-and-confer process.

[3] Defendant's attempt to compel production of these documents based on Fox's use of the First Amendment defense is misplaced.  The Court need not look any further than the show itself to determine whether the requirements of the First Amendment defense apply: (1) whether Fox's use of the word "Empire" as a title has minimal artistic relevance to the series, and (2) whether Fox misleads its consumers as to the source of the series.  *See Mattel*, 296 F.3d at 902.  Fox's internal creative and development documents have no place in this analysis, as evidenced by the fact that courts routinely grant motions to dismiss on First Amendment grounds.  *See Brown*, 724 F.3d at 1247-48; *VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*, 2015 WL 5000102, at *12-13 (N.D. Cal. Aug. 21, 2015).

27548066

- 12 -

to the balance of the request, which seeks all communications and documents relating to the use and production of music in the show, defendant has separate, and more narrowly-tailored requests on this same subject. *See, e.g.,* Lens Dec., Ex. C, Request Nos. 13, 15, 16 & 17. Defendant should not be permitted to undo the compromises that the parties made through the backdoor of this omnibus request.

5. "*All documents/communications relating to the origin/use of the name "Empire" for the show*": Fox has already agreed to produce documents responsive to this category and did so back on October 5, in response to Request No. 3. Lens Dec., Ex. G, p. 156, 160.

6. "*Any communications/documents regarding the target audience/markets for the Empire series or music*": Fox has already agreed to produce documents sufficient to show the actual audience of the show and consumers of the soundtrack music. Accordingly, Fox asked defendant to explain why it contended that it needed information about the target (*i.e.* intended) audience/market, as opposed to the actual audience/market. *Id.* at 156. But defendant never answered this question, much less informed Fox that it intended to move to compel. Accordingly, this category should be denied.

The burden of requiring Fox to produce all of the underlying creative and development materials for a primetime fictional drama cannot be overstated. An inordinate amount of work goes into the creation and development of a television show. The requested documents would constitute virtually the entire work product of a team of individuals for the better part of a year. There is no basis to impose such a burden on Fox. *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) ("[T]he right of a party to obtain discovery is not unlimited."); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) ("[T]he right to discovery, even plainly relevant discovery, is not limitless.")

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**B.**   <u>Issue in Dispute No. 2</u>

**1.**   **Empire's Request for Production No. 2**

All COMMUNICATIONS between FOX and creators Lee Daniels or Danny Strong, or their agents/representatives, regarding the conception, creation or development of the *EMPIRE SERIES,* from the time the series was first conceived through the date of the first pilot episode on January 7, 2015.

**2.**   **Fox's Response to Request for Production No. 2**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all communications between Fox and creators Lee Daniels or Danny Strong, or their agents/representatives, regarding the conception, creation, or development of the *Empire* series, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "the time the series was first conceived"; (c) seeks the production of information outside of Fox's possession, custody, or control; (d) seeks information that violates the right of privacy of the talent with whom Fox works; and (e) is cumulative and duplicative of Request No. 1. Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged communications between Fox and creators Lee Daniels or Danny Strong, or their known agents/representatives, regarding the use of the mark "Empire" in connection with the conception, creation, or development of the *Empire* series, from the time Fox learned of the series that became *Empire* through January 7, 2015, if any such documents are within Fox's possession, custody, or control.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

27548066

- 14 -

### 3. Empire's Contentions

The issues with respect to Request No. 2 are similar to Request No. 1. Lee Daniels and Danny Strong created the *EMPIRE SERIES* and are executive producers involved in all aspects of the show.

Fox improperly limits its response to "documents that reflect, refer, or relate to the use of the mark 'Empire'" in connection with Fox's creation and development of the *EMPIRE SERIES* from the time of conception of the series that became *Empire* through January 7, 2015. Fox's "use" of the mark 'Empire' is not the only issue of relevance in this case. The request seeks information regarding the origin of Fox's *EMPIRE SERIES* including, but not limited to, whether Fox intended to portray individuals, entities and events from the real-world music industry (including but not limited to any individual, entity or event relating to Empire), and whether Fox intended to use the *EMPIRE SERIES* to promote and sell music in competition with other record labels including Empire. Moreover, the parties' respective claims and defenses in this trademark case have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents for this limited period of time (presumably less than a year) from its own files. *See A. Farber and Partners, Inc.*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  *v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006)  ("[G]eneral or boilerplate

2  objections such as 'overly burdensome and harassing' are improper — especially

3  when a party fails to submit any evidentiary declarations supporting such

4  objections."); *Zuniga v. Western Apts.*, 2014 U.S. Dist. LEXIS 83135, 6-7 (D. Cal.

5  March 25, 2014) (overruling "unduly burdensome and oppressive" objection where

6  the objections were "conclusory and provide[ed] no information to support a

7  finding that provision of the requested discovery would unduly burden" the party

8  resisting discovery).

9  Fox's objection based on "the right of privacy of the talent" is also improper

10  in light of the Protective Order Concerning Confidential Information issued by the

11  Court on September 24, 2015.  *See Paulsen v. Case Corp.*, 168 F.R.D. 285, 289

12  (C.D. Cal. 1996) (finding no privilege for confidential information, and requiring

13  that if a corporation "believes that disclosure of this information might be harmful,

14  it must explain and support its objection…or seek a protective order under Rule

15  26(c), rather than refuse to produce the documents."); *Franco-Gonzalez v. Holder*,

16  2013 U.S. Dist. LEXIS 186499 (C.D. Cal. 2013) (ordering production of

17  information withheld where "[t]he parties have entered into a protective order and

18  defendants have not argued that the protective order currently in place is inadequate

19  to protect the purported privacy rights of their employees").

20  While Empire believes that Request No. 2 is appropriate as crafted, during the

21  meet and confer process Empire proposed significantly narrowing the scope of the

22  Request to include the following categories within the limited timeframe set forth in

23  the request:  (1) the initial series of communications with Fox (both internal and

24  external) regarding the potential creation/development of the television show that

25  became "Empire"; (2) any treatments, synopses, outlines or other "pitch" materials

26  provided to Fox regarding the creation or development of the show from the

27  creators Lee Daniels or Danny Strong or the executive producers Brian Grazer

28  (Imagine Entertainment), Francie Calfo (Imagine Entertainment) or Ilene Chaiken

27548066

- 16 -

(Little Chicken Productions); (3) any communications/documents discussing the fictional "Empire" record label and any potential relation to/inspiration from real life individuals, artists, musicians, events, companies or record labels, or any intent to portray a real life record label; (4) any communications/documents regarding the use, production, or sale of music in connection with the Empire series (including but not limited to the use of real musicians/artists/composers in connection with the series); (5) all documents/communications relating to the origin/use of the name "Empire" for the show; and (6) any communications/documents regarding the target audience/markets for the Empire series or music.

Unfortunately, Fox refused to produce documents responsive to the Request (even as narrowed) with the exception of certain documents responsive to subcategory 3, 4 and 5 above. Therefore, Empire had no choice but to seek relief from the Court. Fox should be compelled to produce all responsive documents without objection.

### 4. Fox's Contentions

Because defendant has "limited" this Request to cover the same six categories of information addressed above in response to Request No. 1, Fox refers the Court to its response above. *See supra* at Section III.A.4.

### C. Issue in Dispute No. 3

#### 1. Empire's Request for Production No. 8

All DOCUMENTS reflecting, referring or relating to FOX's alleged "intellectual property rights in and to the fictional television series *Empire* and the music therefrom, including copyright and trademark rights," as alleged in paragraph 3 of the COMPLAINT.

#### 2. Fox's Response to Request for Production No.8

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   relating to Fox's alleged intellectual property rights in and to the fictional television

2   series *Empire* and the music therefrom, including copyright and trademark rights,

3   without regard to whether such documents are relevant to the issues in this action;

4   (b) seeks the production of documents immune from discovery under the attorney-

5   client privilege or work product doctrine; (c) seeks information otherwise available

6   to the public and the defendant; and (d) is argumentative. Fox will not produce

7   documents responsive to this Request.

8   ### 3.   Empire's Contentions

9        Fox has improperly refused to produce documents responsive to Request No.

10  8 that is narrowly tailored to specific documents that *Fox put at issue in this case*.

11  Paragraph 3 of Fox's Complaint states that Fox "owns the intellectual property

12  rights in and to the fictional series Empire and the music therefrom, including

13  copyright and trademark rights."  (Complaint ¶1.)  Indeed, Fox alleges that it

14  initiated this action to protect those purported rights.  In paragraph 1 of its

15  Complaint, Fox alleges that "Fox brings this action to protect its intellectual

16  property rights in and to its breakout fictional television series *Empire*."

17  (Complaint ¶1.)  This request simply asks Fox to produce documents reflecting,

18  referring or relating to its alleged intellectual property rights as alleged in its own

19  Complaint.

20       Since these are material allegations in Fox's Complaint, they are clearly

21  relevant and discoverable.  FRCP 26(b)(1); *Hickman v. Taylor*, 329 U.S. 495, 506-

22  507 (1947); *Goodrich Corp. v. Emhart Indus.*, NO. EDCV 04-00759-VAP (SSx),

23  2005 U.S. Dist. LEXIS 25160, *10-11 (C.D. Cal. Oct. 6, 2005).  Further, there has

24  been no showing whatsoever by Fox that there is any undue burden on Fox in

25  producing the documents from its own files.  Fox's objection based on "proprietary

26  or confidential business information" is also improper in light of the Court's

27  Protective Order Concerning Confidential Information issued by the Court on

28  September 24, 2015.  *See Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

27548066

- 18 -

1996) (finding no privilege for confidential information, and requiring that if a corporation "believes that disclosure of this information might be harmful, it must explain and support its objection…or seek a protective order under Rule 26(c), rather than refuse to produce the documents."); *Franco-Gonzalez v. Holder*, 2013 U.S. Dist. LEXIS 186499 (C.D. Cal. 2013) (ordering production of information withheld where "[t]he parties have entered into a protective order and defendants have not argued that the protective order currently in place is inadequate to protect the purported privacy rights of their employees").

While this request is narrowly tailored and proper by any standard, during the meet and confer process, Empire proposed limiting the request to trademark rights within the United States (as opposed to all intellectual property rights throughout the world).  However, Fox rejected even that compromise and would agree only to produce documents "sufficient to show" Fox's alleged trademark rights in the United States.  Fox's arbitrary limitation to documents it deems "sufficient to show" its trademark rights is unreasonable.  Remarkably, Fox's counsel asserted that "Fox's trademarks are not at issue in this case" despite the allegations in Fox's Complaint seeking to "protect its intellectual property rights in and to" the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

Since Fox was unwilling to agree to Empire's proposal during the meet and confer process and required Empire to file this motion, Fox should be ordered to produce all documents in its possession, custody or control responsive to the request, as written, without objection.

### 4.     Fox's Contentions

Request No. 8 seeks the production of every document relating to any of Fox's intellectual property rights in *Empire* and the Soundtrack Music, including, for example, all trademark rights (not limited to the mark "Empire") and copyrights.  The issue in this case, however, is whether Fox's use of the word "Empire" infringes on defendant's purported trademark rights.  It is thus

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

1   *defendant's* purported trademark rights that are at issue, not Fox's.  And, of course,

2   neither party's copyrights—or other intellectual property rights for that matter—are

3   implicated.  The motion should be denied as seeking irrelevant information.

4        Defendant's sole proffer of relevance is that Fox refers to its intellectual

5   property rights in the Complaint.  The language from Fox's Complaint is as

6   follows:  "Fox brings this action to protect its intellectual property rights in and to

7   its breakout fictional television series *Empire*."  Dkt. 1 at 2:6-7.  Given the dispute

8   between the parties, and defendant's demand that Fox rename its highly successful

9   television show (or pay millions of dollars), this statement is far from remarkable.

10   It does not somehow place all of Fox's intellectual property rights in *Empire* at

11   issue.  Indeed, defendant cites no authority for the sweeping proposition that a party

12   must produce all documents relating to language plucked from a pleading,

13   regardless of whether the requested documents are relevant to the underlying

14   litigation.  Rather, defendant's citations stand for nothing more than the basic

15   proposition that relevant information is subject to discovery.  *See Hickman*, 329

16   U.S. at 506-07; *Goodrich Corp.*, 2005 U.S. Dist. LEXIS 25160, at *10-11.

17        In an effort to avoid motion practice, Fox agreed to produce documents

18   sufficient to support its statement that it has trademark rights in and to the mark

19   *Empire*, even though these documents too are not relevant.  Lens Dec., Ex. G, p.

20   161.  Defendant never articulated why it requires additional documents.  Rather,

21   defendant has simply repeated the refrain that Fox put such documents "at issue"

22   through its Complaint.

23        Discovery has limits.  *See supra* 13:23-27.  Defendant's attempt to impose

24   punitive discovery obligations on Fox on issues unrelated to the merits of the case

25   is perhaps nowhere more clear than here.

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

### D.   Issue in Dispute No. 4

#### 1.   Empire's Request for Production No. 14:

All COMMUNICATIONS between FOX and the main cast members of the EMPIRE SERIES or their agents/representatives, including, but not limited to, Terrance Howard, Taraji Henson, Trai Byers, Jussie Smollett, Bryshere Gray, Kaitlin Doubleday, Grace Gealey and Malik Yoba, regarding the concept of the series prior to the date of the first pilot episode on January 7, 2015.

#### 2.   Fox's Response to Request for Production No. 14

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all communications between Fox and the main cast members of the *Empire* series, or their agents/representatives, regarding the concept of the series prior to January 7, 2015 without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to who the "main cast members" of the *Empire* series are; (c) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information; (d) seeks the production of information outside of Fox's possession, custody, or control; and (e) seeks information that violates the right of privacy of the talent with whom Fox works. Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged communications between Fox and the main cast members of the *Empire* series, or their known agents/representatives, relating to the use of the mark "Empire" in connection with the *Empire* series, if any such communications are within Fox's possession, custody, or control.

#### 3.   Empire's Contentions

The issues with respect to Request No. 14 are similar to Request Nos. 1 and 2.  Fox improperly limits its response to "documents that reflect, refer, or relate to the use of the mark 'Empire'" in connection with Fox's creation and development

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

of the *EMPIRE SERIES* from the time of conception of the series that became

*Empire* through January 7, 2015.  Fox's "use" of the mark 'Empire" is not the only

issue of relevance in this case.  The request seeks information regarding the origin

of Fox's *EMPIRE SERIES* including, but not limited to, whether Fox intended to

portray individuals, entities and events from the real-world music industry

(including but not limited to any individual, entity or event relating to Empire), and

whether Fox intended to use the *EMPIRE SERIES* to promote and sell music in

competition with other record labels including Empire.  Moreover,  the parties'

respective claims and defenses in this trademark case have put at issue thematic

similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one

hand and Empire on the other hand, overlap between the parties' respective

businesses, overlap between the parties' target markets, and overlap between the

*EMPIRE SERIES* characters, business themes, music, musical artists,

marketing/advertising channels, product line expansion, and distribution channels,

all of which are relevant to determining a likelihood of confusion.

In addition, Fox has injected the issue of a "First Amendment" defense to

trademark infringement and this request seeks documents relevant to issues

including, but not limited to, whether Fox's use of the 'Empire' mark is commercial

and/or misleading.

Further, there has been no showing whatsoever by Fox that there is any

undue burden on Fox in producing the documents for this limited period of time

(presumably less than a year) from its own files.  *See A. Farber and Partners, Inc.

v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006)  ("[G]eneral or boilerplate

objections such as 'overly burdensome and harassing' are improper — especially

when a party fails to submit any evidentiary declarations supporting such

objections."); *Zuniga v. Western Apts.*, 2014 U.S. Dist. LEXIS 83135, 6-7 (D. Cal.

March 25, 2014) (overruling "unduly burdensome and oppressive" objection where

the objections were "conclusory and provide[ed] no information to support a

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

finding that provision of the requested discovery would unduly burden" the party resisting discovery).

Fox's objection based on "the right of privacy of the talent" is also improper in light of the Protective Order Concerning Confidential Information issued by the Court on September 24, 2015. *See Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996) (finding no privilege for confidential information, and requiring that if a corporation "believes that disclosure of this information might be harmful, it must explain and support its objection…or seek a protective order under Rule 26(c), rather than refuse to produce the documents."); *Franco-Gonzalez v. Holder*, 2013 U.S. Dist. LEXIS 186499 (C.D. Cal. 2013) (ordering production of information withheld where "[t]he parties have entered into a protective order and defendants have not argued that the protective order currently in place is inadequate to protect the purported privacy rights of their employees").

While Empire believes that Request No. 14 is appropriate as crafted, during the meet and confer process Empire proposed significantly narrowing the scope of the Request to include the following categories within the limited timeframe set forth in the request:  (1) the initial series of communications with Fox (both internal and external) regarding the potential creation/development of the television show that became "Empire"; (2) any treatments, synopses, outlines or other "pitch" materials provided to Fox regarding the creation or development of the show from the creators Lee Daniels or Danny Strong or the executive producers Brian Grazer (Imagine Entertainment), Francie Calfo (Imagine Entertainment) or Ilene Chaiken (Little Chicken Productions); (3) any communications/documents discussing the fictional "Empire" record label and any potential relation to/inspiration from real life individuals, artists, musicians, events, companies or record labels, or any intent to portray a real life record label; (4) any communications/documents regarding the use, production, or sale of music in connection with the Empire series (including but not limited to the use of real musicians/artists/composers in connection with the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

series); (5) all documents/communications relating to the origin/use of the name "Empire" for the show; and (6) any communications/documents regarding the target audience/markets for the Empire series or music.

Fox refused to produce documents responsive to the Request (even as narrowed) with the exception of certain documents responsive to subcategory 3, 4 and 5 above. Therefore, Empire had no choice but to seek relief from the Court. Fox should be compelled to produce all responsive documents without objection.

### 4. Fox's Contentions

Because defendant has "limited" this Request to cover the same six categories of information addressed above in response to Request Nos. 1 and 2, Fox refers the Court to its response above. *See supra* at Section III.A.4.

### E. <u>Issue in Dispute No. 5</u>

#### 1. Empire's Request for Production No. 18

All DOCUMENTS reflecting, referring or relating to FOX's online account with Mediabase.

#### 2. Fox's Response to Request for Production No. 18

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to Fox's online account with Mediabase, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "Mediabase"; (c) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information; (d) seeks the production of information outside of Fox's possession, custody, or control; and (e) is argumentative. Fox will not produce documents responsive to this Request.

#### 3. Empire's Contentions

Fox has improperly refused to produce any documents responsive to Request No. 18, which seeks documents reflecting, referring or relating to FOX's online

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   account with Mediabase.  Mediabase is an industry service that monitors radio

2   station airplay in the U.S. and Canadian markets and provides in-depth analytical

3   tools for radio/record industry professionals.

4   These documents are extremely relevant to the parties' claims (including

5   damages) and defenses in this case for numerous reasons.  The documents prepared

6   by, sent to, or received from Mediabase are likely to evidence Fox's improper use

7   of the "Empire" trademark in connection with the promotion, distribution and sale

8   of the *EMPIRE SERIES MUSIC*.  Further, the research data and analytical reports

9   prepared by Mediabase will likely evidence the overlap between the parties'

10  respective businesses, overlap between the parties' target markets, and overlap

11  between the music, musical artists, marketing/advertising channels, product line

12  expansion, and distribution channels, all of which are relevant to determining a

13  likelihood of confusion.  Further, information regarding the radio station airplay of

14  the *EMPIRE SERIES MUSIC* is relevant both to the extent of infringement and the

15  amount of damages.  Moreover, as indicated above, one of Fox's primary themes in

16  this case is that the *EMPIRE SERIES* is merely "fictional expressive work"

17  purportedly protected by the First Amendment.  The fact that Fox or its affiliate has

18  an account with Mediabase, like other record labels, undermines Fox's theory of the

19  case.  Since Fox has injected the issue of a "First Amendment" defense to

20  trademark infringement, this Request is even more relevant.

21  In its written response, Fox indicated that "Fox will not produce documents

22  responsive to this Request."  However, during the meet and confer process, Fox

23  took a new and different position with regard to Request No. 18, claiming for the

24  first time that it allegedly did not have any documents responsive to the request.

25  Given Fox's new position, Empire's counsel sought repeatedly to clarify whether

26  Fox was claiming to have no documents because: (1) a Mediabase account did not

27  exist or (2) because the Mediabase account exists but was not technically opened in

28  the name of Fox (i.e., the account was in the name of Sony Music that has been

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

retained by Fox to release the *EMPIRE SERIES MUSIC*).  If the latter is true, Empire contends that Fox should still have to produce the documents under the definition of "FOX" which includes "affiliates and any other person or entity acting on their behalf."  However, in each instance, Fox's counsel <u>refused to clarify</u> its position.

Since Fox's counsel improperly refused to explain the basis of its position during the meet and confer process, Empire had no choice but to file this motion.  To the extent a Mediabase account exists regarding the *EMPIRE SERIES MUSIC* (whether specifically in the name of Fox or in the name of its affiliate Sony Music), Fox should be compelled to produce all documents relating to that account in its possession, custody or control.

### 4.    Fox's Contentions

Defendant's motion is moot and should be denied as such.  Request No. 18 seeks documents "relating to Fox's online account with Mediabase."  Because Fox does not have an account with Mediabase, there are no documents to produce in response to this Request.  Reflecting this, Fox agreed to amend its response to Request No. 18 to confirm this fact.[4]  Lens Dec., Ex. G, p. 157.  Moreover, without defendant even requesting that Fox do so, Fox affirmatively offered to produce any documents relating to Mediabase and *Empire* identified in its search for documents, even though such documents would not be responsive to Request No. 18.  *Id.* at 151.  As Fox has already agreed to do more than the Request even demands, defendant's motion should be denied.[5]

---

[4] Given the argumentative nature of the Request as phrased, *i.e.*, presuming that Fox has an account with Mediabase when this is not true, Fox's original response stated that Fox would not produce documents responsive to this Request.

[5] There is no basis for defendant's complaint that it "had no choice but to file this motion" because Fox purportedly "refused to clarify the basis for its position." Defendant's sole complaint is that Fox refused to answer the following question: "Is it your position that there is no account/agreement with Mediabase relating to

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Defendant's motion does not seek an order requiring Fox to comply with Request No. 18, which Fox has already agreed to do, but rather seeks to have this Court enforce an entirely different request. Defendant asks the Court to compel Fox to produce all documents relating to *any* Mediabase account regarding *Empire* series music regardless of whether the account is in Fox's name. *See supra* at 26:8-11. This is a different request than Request No. 18. Defendant is well aware of this—defendant served an additional request for production on November 12, 2015, one week before serving this motion, seeking the exact same documents defendant seeks here: "All DOCUMENTS in FOX's possession, custody, or control reflecting, referring or relating to accounts with Mediabase regardless of the entity that owns or controls the account." Lens Dec., Ex. E, Request No. 69. In accordance with the Federal Rule of Civil Procedure 34, Fox will respond to this new request by December 14, 2015. But this request is manifestly not currently before the Court.

###    F.   <u>Issue in Dispute No. 6</u>

####       1.   **Fox's General Objections**

In addition to Fox's specific responses and objections to each Request as provided below, Fox makes the following general objections to the Requests:

1.   Fox objects to each and every Request, definition, and instruction that purports to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure or the Local Rules.

---

the Empire series music, or whether there is an account/agreement with Mediabase relating to the Empire series music but in the name of an entity other than Fox (such as Sony Music)?" *See id.* at 151. (Tellingly, defendant's motion changes the phrasing of the actual question asked of Fox, presumably in an attempt to try to clarify the question.) But, as Fox explained, this question presumed something basic about the way Mediabase accounts work, namely that they are specific to an artist or album, which is incorrect. *Id.* After Fox explained this, defendant never responded much less indicated that it disagreed. Rather, a week and a half later, it moved to compel.

- 27 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

2.      Fox objects to each and every Request, definition, and instruction to the extent it contains inaccurate, incomplete, or misleading descriptions of the facts, persons, relationships, events, and pleadings underlying this action. The production of any information shall not constitute Fox's agreement with or acquiescence to any such description.

3.      Fox objects to each and every Request to the extent it seeks information that is neither relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Fox objects to each and every Request to the extent it is vague, ambiguous, unclear, or fails to identify the requested documents with reasonable particularity as required by Federal Rule of Civil Procedure 34. To the extent that a Request requires subjective judgment on the part of Fox as to what information is requested, Fox will produce responsive, non-privileged documents according to its understanding of the Request.

5.      Fox objects to each and every Request to the extent it is overbroad, onerous, and unduly burdensome and, thus, outside the scope of permissible discovery.

6.      Fox objects to each and every Request to the extent it seeks information prior to the time Fox learned of the series that became *Empire* on the grounds that such requests are overbroad, beyond the scope of the allegations, and not reasonably calculated to lead to the discovery of admissible evidence. Fox further objects to each and every Request to the extent it seeks information after the time that defendant sent its initial objection to Fox in February 2014 on the ground that such requests are overbroad, beyond the scope of the allegations, seek information protected by the attorney-client privilege and work product doctrines and not reasonably calculated to lead to the discovery of admissible evidence. Fox will not produce documents outside of this relevant time period.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

1    7.    Fox objects to each and every Request to the extent it seeks

2 information that is a matter of public record, already in the possession of the

3 defendant, or otherwise available to the public and the defendant.

4    8.    Fox objects to each and every Request to the extent it seeks the

5 disclosure of information that is more easily obtainable by deposition.

6    9.    Fox objects to each and every Request to the extent it seeks cumulative

7 or duplicative information.

8    10.   Fox objects to each and every Request to the extent it seeks the

9 production of documents other than in Fox's possession, custody, or control.

10   11.   Fox objects to each and every Request to the extent it seeks the disclosure

11 of information and/or production of documents protected by the attorney-client

12 privilege, the attorney-work product doctrine, the common interest or joint defense

13 privileges, rules and agreements governing privacy or confidentiality, or any other

14 applicable privilege or protection recognized under statute or applicable case law.

15 Inadvertent production by Fox of any information protected by any applicable

16 privilege or protection shall not constitute a waiver of the privilege or protection.

17 Fox objects to each and every Request to the extent it seeks Fox's sensitive,

18 confidential, or proprietary business information. To the extent such documents are

19 responsive, relevant, and not privileged, Fox will provide such documents after the

20 Court enters an appropriate protective order in this case.

21   12.   Fox objects to each and every Request to the extent it seeks

22 information or the production of documents whose disclosure would otherwise be

23 prohibited by applicable law, rule, regulation, or contract obligation.

24   13.   Nothing contained in any response herein shall be deemed an

25 admission, concession, or waiver by Fox as to the validity of any claim or defense

26 asserted by Fox.

27   14.   All objections as to the relevance, authenticity, or admissibility of any

28 documents produced are expressly reserved by Fox.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

15.    To the extent that Fox responds to any of the Requests, it reserves the right to object on any grounds, at any time, to other discovery requests involving or relating to the subject matter of the Requests that Fox has responded to herein.

16.    An objection or an undertaking to produce documents pursuant to a particular Request should not be construed to indicate that responsive documents actually exist.

17.    Fox reserves all objections to the use of these responses. All such objections may be interposed by Fox at the time of trial or as otherwise required by the rules or order of the Court.

18.    Fox objects to each and every Request to the extent it seeks the production of "all" documents in Fox's possession. To the extent that Fox undertakes to produce documents, Fox will conduct a reasonable search of custodians reasonably likely to have non-cumulative, responsive documents as qualified by Fox's objections and responses and, in the case of electronic documents, Fox will use search terms reasonably expected to yield responsive documents. Fox further objects to the production of "all" documents when a subset of the documents would be sufficient to show the pertinent information.

19.    Fox objects to each and every Request to the extent it seeks the production of documents restored from backup tapes or archived data sources that are not reasonably accessible. Fox will not search backup tapes or archived data sources.

20.    Fox objects to Instruction A as unduly burdensome. Fox will meet and confer with defendant about the timing for the production of documents, including whether productions should be done on a rolling basis.

21.    Fox objects to Instruction B as overly broad and unduly burdensome to the extent that it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or Local Rules. Fox will meet and confer about a reciprocal protocol for the production of documents.

22. Fox objects to Instruction E as premature. Fox will meet and confer with defendant about a protocol for privilege logs.

23. Fox objects to the definition of "Fox" as overly broad and unduly burdensome to the extent that such definition purports to extend to Twentieth Century Fox Film Corporation as a whole. Fox will not produce documents from any division of Twentieth Century Fox Film Corporation other than Twentieth Century Fox Television. Fox further objects to the definition of "Fox" as overly broad and unduly burdensome to the extent it purports to include "principals, agents, representatives, attorneys, accountants, parents, subsidiaries, affiliates, and any other person or entity acting on" the behalf of Twentieth Century Fox Television or Fox Broadcasting Company.

24. Fox objects to the definition of *"Empire Series Music"* as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it includes music other than the Soundtrack Music, as defined in the complaint.

25. Fox objects to the definition of "Documents" as overly broad and unduly burdensome to the extent such definition purports to have Fox search for documents or information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Fox further objects to the definition to the extent that it purports to require Fox to produce identical copies of documents.

26. Fox objects to each and every Request to the extent it is premature in asking or requiring Fox to provide information that is the subject of expert disclosures under Federal Rule of Civil Procedure 26(a)(2) according to the Scheduling Order filed by the Court on July 23, 2015 (Dkt. 23).

27. Fox reserves the right to redact or exclude information from documents to protect unnecessary disclosure of nonresponsive or irrelevant sensitive, confidential, or proprietary business information.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

28.     As used in each objection and response made herein, "and" or "or" shall be construed both conjunctively and disjunctively.

29.     Fox reserves the right to supplement and/or amend these responses.

30.     The fact that Fox may reassert particular objections in responding to a Request should not be construed in any way as limiting the generality of the foregoing objections. The General Objections set forth above are asserted with respect to each and every Request set forth below.

## 2.     Empire's Contentions

As demonstrated above, Fox has asserted numerous boilerplate General Objections to each and every request on virtually every conceivable ground.  These General Objections severely limit the scope of Fox's collection and production of documents, without specifically stating which documents or categories of documents are being withheld.  Therefore, Empire has no way of knowing the nature, scope or quantity of relevant documents in Fox's possession, custody or control that are being withheld from Fox's production.

During the meet and confer process, Empire asked Fox to confirm that they would not be withholding any documents based on the General Objections (beyond what was stated in the specific responses to each individual request).  However, quite the opposite, Fox confirmed that "to the extent our general objections relate to the <u>scope of documents being produced</u>, such as the relevant time period or geographic limitation to the United States, <u>we are withholding documents based on our general objections</u>."   (Notably, in contrast, Empire's counsel confirmed that its general objections would not be used to limit the scope of its production beyond the specific responses to each request.)

These type of boilerplate General Objections are routinely rejected by courts. *See M2 Software, Inc. v. M2 Communs., L.L.C.*, 217 F.R.D. 499, 501 (C.D. Cal. 2003) (finding two pages of boilerplate "General Objections" were "not sufficient to raise any substantial, meaningful or enforceable objections to any particular

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

discovery request");  *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (faulting defendant for making "boilerplate objections to almost every single request for production, including broad relevancy objections, objections of 'overly burdensome and harassing,' 'assumes facts not in evidence,' privacy, and attorney-client privilege/work product protection").  Therefore, the Court should strike Fox's General Objections in their entirety.

### 3.    Fox's Contentions

This is a false issue, and the result of apparent confusion by defendant.  Had defendant indicated its intention to move on this issue, Fox would have been happy to resolve the apparent confusion.  Rather than do so, defendant aborted the meet-and-confer efforts and filed this motion, refusing to even wait for Fox's response to its email indicating its confusion for the first time.  Lens Dec, Ex. H, p. 165.  The motion should thus be rejected as premature.

In the event that the Court considers the merits of the request, it should similarly be denied.  During the parties' meet-and-confer discussions, Fox confirmed that it would not limit the scope of its production based on its general objections, with three exceptions: (1) General Objection No. 6 (Fox's date range for its production); (2) General Objection No. 19 (Fox will be conducting a reasonable search for documents, utilizing custodians and search terms); and (3) General Objection No. 32 (Fox will be limiting its production to documents relating to the United States).[6]  Lens Dec., Ex. G, p. 157.  General Objection No. 6 is separately addressed in this joint stipulation.  *See* Section III.G.2 *infra*.  Defendant never

---

[6] Fox inadvertently did not include this general objection in its initial responses.  During the parties' October 5 meet and confer, however, Fox informed defendant that its production would be limited to documents within the United States, given the territorial scope of the Lanham Act.  Defendant agreed to this limitation, and Fox advised that it would be amending its objections accordingly.  Lens Dec., Ex. G, p. 157.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

objected to General Objection No. 19; nor could it, as Fox is manifestly required only to conduct a reasonable search for responsive documents.  *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 614-15 (C.D. Cal. 2013).  And defendant agreed to General Objection No. 21 during the parties' October 5 meet and confer. Lens Dec., Ex. G, p. 163.

It is thus not true that "Empire [Distribution] has no way of knowing the nature, scope or quantity of relevant documents in Fox's possession, custody or control that are being withheld from Fox's production."  Rather, Fox's response to each specific request delineates the scope of documents to be provided.  For example, in response to Request No. 7, Fox has stated that it "will produce, based on a reasonable inquiry, responsive, non-privileged consumer or market research surveys conducted by Fox regarding the 'Empire' name, if any such documents are within Fox's possession, custody, or control."  Lens Dec., Ex. D, p. 77-78.  Fox will do just this, with the only limitations imposed by the General Objections being that Fox will produce only consumer or market research surveys predating the litigation and pertaining to the United States identified through a reasonable search.  Fox's use of its General Objections is thus entirely appropriate.[7]

**G.**   **Issue in Dispute No. 7**

**Fox's Cut-Off Date for Collection/Production of Documents**

**1.**   **Empire's Contentions**

Fox has refused to produce *any* documents created after the date that Empire sent its first pre-suit demand letter to Fox on February 16, 2015.  Fox's pre-litigation discovery cut-off date would arbitrarily exclude from production numerous documents even if they are admittedly relevant to the claims, issues, and

---

[7] The cases that defendant cites about general objections are inapposite as Fox is not withholding documents based on boilerplate objections as to overbreadth, burden, or relevancy.  *See M2 Software*, 217 F.R.D. at 501; *A. Farber & Partners*, 234 F.R.D. at 188.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

damages to the case.  In the intervening nine months since the demand letter, Fox has embarked on Season 2 of the Empire series and widely expanded and leveraged its Empire brand and infringement, including into multiple marketing, sales, and musical opportunities and properties, which Fox would wrongfully withhold from Empire and the trier of fact.

During the meet and confer process, Fox proposed a new cutoff date of the date it filed its Complaint on March 23, 2015 with a number of specific exceptions through the date of collection including:

- Exemplars of advertisements, promotions, or marketing efforts using the "Empire" logo
- Executed agreements between Fox and anyone else primarily or solely relating to the use of the "Empire" mark/logo
- Documents sufficient to identify goods or services offered or sold in connection with the "Empire" mark
- Documents sufficient to show the channels of trade or distribution through which Fox has sold or offered for sale or currently sells any goods or services identified by the "Empire" mark
- Documents sufficient to show geographical areas in which Fox has sold or offered for sale goods or services under the "Empire" mark
- Documents sufficient to show Fox's revenues, expenses, and profits relating to goods and services sold or offered for sale with the "Empire" mark
- Documents sufficient to show the total volume of sales for all goods and services sold with the "Empire" mark
- Documents sufficient to show the amount spent by Fox each year to advertise, market, and promote goods and services with the "Empire" mark
- Documents sufficient to identify each entity or individual authorized to sell, distribute, promote, advertise, or market any goods or services identified by Fox's "Empire" mark

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

- Documents relating to any instance in which any person or entity made any statement, comment, inquiry, or question regarding any actual or potential association, affiliation, connection, correlation, relation, or sponsorship between the Empire series and/or Empire series music, on the one hand, and Empire Distribution, on the other hand

- Communications by or from Fox, Fox's customers or other persons, expressing any actual or potential confusion, association, affiliation, connection, correlation, relation, or sponsorship, or lack thereof, between Fox and Empire Distribution and their respective goods or services

- Documents Fox is required to produce under Rule 26 and the Court's Scheduling Order.

However, Empire contends that Fox's proposal (with all the various permutations) is overly complicated to execute, enforce and verify, and it would arbitrarily exclude documents from production even if they are admittedly relevant to the claims, issues and damages in the case. Empire maintains that the governing standard should be "relevance" to the subject matter of the case rather than an arbitrary date, and extend at least through the date of Fox's collection. *See* FRCP 26(b)(1); *Hickman v. Taylor*, 329 U.S. 495, 506-507 (1947); *Goodrich Corp. v. Emhart Indus.*, NO. EDCV 04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 25160, *10-11 (C.D. Cal. Oct. 6, 2005). The Court should compel Fox to collect and produce documents at least through the date of its collection while reserving the right of Empire to seek later documents if appropriate or necessary.

## 2.    Fox's Contentions

As is routine, Fox has indicated that it will use the date of the complaint as a cutoff for producing documents generally, with the exception of any documents that defendant identifies that it needs past this date (and for which Fox agrees). Fox did so in an effort to reduce the immense burden that it faces in response to defendant's document requests. As it stands, in response to the documents it has already agreed

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   to provide, Fox has had a team of 10 contract attorneys working full time to review

2   documents for the past two months, at considerable expense. Lens Dec. ¶ 14. If

3   Fox were to agree to defendant's request to include documents responsive through

4   collection, the number of documents—and attendant time and expense—would

5   double, at a minimum. *Id.*

6       Because of this crippling burden, Fox cannot agree to defendant's proposal

7   that documents be produced through the date of collection. That said, Fox has

8   repeatedly told defendant that it is amenable to producing specific categories of

9   documents after the date of the complaint, provided that defendant explains why it

10   requires such documents. Defendant, however, has refused to do so. Lens Dec.,

11   Ex. G, p. 158; Ex. H, p. 166.

12       Notwithstanding defendant's refusal to attempt to reach a compromise,

13   Fox—on its own initiative—identified 12 categories of documents that it would

14   produce through the date of collection. Lens Dec., Ex. G, p. 157. These categories

15   address Fox's advertisements using the "Empire" logo; agreements concerning the

16   use of the "Empire" logo; goods or services sold in connection with the "Empire"

17   mark, including channels of distribution and geographical areas in which such

18   goods are sold and entities authorized to sell such goods; revenue and sales figures;

19   instances of confusion; and expert materials. Even further still, Fox offered to

20   consider any additional categories identified by defendant. *Id.* at 158.

21       Defendant rejected Fox's proposal based on nothing more than the statement

22   that it was "overly complicated." Lens Dec., Ex. H, p. 166. Hundreds of thousands

23   of dollars cannot be imposed on a party simply because one's adversary finds the

24   proposal "complicated." Not to mention, Fox, as the producing party, is charged

25   with ensuring that the proposal is executed. Because defendant has not identified

26   any documents that it requires beyond those Fox has already agreed to provide, and

27   because defendant's proposal would impose hundreds of thousands of dollars of

28   legal expenses on Fox, its motion should be denied.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

1

Respectfully submitted,

2

Dated:  December 3, 2015

TROUTMAN SANDERS LLP

3

4

By:  /s/ Peter N. Villar
Paul L. Gale

5

Peter N. Villar
John M. Bowler

6

7

Attorneys for Defendant and
Counterclaimant Empire
Distribution, Inc.

8

9

10

11

*Pursuant to L.R. 5-4.3.4, Petter N. Villar hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

12

Dated:  December 2, 2015

O'MELVENY & MYERS LLP

13

14

By:   /s/ Molly M. Lens
Daniel M. Petrocelli

15

Molly M. Lens
Cameron H. Biscay

16

Attorneys for Plaintiffs and Counter-
Defendants Twentieth Century Fox
Television, a division of Twentieth
Century Fox Film Corporation, and
Fox Broadcasting Company

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

27548066

- 38 -

JOINT STIPULATION RE: DEFENDANT EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS