1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
3  CAMERON H. BISCAY (S.B. #266786)
   cbiscay@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, California  90067-6035
   Telephone:   (310) 553-6700
6  Facsimile:    (310) 246-6779

7  Attorneys for Twentieth Century Fox
   Television, a division of Twentieth Century
8  Fox Film Corporation, and Fox Broadcasting
   Company

9

10                **UNITED STATES DISTRICT COURT**

11                **CENTRAL DISTRICT OF CALIFORNIA**

12                    **WESTERN DIVISION**

13

| | |
|---|---|
| 14  TWENTIETH CENTURY FOX TELEVISION, a division of TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware company, and FOX BROADCASTING COMPANY, a Delaware corporation, | Case No. 2:15-cv-02158-PA-FFM |
| | **DISCOVERY MATTER** |
| Plaintiffs, | **DECLARATION OF MOLLY M. LENS IN SUPPORT OF JOINT STIPULATION REGARDING EMPIRE DISTRIBUTION, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| v. | |
| EMPIRE DISTRIBUTION, INC., a California corporation, | **Judge:** Hon. Percy Anderson |
| Defendant. | **Magistrate:** Hon. Frederick F. Mumm |
| | **Hearing Date:** January 5, 2016 **Time:** 10:00 a.m. **Discovery Cutoff:** January 25, 2016 **Pretrial Conference:** March 4, 2016 **Trial Date:** April 5, 2016 |
| And related counterclaims | |

26

27

28

I, Molly M. Lens, the undersigned, hereby declare:

1.     I am a member in good standing of the State Bar of California, an attorney in the law firm of O'Melveny & Myers LLP, and counsel for plaintiffs and counterclaim defendants Twentieth Century Fox Film Television, a division of Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively, "Fox").  I submit this declaration in support of the Joint Stipulation Regarding Empire Distribution, Inc.'s Motion to Compel Production of Documents. I have personal knowledge of the facts set forth herein and, if called to testify, could and would testify competently thereto.

2.     On or about February 16, 2015, defendant, through its outside counsel, sent Fox a letter, accusing Fox of trademark infringement and dilution.  Attached as **Exhibit A** is a true and correct copy of this letter.

3.     On or about June 4, 2015, defendant filed counterclaims against Fox, asserting federal and state claims for trademark infringement and trademark dilution as well as state claims for unfair business practices.  Attached as **Exhibit B** is a true and correct copy of these counterclaims, filed in this case as Docket 16.

4.     On or about July 17, 2015, defendant served its First Set of Requests for Production of Documents.  Attached as **Exhibit C** is a true and correct copy of defendant's First Set of Requests for Production of Documents.

5.     On or about August 20, 2015, Fox responded to defendant's First Set of Requests for Production of Documents.  Attached as **Exhibit D** is a true and correct copy of Fox's Response to Defendant's First Set of Requests for Production of Documents.

6.     On or about November 12, 2015, defendant served its Second Set of Requests for Production of Documents.  Attached as **Exhibit E** is a true and correct copy of defendant's Second Set of Requests for Production of Documents.

7.     On or about September 25, 2015, Peter Villar, counsel for defendant, sent me a meet-and-confer letter, addressing a number of objections and concerns that defendant had with Fox's responses to defendant's First Set of Requests for Production of Documents.  Attached as **Exhibit F** is a true and correct copy of Mr. Villar's September 25, 2015 letter.

8.     On or about October 5, 2015, my colleague, Cameron Biscay, and I spoke with Mr. Villar and his colleagues, John Bowler and Lindsay Henner, about the issues raised in Mr. Villar's September 25 letter.  The parties continued this discussion on October 9.  (During this second call, I was joined by my colleague, Stephen Volpe, and not Ms. Biscay).  The parties' October 5 and 9 conversations are memorialized in my email of October 16, 2015 to Messrs. Villar and Bowler. Attached as **Exhibit G at 160-63** is a true and correct copy of my October 16, 2015 email to Messrs. Villar and Bowler.

9.     Between October 21 and November 25, 2015, the parties continued to try to resolve their disagreements regarding Fox's responses.  Attached as **Exhibit H and Exhibit I** are true and correct copies of the parties' continued meet-and-confer correspondence.

10.    On or about November 9, 2015, Mr. Villar proposed that Fox produce the agreements requested in its Request No. 15 in exchange for defendant agreeing to produce the agreements requested in response to Fox's Request Nos. 59 and 68. *See* Ex. H at 166-67.

11.    On or about November 18, 2015, I let defendant know that Fox was considering defendant's proposals in an effort to avoid motion practice.  *See id.* at 165.  However, on or about November 19, 2015, defendant terminated the meet-and-confer discussions and served Fox with a joint stipulation regarding its motion to compel.  *See id.*

LENS DECL. ISO JOINT STIP. RE EMPIRE
DISTRIBUTION'S MOTION TO COMPEL
CASE NO. 2:15-CV-02158-PA-FFM

12.     On or about November 24, 2015, I contacted Mr. Villar and his colleagues to let them know that Fox agreed to defendant's proposal, provided that defendant withdrew the portion of the joint stipulation related to Request No. 15 and provided that the parties agreed to exchange the requested agreements by December 9, 2015.  *See* Ex. I at 180-81.  On November 25, the day before Thanksgiving, I repeatedly requested confirmation from defendant that we had reached agreement.  I further advised defendant that, absent confirmation by the end of the day, Fox would have no choice but to move to compel and that Fox could not guarantee that the proposal would remain open.  *See id.* at 178-79.  Defendant did not confirm its agreement on November 25.  It was not until 5:14 p.m. on November 30, 2015, six days after Fox's request for confirmation, after Fox had been forced to prepare and serve a joint stipulation, and the evening that Fox's portion of the joint stipulation regarding defendant's motion to compel was due, that Mr. Villar let me know that defendant wanted to agree to the proposal.  Attached as **Exhibit J** is a true and correct copy of Mr. Villar's November 30, 2015 email.  In the cover email sending Fox's portion of the joint stipulation, I am advising Mr. Villar that Fox is necessarily considering whether, given the above, it remains amenable to the November 24 proposal.  If agreement is reached, the parties will promptly inform the Court.

13.     On or about November 18, 2015, I emailed Mr. Villar to suggest that the parties complete their productions of documents on December 3.  Attached as **Exhibit K** is a true and correct copy of my November 18, 2015 email.  Mr. Villar did not respond to my suggestion until November 30, 2015, when he stated that defendant would agree to produce some documents on December 3 but stated that defendant could not confirm it would be able to complete its production by December 3.  *See* Exhibit J at 186.  Mr. Villar also indicated that, contrary to Fox's

LENS DECL. ISO JOINT STIP. RE EMPIRE
DISTRIBUTION'S MOTION TO COMPEL
CASE NO. 2:15-CV-02158-PA-FFM

1  proposal, defendant was not sure whether it could produce its privilege log on that

2  date.  *See id.*

3        14.    For the last two months, Fox has had a team of 10 attorneys reviewing

4  documents collected in response to defendant's document requests on a full-time

5  basis.  Fox has incurred costs in excess of $150,000 for the time of these 10

6  reviewers alone.  This does not include the significant costs and expenses incurred

7  by Fox for the O'Melveny attorneys supervising the review, the Fox employees

8  handling the collection, or the work of the third-party electronic discovery vendor

9  to process, host and produce the documents.  Assuming nothing but the date range

10 for the collection changed (*i.e.*, assuming that the Court granted defendant's motion

11 only with respect to Issue No. 8, and denied the motion with respect to all other

12 issues), Fox anticipates that it would, at a minimum, double all the costs and

13 expenses incurred by Fox to date with respect to the review and production of

14 documents.

15

16        I declare under penalty of perjury that the foregoing is true and correct.

17 Executed on November 30, 2015, at Los Angeles, California.

18

19

20

21                                    _____

22                                                Molly M. Lens

23

24

25

26

27

28

LENS DECL. ISO JOINT STIP. RE EMPIRE
DISTRIBUTION'S MOTION TO COMPEL
CASE NO. 2:15-CV-02158-PA-FFM

# EXHIBIT A



MICHAEL D. HOBBS JR
404.885.3330 telephone
404.962.6588 facsimile
michael.hobbs@troutmansanders.com

TROUTMAN SANDERS LLP
Attorneys at Law
Bank of America Plaza
600 Peachtree Street NE, Suite 5200
Atlanta, Georgia  30308-2216
404.885.3000 telephone
troutmansanders.com

February 16, 2015

**VIA FEDERAL EXPRESS**

Gerson A. Zweifach, Esq.
Group General Counsel
Twenty-First Century Fox, Inc.
1211 Avenue of Americas, 8th Floor
New York, NY 10036

    Re:    **EMPIRE™ Trademark Infringement**

Dear Mr. Zweifach:

        Our firm represents Empire Distribution Inc. ("Empire"), a well-known music record label and music distribution company that has released albums in a wide variety of genres, but specifically focusing on hip hop, rap, and R&B, under the marks EMPIRE™, EMPIRE DISTRIBUTION™ and EMPIRE RECORDINGS™ (the "Marks") (*see* http://empi.re or www.empiredistribution.com). Over the past five years, Empire has become one of the largest distributors and producers of digital music in the country. It has had numerous *Billboard* charting releases from well-recognized artists under its label, having partnered with notable artists such as Kendrick Lamar, Migos, The Foreign Exchange and Snoop Dogg. Songs released by EMPIRE RECORDINGS have earned platinum and gold records, and the label has sponsored sold-out showcases under its name at events such as South by Southwest.

        Empire, under both the RECORDINGS and DISTRIBUTION Marks, has built relationships across the music industry to successfully record, promote, and distribute platinum- and gold-certified records. As part of its partnership with Universal/Republic Records, Empire Recordings was recognized by the Recording Industry Association of America for its role in selling over 1,500,000 records for the artist Sage the Gemini. (See Attachment A.) The Marks have been prominently used in press releases and coverage of those records. Separately, Empire Recordings is engaged in an ongoing relationship with Atlantic Records to co-develop, distribute, and market artists. Through its partnership with eOne and others, Empire has distributed, marketed, and sold thousands of physical records under its Marks domestically and around the world.

        Beyond this widespread exposure, the Marks have been the subject of broad advertising and promotional campaigns and online presence.  The Marks became a recognized symbol for

ATLANTA   BEIJING   CHARLOTTE   CHICAGO   HONG KONG   NEW YORK   ORANGE COUNTY   PORTLAND
RALEIGH   RICHMOND   SAN DIEGO   SHANGHAI   TYSONS CORNER   VIRGINIA BEACH   WASHINGTON, DC

EXHIBIT A
5

**TROUTMAN**
**SANDERS**

Gerson A. Zweifach
February 16, 2015
Page 2

quality music and music services years ago. (See Attachment B.)   As a result, the Marks are well known among the relevant consuming public as identifying Empire's goods and services. Due to the tremendous amount of valuable goodwill Empire has developed in the Marks, it cannot tolerate the unauthorized use of its Marks, because such unauthorized use is likely to cause confusion among the public as to the source, origin, sponsorship, or affiliation of services identified by the Marks, but not authorized by Empire.

The recent debut of FOX's television program *Empire* has created significant confusion with Empire's products and services in the marketplace. As you know, the program follows the fictional hip hop music label named "Empire Enterprises." Numerous consumers, artists and business partners have expressed confusion to Empire with regards to whether the *Empire* program has any affiliation or business relationship with Empire, which it does not. FOX's use of the "Empire" mark below in all upper case letters, the same font treatment as our client, has significantly exacerbated this confusion.



FOX's use of a city skyline graphic in conjunction with the "Empire" mark, a combination originating with our client, in both marketing materials and merchandise has made the confusion between the two titles inescapable.




Moreover, FOX advertises, distributes and sells music under the "Empire" mark. Because this music shares the same search terms as Empire's music, and the musical genres are identical, the albums and songs have been positioned in close proximity in online stores such as iTunes, Google Play, Amazon.com, Spotify and Rdio. (See Attachment B.) This further perpetuates damaging public confusion.

The federal Lanham Act and similar state laws prohibit FOX's use of a trademark in connection with the advertising or sale of any goods or services when such use is likely to cause

TROUTMAN
SANDERS

Gerson A. Zweifach
February 16, 2015
Page 3

confusion as to the source of those goods or services. 15 U.S.C. §§ 1114, 1125(a). The Lanham Act also prohibits any person or entity from using a word or name in a manner that is likely to cause confusion as to the affiliation, connection or association with another person or entity. FOX's unauthorized use of the Marks has already confused and is likely to continue to confuse members of the public into believing that you are an approved licensee of or otherwise affiliated with Empire, the very type of deception that these laws prohibit. Moreover, *Empire*'s portrayal of a label run by a homophobic drug dealer prone to murdering his friends threatens to tarnish the brand and harm the goodwill built by our client. Remedies provided for under the Lanham Act include injunctions and monetary damages.

Empire requests that within seven (7) calendar days of the date of this letter FOX respond to set a meeting to discuss these legal issues. If we do not receive a timely response, we will assume FOX does not wish to pursue a resolution in this matter and will advise Empire accordingly.

We also request that FOX immediately preserve all documents, data, and tangible things (hereafter "Records") in its possession, custody, and control that are potentially relevant to the subject matter of this dispute, including all electronically stored information, and not destroy, delete, erase or over write any such materials. The scope of preservation should include, at a minimum, all Records relating to the conception, development, and launch of the *Empire* program; all communications and other materials exchanged regarding the selection of the *Empire* program name and its logo; and all cost and financial Records relating to the creation and roll-out of the program.

This letter does not contain a full analysis of all of the legal issues related to this matter and is made without any waiver of any rights or remedies which are expressly reserved.

Sincerely,

Michael D. Hobbs Jr.

Bcc (via e-mail only):     Mr. Ghazi Shami
Vinny Kumar, Esq.
Scott Kenily, Esq.

## ATTACHMENT A



The EMPIRE RECORDINGS Mark in use alongside the Republic Records mark in their RIAA-certified platinum plaque commemorating their sale of over 1,000,000 copies of the record "Gas Pedal."



The EMPIRE RECORDINGS Mark in use alongside the Republic Records mark in their RIAA-certified platinum plaque commemorating their sale of over 500,000 copies of the record "Red Nose."



**View in iTunes**

$1.29

Genres: Hip-Hop/Rap, Music
Released: Aug 05, 2014
℗ 2014 Empire Recordings
and Atlantic Recording
Corporation for the United
States and WEA International
for the world outside of the
United States.

The EMPIRE RECORDINGS Mark in use alongside the Atlantic Recording mark in the iTunes store.

**ATTACHMENT B**



An Empire Mark was promoted online and in person at the A3C hip hop festival in October 2012.



An Empire Mark was used to promote the company as a leader in the music recording, promotion, and digital distribution space as part of a Beatstars seminar in May 2013.



An Empire Mark was included among other prominent music and consumer brands at the BET awards weekend in June 2013.

# ATTACHMENT C

Google

empire music

Web Videos Shopping Maps Images More Search tools

About 221,000,000 results (0.17 seconds)

**Empire Music on FOX**
www.fox.com/empire/music FOX
Watch the latest Music Performances and Interviews, Empire Music sponsored by AT&T http://www.fox.com/empire/music.

In the news

**The Opulent Majesty of Hakeem's Music Video on Last Night's 'Empire' «**
Grantland - 13 hours ago
Hakeem's trump card is revealed to be an opulent music video, which was meticulously ...

Why 'Empire' Is Ruling: The Secrets to TV's New 'Dynasty'
TheWrap - 1 day ago

Empire Tackles The Music Industry's Gay Double Standard
Out Magazine - 8 hours ago

More news for empire music

**Empire Distribution**
www.empiredistribution.com/
EMPIRE Distribution · ARTISTS · BLOG · RADIO+TV ... Featured Albums. EMPIRE Blog ... Santana , Freekey Zekey ,. Posted in HIP HOP EMPIRE New Releases ...









Top Albums
Hip-Hop/Rap
New Music
Reflection (Deluxe)
Fifth Harmony
Non-Fiction (Deluxe)
Ne-Yo
Hogg Life: The Beginning
Doug Loves Movies: Tournament of...
Doug Benson
Codename X
Exclaim
Medicine
Drew Holcomb & The...
Afraid of Ghosts
Butch Walker
Full Speed
Kid Ink
Shadows in the Night
Bob Dylan
The Red Balloon Project
Sizzy Mars
We Will Not Be Shaken (Live) [Deluxe Edition]
Bethel Music
I Will Follow (Deluxe Edition)
Jeremy Camp
We Will Not Be Shaken (Live)
Bethel Music
F.E.A.R.
Papa Roach
Wanted On Voyage (Deluxe)
George Ezra
Wolves
American Aquarium
Hot Tracks
See All
Heartbeat Song
Kelly Clarkson — Piece B
The Best Room
Modest Mouse — Strang
Absolution Calling
Incubus — Absolution C
When I Was Your Man
Thomas Rhett — When I
I'm To Blame
Kip Moore — I'm To Bla
Brother (feat. Gavin De...
NEEDTOBREATHE — Br
Drip Drop (feat. Yazz an...
Empire Cast — Drip Drop
The Point of It All (feat. ...
Empire Cast — Empire
Turn Into the Noise (Fro...
Patrick Watson — Turn I
Body Talk (Mammoth) [f...
Dimitri Vegas, MOGUAI &
Freakout
Mari Mansions — Freakc
Bright
Echosmith — Talking Dre
Not For Long (feat. Tr...
B.o.B — Not For Long
FourFiveSeconds
Rihanna and Kanye West
Really Love
D'Angelo and The Vangu
Stylin'
Protoje — Ancient Future



Hot Tracks
See All >
Blessings (feat. Drake...
Big Sean — Blessings
Have My Money
Dipset — Have My Mo...
Truffle Butter (feat. D...
Nicki Minaj — The Pin...
Throw Sum Mo (feat. ...
Rae Sremmurd — Sre...
Lil Bit
K CAMP — Lil Bit - Si...
Like a Hott Boyy (feat...
Kid Ink — Full Speed
Power (feat. Lil Wayn...
Master P — Power (fea...
Trap Queen
Fetty Wap — Trap Que...
Cha Cha
D.R.A.M. — Cha Cha - ...
Nada (feat. José Ortiz)
Actin Crazy
Action Bronson — Act...
Schemin Up (feat. Dr...
OB OBrien — Schemin...
Hotel (feat. Chris Bro...
Kid Ink — Full Speed
Teach Me (feat. Kiesz...
Joey Bada$$ — B4.DA...
Glory
Common & John Lege...
Album Only
Only One (feat. Paul Mc...
Kanye West — Only One...
$1.29
New Music
New Music
Recent Releases
See All >
Redemption of the Beast
DMX
Square One
Never Left
Sadat X
Made In Virginia
Raeco Presents: 20,000 Leagues...
Empire: Music From "False Imposition" -...
Empire Cast
The Pinkprint (Deluxe Version)
Nicki Minaj
Empire: Music From the Pilot - EP
Empire Cast
Empire
1017 Mafia
Almighty
God Knows - EP
Bird Bath EP
And You Don't Stop!
2014 Forest Hills Drive
J. Cole
Dark Sky Paradise (Deluxe)
Big Sean
Take Care (Deluxe Version)
Drake

# EXHIBIT B

PAUL L. GALE (SBN 065873)
paul.gale@troutmansanders.com
PETER N. VILLAR (SBN 204038)
peter.villar@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, California 92614-2545
Telephone: (949) 622-2704
Facsimile: (949) 769-2052

JOHN M. BOWLER (*pro hac vice*)
john.bowler@troutmansanders.com
MICHAEL D. HOBBS (*pro hac vice*)
michael.hobbs@troutmansanders.com
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 5200
Atlanta, Georgia 30308-2216

*Attorneys for Defendant and*
*Counterclaimant Empire Distribution Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TWENTIETH CENTURY FOX TELEVISION, a division of TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware company, and FOX BROADCASTING COMPANY, a Delaware corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>EMPIRE DISTRIBUTION, INC., a California corporation,<br><br>                    Defendant. | Case No. 2:15-cv-02158-PA-FFM<br><br>Hon. Percy Anderson<br><br>**EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS FOR:**<br><br>**1. FEDERAL TRADEMARK INFRINGEMENT**<br>**2. FEDERAL TRADEMARK DILUTION**<br>**3. FEDERAL UNFAIR COMPETITION**<br>**4. CALIFORNIA STATUTORY UNFAIR COMPETITION AND FALSE ADVERTISING**<br>**5. CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT**<br>**6. CALIFORNIA TRADEMARK DILUTION** |
| *Caption continued on next page.* | **DEMAND FOR JURY TRIAL** |

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

EMPIRE DISTRIBUTION, INC., a
California corporation,

Counterclaimant,

v.

TWENTIETH CENTURY FOX
TELEVISION, a division of
TWENTIETH CENTURY FOX
FILM CORPORATION, a Delaware
company, and FOX
BROADCASTING COMPANY, a
Delaware corporation,

Counter-Defendants.

Defendant and Counterclaimant Empire Distribution, Inc. ("Empire") hereby asserts its Counterclaims against Plaintiffs and Counter-Defendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively "Fox") as follows:

## **INTRODUCTION**

1.     Fox filed this suit as a preemptive ploy to deprive Empire of its natural position as the plaintiff.  This case arises out of Fox's willful infringement of Empire's well-established trademarks and Fox's unfair, unlawful and deceptive business practices in violation of federal and state law.  Fox's rampant, unauthorized use of the "Empire" name to promote, market, distribute and sell its television program and music has caused, and will continue to cause, significant confusion to Empire's customers and irreparable harm to the identity and brand that Empire has built over many years.

## **THE PARTIES**

2.     Empire is a California corporation with its principal place of business at 16 Maiden Lane, San Francisco, CA 94108.

3.     Upon information and belief, Counter-Defendant Twentieth Century Fox Film Corporation ("Fox Film") is a Delaware corporation with its principal

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 - 2545

place of business at 10201 West Pico Boulevard, Los Angeles, California 90064. Upon information and belief, Fox Film purports to own certain intellectual property rights in and to the television series *Empire* and the music therefrom.

4.     Upon information and belief, Counter-Defendant Twentieth Century Fox Television ("Fox TV") is a division of Fox Film.  Fox TV creates and produces television programs.

5.     Upon information and belief, Counter-Defendant Fox Broadcasting Company ("Fox Broadcasting") is a Delaware corporation with its principal place of business at 10201 West Pico Boulevard, Los Angeles, California 90064.  Upon information and belief, Fox Broadcasting operates the Fox Network, a national broadcast television network with 203 affiliates in the United States.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) and (b) as it involves claims presenting federal questions under 15 U.S.C. § 1121(a) (actions arising under the Lanham Act have original jurisdiction in federal courts).  This Court also has supplemental jurisdiction over the state statutory and common law claims under 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to the claims under which the Court has original jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution.

7.     Fox is subject to this Court's general and specific personal jurisdiction because it is domiciled in the State of California and has sufficient minimum contacts with the State of California.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because the parties are residents of this District and a substantial part of the acts or events giving rise to the claims occurred in this District.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 - 2545

EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS
25293891

## **FACTS COMMON TO ALL COUNTERCLAIMS**

9.  Empire is a well-known music record label and music distribution company that continuously since 2010 has released albums in a wide variety of genres, specifically focusing on hip hop, rap, and R&B, under the trademarks EMPIRE™, EMPIRE DISTRIBUTION™ and EMPIRE RECORDINGS™ (the "Marks"). Empire promotes, markets and sells its music through various channels of commerce including, but not limited to, its websites (see http://empi.re and www.empiredistribution.com).

10. Over the past five years, Empire has become one of the largest distributors and producers of music in the country. It has had numerous Billboard charting releases from well-recognized artists under its label, having partnered with notable artists such as Kendrick Lamar, Migos, Too Short, Slim Thug, Rich Homie Quan, Sage the Gemini and Snoop Dogg. Songs released by Empire under the EMPIRE DISTRIBUTION and EMPIRE RECORDINGS mark have earned platinum and gold records, and the label has sponsored sold-out showcases under its name at events such as South by Southwest.

11. Under both Marks, Empire has built relationships across the music industry to successfully record, promote, and distribute platinum-and gold-certified records. As part of its partnership with Universal/Republic Records, Empire was recognized by the Recording Industry Association of America for its role in selling over 1,500,000 records for the artist Sage the Gemini.

12. The following images depict the Marks in use alongside the Republic Records mark in Empire and Republic's RIAA-certified platinum plaque commemorating their sale of over 1,000,000 copies of the record "Gas Pedal" and their sale of over 500,000 copies of the record "Red Nose."

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 4 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545





13.     Empire and its partners have now sold over 3,000,000 records for artist Sage the Gemini.  "Red Nose" is being certified platinum (over one million sales) and "Gas Pedal" is almost double platinum.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

14.   The Marks have been used prominently in press releases and coverage of those records.  Separately, Empire is engaged in an ongoing relationship with Atlantic Records to co-develop, distribute, and market artists. Through its partnership with eOne and others, Empire has distributed, marketed, and sold thousands of physical records under its Marks domestically and around the world.

15.   Beyond this widespread exposure, the Marks have been the subject of broad advertising and promotional campaigns, leading to a prominent presence, both online and offline, as the images below demonstrate.  The Marks became a recognized symbol for quality music and music services years ago.  As a result, the Marks are well known among the relevant consuming public as identifying Empire's goods and services.

16.   For example, one of Empire's Marks was promoted online and in person at the A3C hip hop festival in October 2012, as the image below demonstrates.



EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS

25293891

EXHIBIT B
24

17.     One of Empire's Marks was used to promote the company as a leader in the music recording, promotion, and digital distribution space as part of a Beatstars seminar in May 2013.



18.     One of Empire's Marks was included among other prominent music and consumer brands at the BET awards weekend in June 2013.



TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 7 -
EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS

25293891

19.     Due to the tremendous amount of valuable goodwill Empire has developed in the Marks, it cannot permit their unauthorized use, because such use is likely to cause confusion among the public as to the source, origin, sponsorship, or affiliation of services identified by the Marks, but not authorized by Empire.

20.     The recent debut of Fox's television program "Empire" -- over five years after Empire began using the Marks -- has created significant confusion with Empire's products and services in the marketplace.  The program follows the fictional hip hop music label named "Empire Enterprises."  Producers of "Empire" have publicly stated that the show's events, business, and characters are based on entities and individuals from the real-world music industry.  Numerous consumers, artists and Empire's business partners have expressed confusion to Empire as to whether the fictional "Empire" program has any affiliation or business relationship with the real-life Empire, which it does not.

21.     Fox's use of the "Empire" mark below in all upper case letters, the same font treatment as in Empire's marks, has significantly exacerbated this confusion.



22.     Fox's use of a city skyline graphic in conjunction with the "Empire" mark, a combination originating with and made famous by Empire, in both

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 8 -

25293891

marketing materials and merchandise, such as the gold necklace depicted below

that is worn by one of the main characters on Fox's television series, has made the

confusion between the marks inescapable.

 

23.    Moreover, Fox advertises, distributes and sells music under the

"Empire" mark.  Because this music shares the same search terms and genres as

Empire's music, the albums and songs have been positioned in close proximity in

online stores such as iTunes, Google Play, Amazon.com, and Spotify.  As

demonstrated by the images below, this further perpetuates damaging public

confusion.



TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

- 9 -

EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS

25293891

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 - 2545

EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS

EXHIBIT B

28

25293891



EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS

EXHIBIT B

29

25293891

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545



24.     There is nothing "fictional" about Fox's music distribution operations. Like other record labels, Fox has an online account with Mediabase, a music industry service that monitors radio station airplay in the United States and Canadian markets and provides in-depth analytical tools for radio and record industry professionals.



EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS

25293891

25.     Fox also promotes, markets and advertises its music and artists under the "Empire" mark at radio stations, live performances, events, physical record stores, and other venues where Empire promotes, markets and advertises its music and artists.

26.     For example, Empire's franchise artist, Rayven Justice, recently met with internationally renowned DJ Crisco Kidd, at a Dallas radio station to promote his new single.  Fox's "Empire" artists, Yazz and Jussie, met with Crisco Kidd the very next day, at the very same radio station, to promote their new single.



27.     The rap artist Yazz from Fox's "Empire" program was recently promoted, with the "Empire" mark, alongside multiple Empire rap artists, including Dizzy Wright, Hopsin, Jarren Benton, Rayven Justice and Pia Mia, for a concert sponsored by one of the largest radio stations in the country, Power 106 FM.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

- 13 -

28.   Remarkably, Yazz is the only artist credited with the "Empire" logo, despite there being five other artists affiliated with Empire – the true owner of the Mark.

29.   Fox's misuse of the "Empire" name has confused other artists and their followers.  For example, Shaggy, a Grammy award winner and one of the best selling reggae musicians of all time, posted Empire's logo on the internet, and one follower commented "#teamCookie" in reference to one of the lead characters on Fox's "Empire" program, Cookie Lyon.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 14 -

25293891

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine · CA · 92614 · 2545

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23    30.    A rap and hip hop music company, Gslaps Entertainment, recently

24   posted a comment on its Facebook site praising Empire for the fame, success and

25   longevity of the "Empire logo" over the years, yet had to clarify that it was "NOT

26   the TV show."

27

28

EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS

25293891

EXHIBIT B
33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine , CA  92614 -2545



24    31.    The Lanham Act and similar state laws prohibit Fox's use of a

25   trademark in connection with the advertising or sale of any goods or services when

26   such use is likely to cause confusion as to the source of those goods or services. 15

27   U.S.C. §§ 1114, 1125(a).  The Lanham Act also prohibits any person or entity from

28

- 16 -

25293891

using a word or name in a manner that is likely to cause confusion as to the affiliation, connection or association with another person or entity.

32.     Fox's unauthorized use of the Empire Marks has already confused and is likely to continue to confuse members of the public into believing that Fox is an approved licensee of or otherwise affiliated with Empire, the very type of deception that these laws prohibit.  Moreover, Fox's "Empire's" portrayal of a label run by a homophobic drug dealer prone to murdering his friends, threatens to tarnish the brand and harm the goodwill built by Empire.

## FIRST COUNTERCLAIM

## (Federal Trademark Infringement under 15 U.S.C. § 1125(a) against All Counter-Defendants)

33.     Empire realleges and incorporates herein the allegations contained in paragraphs 1-32 of this Counterclaim.

34.     Empire has valid trademarks that are entitled to protection, including the marks EMPIRE™, EMPIRE DISTRIBUTION™ and EMPIRE RECORDINGS™.

35.     Empire has continuously and extensively used its Marks in commerce to identify its goods and services in the United States and worldwide, long before Fox began using the "Empire" mark.

36.     Fox has used, and continues to use, its virtually identical and confusingly similar "Empire" name, along with other words, terms, names, symbols, or devices, or any combination thereof, in commerce, to market, promote, advertise and sell its goods and services, without Empire's consent.

37.     Fox's improper and unauthorized use of the "Empire" name constitutes false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, which is likely to cause confusion, to cause mistake, or to deceive others as to the affiliation, connection, or association of Fox

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine , CA  92614-2545

EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS
EXHIBIT B
35
25293891

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

1   with Empire, or as to the origin, sponsorship, or approval of Fox's goods, services,

2   or commercial activities by Empire, in violation of 15 U.S.C. § 1125(a).

3       38.     Fox also misrepresents the nature, characteristics, qualities, or

4   geographic origin of its goods, services, or commercial activities, through its

5   improper and unauthorized use of the "Empire" name in commercial advertising or

6   promotion, in violation of 15 U.S.C. § 1125(a).

7       39.     As a result of Fox's trademark infringement and wrongful conduct,

8   Empire has suffered substantial and irreparable injury, and will continue to suffer

9   irreparable injury unless such conduct is preliminarily and permanently enjoined by

10  this Court.  This injury includes, but is not limited to, the loss of goodwill and

11  reputation that cannot be remedied solely through damages.

12      40.     Empire has no adequate remedy at law and is entitled to preliminary

13  and permanent injunctive relief pursuant to 15 U.S.C. § 1116 restraining and

14  enjoining Fox and its officers, directors, agents, employees, representatives, and

15  any persons or entities acting thereunder, in concert with, or on their behalf, from

16  using the "Empire" Marks in commerce.

17      41.     Pursuant to 15 U.S.C. § 1117, Empire is also entitled to recover Fox's

18  profits; all damages sustained by Empire; up to three times the amount of actual

19  damages; and the costs incurred in this action.

20      42.     Fox's willful use of Empire's Marks without excuse or justification

21  renders this an exceptional case entitling Empire to recover its reasonable attorneys'

22  fees.

## **SECOND COUNTERCLAIM**

## **(Federal Trademark Dilution under 15 U.S.C. § 1125(c) against all Counter-Defendants)**

26      43.     Empire realleges and incorporates herein the allegations contained in

27  paragraphs 1-42 of this Counterclaim.

28

25293891

44.     Empire's Marks are famous and distinctive, and became famous and distinctive well before Fox's admittedly recent use of the "Empire" mark.

45.     Fox's use of the "Empire" name in connection with the advertisement and sale of its goods and services is likely to cause dilution by blurring or tarnishment of Empire's Marks.  For example, Fox's "Empire's" portrayal of a record label run by a homophobic drug dealer prone to murdering his friends threatens to tarnish the brand and harm the goodwill built by Empire.

46.     As a result of Fox's trademark infringement and wrongful conduct, Empire has suffered substantial harm and is entitled to recover Fox's profits; all damages sustained by Empire; up to three times the amount of actual damages; and the costs incurred in this action, pursuant to 15 U.S.C. § 1117.

47.     Fox's willful use of Empire's Marks without excuse or justification renders this an exceptional case entitling Empire to recover its reasonable attorneys' fees.

48.     Empire has suffered, and will continue to suffer, irreparable injury.  Unless such conduct is preliminarily and permanently enjoined by this Court, Fox will continue to engage in such wrongful conduct to the detriment of Empire and its Marks.  This injury includes, but is not limited to, the loss of goodwill and reputation that cannot be remedied through damages.

49.     Empire has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116, restraining and enjoining Fox and its agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from using the Marks in commerce.

## THIRD COUNTERCLAIM

### (Federal Unfair Competition under 15 U.S.C. § 1125(a) against all Counter-Defendants)

50.     Empire realleges and incorporates herein the allegations contained in paragraphs 1-49 of this Counterclaim.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614 -2545

- 19 -

51.     Fox has deliberately and willfully attempted to trade on Empire's longstanding and hard-earned goodwill in its Marks and the reputation Empire established in connection with its products and services, as well as in order to confuse consumers as to the origin and sponsorship of Fox's goods and services and to unfairly compete by promoting those goods and services in commerce as those of Empire.

52.     Fox's unauthorized and wrongful conduct also has deprived and will continue to deprive Empire of the ability to control consumer perception of products and services offered under its Marks.

53.     Fox's conduct in adopting and using its "Empire" name is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Fox and its goods and services with Empire, and as to the sponsorship, origin or approval of Fox and its goods and services, in violation of 15 U.S.C. § 1125(a).

54.     As a result of Fox's trademark infringement and wrongful conduct, Empire has suffered, and will continue to suffer, irreparably injury.  Unless such conduct is preliminarily and permanently enjoined by this Court, Fox will continue to engage in such wrongful conduct to the detriment of Empire and its Marks.  This injury includes, but is not limited to, the loss of goodwill and reputation that cannot be remedied through damages.

55.     Empire has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116 restraining and enjoining Fox and its agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from using the "Empire" Marks in commerce.

56.     Pursuant to 15 U.S.C. § 1117, Empire is also entitled to recover Fox's profits; all damages sustained by Empire; up to three times the amount of actual damages; and the costs incurred in this action.

TROUTMAN  SANDERS  LLP
5 PARK  PLAZA
SUITE  1400
IRVINE , CA  92614 -2545

- 20 -

25293891

Case 2:15-cv-02158-RA-FFM Document 88-2 Filed 12/03/15 Page 42 of 200 Page ID
Case 2:15-cv-02158-RA-FFM Document 16-8 Filed 06/04/15 Page 21 of 29 Page ID #:101
#:424

57.     Fox's willful use of Empire's Marks without excuse or justification renders this an exceptional case entitling Empire to recover its reasonable attorneys' fees.

## FOURTH COUNTERCLAIM

### (Statutory Unfair Competition and False Advertising under California Business and Professions Code §§ 17200 and 17500 et seq. against all Counter-Defendants)

58.     Empire realleges and incorporates herein the allegations contained in paragraphs 1-57 of this Counterclaim.

59.     By the conduct described above, Fox has engaged in unlawful, unfair and/or fraudulent business acts or practices, and unfair, deceptive, untrue or misleading advertising.

60.     By the conduct described above, Fox has made untrue and misleading statements in connection with its promotion, marketing, advertisement and sale of its goods and services, which they knew, or by the exercise of reasonable care should have known, were untrue or misleading.

61.     Fox's untrue and misleading statements in connection with its promotion, marketing, advertisement and sale of its goods and services are likely to deceive members of the public.

62.     Fox's wrongful conduct constitutes unfair competition and false advertising under California Business and Professions Code §§ 17200 et seq. and 17500 et seq.

63.     As a direct and proximate result of Fox's conduct, Empire has suffered, and will continue to suffer, damages to its business, reputation and goodwill.

64.     Fox should be ordered to pay restitution and disgorge its profits gained from its wrongful conduct.

EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

25293891

Case 2:15-cv-02459-PA-FFM Document 88-2 Filed 12/03/15 Page 43 of 200 Page ID
#:425
Case 2:15-cv-02194-PA-FFM Document 16-3 Filed 06/04/15 Page 22 of 29 Page ID #:102

65.     Unless Fox's conduct is preliminarily and permanently enjoined, Empire will continue to suffer irreparable injury for which there is no adequate remedy at law.

## FIFTH COUNTERCLAIM

### (California Common Law Trademark Infringement against all Counter-Defendants)

66.     Empire realleges and incorporates herein the allegations contained in paragraphs 1-65 of this Counterclaim.

67.     Fox's use of the "Empire" name to advertise, market, promote and sell its products and services has created a likelihood of confusion, mistake or deception, and therefore infringes on Empire's Marks in violation of the common law of the State of California.

68.     As a direct and proximate result of Fox's conduct, Empire has suffered, and will continue to suffer, damages to its business, reputation and goodwill.

69.     Unless Fox's conduct is preliminarily and permanently enjoined, Empire will continue to suffer irreparable injury for which there is no adequate remedy at law.

## SIXTH COUNTERCLAIM

### (Trademark Dilution under California Business and Professions Code § 14247 against all Counter-Defendants)

70.     Empire realleges and incorporates herein the allegations contained in paragraphs 1-69 of this Counterclaim.

71.     Empire's Marks are famous and distinctive, and they became famous and distinctive well before Fox's unauthorized use of the "Empire" name.

72.     Fox's willful use of the "Empire" name in connection with the advertisement and sale of its goods and services is likely to cause dilution by blurring or tarnishment of Empire's Marks.

- 22 -

25293891

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

73. Empire has suffered, and will continue to suffer, substantial and irreparable injury, and has no adequate remedy at law.

74. Empire is entitled to an injunction against Fox's commercial use of the Marks under California Business and Professions Code § 14247.

75. Because Fox willfully intended to cause dilution, it should be required to pay Empire up to three times Fox's profits from, and up to three times all damages suffered by reason of, the wrongful manufacture, use, display, or sale, under California Business and Professions Code § 14250.

## **PRAYER FOR RELIEF**

Wherefore, Empire prays for relief as follows:

1. That the Court award judgment to Empire on all of its Counterclaims;

2. That Fox, its officers, directors, agents, employees, representatives, and any persons or entities acting in concert or participation with them, be preliminarily and permanently enjoined from using in commerce the "Empire" name, or any variant thereof which is a colorable imitation of other otherwise likely to be mistaken or confused with Empire's Marks, pursuant to 15 U.S.C. § 1116, California Business and Professions Code §§ 14247, 17203, or as otherwise available under federal or state statutory or common law;

3. That Fox, its officers, directors, agents, employees, representatives and any persons or entities acting in concert or participation with them, be preliminarily and permanently enjoined from causing any dilution, blurring and/or tarnishment to Empire's Marks, pursuant to 15 U.S.C. § 1116, California Business and Professions Code § 14247, or as otherwise available under federal or state statutory or common law;

4. That Fox pay to Empire any and all profits derived by Fox and all damages sustained by Empire by reason of the acts hereinabove complained of, plus additional damages up to three times above the amount found as actual damages,

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

EMPIRE DISTRIBUTION, INC.'S COUNTERCLAIMS
EXHIBIT B
41

Case 2:15-cv-02158-RA-FFM  Document 88-2  Filed 12/03/15  Page 45 of 200  Page ID
Case 2:13-cv-02159-RA-FFM  Document 16  Filed 06/04/15  Page 24 of 29  Page ID #:104
#:427

1    pursuant to 15 U.S.C. § 1117(a), California Business and Professions Code

2    § 14250, or as otherwise available under federal or state statutory or common law;

3       5.      That Fox pay restitution and disgorge its profits for all ill-gotten gains

4    from its wrongful conduct, as available under federal or state statutory or common

5    law;

6       6.      That Fox reimburse Empire for all of its reasonable costs and

7    attorneys' fees pursuant to 15 U.S.C. §1117(a), or other applicable federal or state

8    statutory or common law;

9       7.      That Fox pay pre-judgment and post-judgment interest to the fullest

10    extent permitted by law; and

11       8.      That the Court grant such other relief as it deems just, equitable or

12    appropriate.

13

14    Dated: June 4, 2015             TROUTMAN SANDERS LLP

15

16                          By: /s/ Paul L. Gale

17                          Paul L. Gale
                            Peter N. Villar

18                          John M. Bowler
                          Michael D. Hobbs

19

20                          *Attorneys for Defendant and
                         Counterclaimant Empire
                         Distribution Inc.*

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

- 24 -

25293891

Case 2:15-cv-02459-RA-FFM Document 88-2 Filed 12/03/15 Page 46 of 200 Page ID
Case 2:13-cv-02354-RA-FFM Document 16-2 Filed 06/04/15 Page 25 of 29 Page ID #:105
#:428

## **DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38, Empire demands a trial by jury on all issues so triable.

Dated:  June 4, 2015                              TROUTMAN SANDERS LLP


By:  /s/ Paul L. Gale
Paul L. Gale
Peter N. Villar
John M. Bowler
Michael D. Hobbs

*Attorneys for Defendant and Counterclaimant Empire Distribution Inc.*

25293891

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 - 2545

# EXHIBIT C

PAUL L. GALE (SBN 065873)
paul.gale@troutmansanders.com
PETER N. VILLAR (SBN 204038)
peter.villar@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, California 92614-2545
Telephone: (949) 622-2704
Facsimile: (949) 769-2052

JOHN M. BOWLER (*pro hac vice*)
john.bowler@troutmansanders.com
MICHAEL D. HOBBS (*pro hac vice*)
michael.hobbs@troutmansanders.com
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 5200
Atlanta, Georgia 30308-2216

*Attorneys for Defendant and*
*Counterclaimant Empire Distribution Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TWENTIETH CENTURY FOX TELEVISION, a division of TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware company, and FOX BROADCASTING COMPANY, a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>EMPIRE DISTRIBUTION, INC., a California corporation,<br><br>Defendant.<br><br>*Caption continued on next page.* | Case No. 2:15-cv-02158-PA-FFM<br><br>Hon. Percy Anderson<br><br>**EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS** |

25727976v3

EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

44

1  EMPIRE DISTRIBUTION, INC., a
2  California corporation,

3              Counterclaimant,

4       v.

5  TWENTIETH CENTURY FOX
   TELEVISION, a division of
6  TWENTIETH CENTURY FOX
   FILM CORPORATION, a Delaware
7  company, and FOX
   BROADCASTING COMPANY, a
8  Delaware corporation,

9              Counter-Defendants.

10

11  **PROPOUNDING PARTY:**     **EMPIRE DISTRIBUTION, INC.**

12  **RESPONDING PARTIES:**    **TWENTIETH CENTURY FOX**
13                             **TELEVISION, TWENTIETH CENTURY FOX**
                               **FILM CORPORATION, AND FOX**
14                             **BROADCASTING COMPANY**

15  **SET NO.:**               **ONE**

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

25727976v3

EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

45

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Empire Distribution, Inc. ("EMPIRE DISTRIBUTION") hereby serves this Request for Production of Documents upon Plaintiffs and Counter-Defendants Twentieth Century Fox Television, Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively "FOX").

## INSTRUCTIONS

A.     Pursuant to Fed. R. Civ. P. 34 (b), FOX shall respond in writing to each of these requests and produce all responsive documents within its possession, custody or control, within thirty (30) days after the service of these requests, at the offices of Troutman Sanders, LLP, located at 5 Park Plaza, Suite 1400, Irvine, CA 92614.

B.     Pursuant to Fed. R. Civ. P. 34 (b)(1)(C), FOX shall produce any ELECTRONICALLY STORED INFORMATION in accordance with the ESI Production Format attached as **Exhibit A**, unless otherwise agreed to in writing by the parties.

C.     If FOX is unable to comply with any particular request, in whole or in part, FOX shall state in its response that a diligent search and reasonable inquiry has been made in an effort to locate the items and provide the reason for its inability to comply – i.e., that the document never existed, has been lost, stolen or destroyed, or is in the possession, custody or control of another person or entity.

D.     If FOX objects to any particular request, in whole or in part, FOX shall state the specific reason for the objection and the specific items being withheld based on the objection.

E.     If any document(s) is withheld under a claim of privilege, FOX shall provide a "privilege log" with its responses, stating the specific basis of the privilege and describing the document(s) being withheld in sufficient detail to enable EMPIRE DISTRIBUTION to assess the applicability of the privilege including the following information:

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1. the general nature of the document (letter, e-mail, memo, etc.);

2. the general subject matter of the document;

3. the date of the document;

4. the identity and position of its author;

5. the identity and position of all addressees and recipients; and

6. the location of the document.

## DEFINITIONS

The following definitions apply to each of the document requests:

A.     The term "COMPLAINT" refers to the Complaint for Declaratory Relief filed by FOX on March 23, 2015 in this case, and any subsequent amendments thereto.

B.     The term "COUNTERCLAIMS" refers to the Counterclaims filed by EMPIRE DISTRIBUTION against FOX on June 4, 2015 in this case, and any subsequent amendments thereto.

C.     The term "FOX" refers collectively to Plaintiffs and Counter-Defendants Twentieth Century Fox Television, Twentieth Century Fox Film Corporation, and Fox Broadcasting Company, including their current or former officers, directors, employees, principals, agents, representatives, attorneys, accountants, parents, subsidiaries, affiliates and any other person or entity acting on their behalf.

D.     The term "EMPIRE DISTRIBUTION" refers to Defendant and Counterclaimant Empire Distribution, Inc., including its current or former officers, directors, employees, principals, agents, representatives, attorneys, accountants, parents, subsidiaries, affiliates and any other person or entity acting on its behalf.

E.     The term "*EMPIRE SERIES*" refers to FOX's musical dramatic television series that is described in paragraph 10 of the COMPLAINT.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

25727976v3

- 2 -

EXHIBIT C
4

EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

F.     The term "*EMPIRE SERIES MUSIC*" refers to any music that is produced, composed, performed and/or featured on or in connection with the *EMPIRE SERIES* as described in paragraph 12 of the COMPLAINT.

G.     The term "DOCUMENTS" is used in its customary and broadest sense to include all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained, including all COMMUNICATIONS and ELECTRONICALLY STORED INFORMATION.

H.     The term "COMMUNICATIONS" refers to any transmission of information between two or more persons including, but not limited to, letters, facsimiles, correspondence, memos, e-mails, text messages, instant messages, and social network communications including, but not limited to, messages and other postings on social network sites such as Facebook and Twitter.

I.     The term "ELECTRONICALLY STORED INFORMATION" shall include any information stored in an electronic medium (such as electrical, digital, magnetic, wireless, optical, electromagnetic or similar capabilities) including, but not limited to, e-mail, computer files, internet files, voice-mail, photos, graphics, text messages, instant messages, and social network communications including, but not limited to, messages and other postings on social network sites such as Facebook and Twitter.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS reflecting, referring or relating to FOX's creation and development of the *EMPIRE SERIES*, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015, including, without limitation, any notes, drafts, memos, treatments, scripts, scriptments, synopsis, outlines, pitches or COMMUNICATIONS relating to the concepts, themes, plots, premises, topics and/or characters of the series.

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

**REQUEST FOR PRODUCTION NO. 2:**

All COMMUNICATIONS between FOX and creators Lee Daniels or Danny Strong, or their agents/representatives, regarding the conception, creation or development of the *EMPIRE SERIES*, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS reflecting, referring or relating to FOX's decision to use the "Empire" name for the *EMPIRE SERIES* including, without limitation, when, where, why, and by whom the name was chosen, any artistic relevance of the name to the show, any alternate names for the series that were considered, proposed or discussed, and all meetings or COMMUNICATIONS regarding the use of the name "Empire," or any alternate names, for the series.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS reflecting, referring or relating to FOX's research, investigation or due diligence, prior to the date of the first pilot episode of the *EMPIRE SERIES* on January 7, 2015, regarding any use or trademarks of the name "Empire" by any other company.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS reflecting, referring or relating to any research, investigation or due diligence by FOX regarding EMPIRE DISTRIBUTION, including, but not limited to, its use or trademark of the "Empire" name.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS reflecting, referring or relating to any attempts by FOX to register the name "Empire", or any other name, mark, logo or symbol relating to the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

*EMPIRE SERIES*, as a trademark, including any COMMUNICATIONS relating thereto.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS reflecting, referring or relating to any consumer or market research surveys conducted by FOX regarding the "Empire" name.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS reflecting, referring or relating to FOX's alleged "intellectual property rights in and to the fictional television series *Empire* and the music therefrom, including copyright and trademark rights," as alleged in paragraph 3 of the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS reflecting, referring or relating to FOX's design of the "Empire" mark/logo for the *EMPIRE SERIES* including, without limitation, all drafts, sketches, designs, outlines, depictions or illustrations of the "Empire" mark/logo (including without limitation those depicted in paragraph 25 of the COMPLAINT and paragraph 21 of the COUNTERCLAIMS), any drafts, sketches, designs, outlines, depictions or illustrations of any alternate designs of the "Empire" mark/logo, and all COMMUNICATIONS relating thereto.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS reflecting, referring or relating to FOX's use of a city skyline graphic in conjunction with the "Empire" mark/logo (as depicted in paragraph 22 of the COUNTERCLAIMS) including, without limitation, all COMMUNICATIONS regarding such use of the city skyline graphic.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS reflecting, referring or relating to any advertisements, promotions or marketing efforts by FOX using the "Empire" mark/logo.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS reflecting, referring or relating to the promotion, advertisement, or marketing of the *EMPIRE SERIES MUSIC* including, but not limited to, all contracts, agreements, or COMMUNICATIONS relating thereto.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS reflecting, referring or relating to the sale, license, distribution or release of the *EMPIRE SERIES MUSIC* in physical record stores, online stores such as iTunes, Google Play, Amazon.com, and Spotify, or anywhere else, including, but not limited to, all contracts, agreements, or COMMUNICATIONS relating thereto.

**REQUEST FOR PRODUCTION NO. 14:**

All COMMUNICATIONS between FOX and the main cast members of the *EMPIRE SERIES* or their agents/representatives, including, but not limited to, Terrance Howard, Taraji Henson, Trai Byers, Jussie Smollett, Bryshere Gray, Kaitlin Doubleday, Grace Gealey and Malik Yoba, regarding the concept of the series prior to the date of the first pilot episode on January 7, 2015.

**REQUEST FOR PRODUCTION NO. 15:**

All agreements, contracts or COMMUNICATIONS between FOX and any musicians who produce, perform or compose music for the *EMPIRE SERIES*, regarding the production, promotion, advertisement, sale, license, distribution or release of the *EMPIRE SERIES MUSIC*, including, but not limited to, Timbaland

(aka Timothy Mosely), Ne-Yo (aka Schaffer Chimere Smith), Jussie Smollett, Bryshere Gray, Gladys Knight, Anthony Hamilton, Sway Calloway, Raven Symone, Estelle, Mary J. Blige, Snoop Dogg, Rita Ora, Juicy J, Patti LaBelle and Charles Hamilton, or any of their agents/representatives.

**REQUEST FOR PRODUCTION NO. 16:**

All contracts, agreements, marketing plans and COMMUNICATIONS between FOX and Columbia Records regarding the promotion, advertisement, sale, license, distribution or release of *EMPIRE SERIES MUSIC*.

**REQUEST FOR PRODUCTION NO. 17:**

All internal FOX COMMUNICATIONS regarding the production, sale, license, promotion, advertisement, marketing, distribution or release of the *EMPIRE SERIES MUSIC*.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS reflecting, referring or relating to FOX's online account with Mediabase.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS reflecting, referring or relating to the performance, presentation or promotion of the *EMPIRE SERIES MUSIC* at radio stations, concerts, live performances, events, physical record stores and other venues.

**REQUEST FOR PRODUCTION NO. 20:**

Digital and hard copies of the *EMPIRE SERIES* including each season and episode to date.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**REQUEST FOR PRODUCTION NO. 21:**

Digital and hard copies of all *EMPIRE SERIES MUSIC*.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS reflecting, referring or relating to any search or investigation of any record, including but not limited to the records of the United States Patent and Trademark Office, state trademark records, and business directories conducted by FOX that relate to the "Empire" mark or any similar name or mark used by FOX or anyone else, including any trademark search report for any mark or designation that consists of or includes the word "Empire" or any variant of that word.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS reflecting, referring or relating to any legal opinion that FOX is relying on in this proceeding concerning its right to use the "Empire" mark or any similar mark or name.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS reflecting, referring or relating to any agreements, written or oral, between FOX and anyone else concerning the use of the "Empire" mark.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS reflecting, referring or relating to any of FOX's present or prospective sales, marketing or business plans/strategies regarding products or services provided in connection with the "Empire" mark, including the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS sufficient to identify every existing or intended good or service offered or sold by FOX in connection with the "Empire" mark, and the date on which each such good or service was first offered or sold, or will be offered or sold.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS sufficient to show the channels of trade or distribution (e.g., retail, wholesale, Internet, catalog, etc.) through which FOX has sold or offered for sale, currently sell or offer for sale, or plan to sell or offer for sale any goods or services identified by the "Empire" mark.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS sufficient to show all geographical areas (by city and state; and, if outside the United States, by country) in which FOX has sold, or offered for sale, goods or services under or in connection with the "Empire" mark.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS reflecting, referring or relating to any study regarding actual or likely purchasers of goods or services offered for sale, sold, promoted, or advertised under or in association with the "Empire" mark.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS sufficient to show each purchase of any good or service offered for sale, sold, promoted, or advertised under or in association with the "Empire" mark.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS reflecting, referring or relating to FOX's revenues, expenses, and profits relating to all goods and services sold, or offered for sale, under or in association with the "Empire" mark, including the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS reflecting, referring or relating to the total volume of sales for all goods and services sold under or in association with the "Empire" mark, including the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS reflecting, referring or relating to the amounts spent by FOX in each year to advertise, market and promote goods or services under or in association with the "Empire" mark or variations thereof, including the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS reflecting, referring or relating to any publicity or news relating to the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*, including but not limited to press releases, articles, interviews, and public relations pieces appearing in the media, press, blogs, websites, internet, journals, newspapers, magazines or trade publications.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS reflecting, referring or relating to anyone other than FOX that has used or is using the designation or word "Empire" in the music industry.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS sufficient to identify by name and address each entity or individual authorized to sell, distribute, promote, advertise or market any goods or services identified by FOX's "Empire" mark, including in connection with the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS reflecting, referring or relating to any cease-and-desist letter, demand, dispute, complaint, objection, protest, lawsuit, threatened lawsuit, or expression of concern by FOX to a third party, or by any third party to FOX, relating to FOX's or the third party's existing or intended use of the "Empire" mark.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS reflecting, referring or relating to the date FOX first became aware of EMPIRE DISTRIBUTION and/or its use of the "Empire" name and any subsequent COMMUNICATIONS regarding EMPIRE DISTRIBUTION'S use of that mark.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS reflecting, referring or relating any actual or potential, direct or indirect, competition between the products or services that FOX offers, offered, or intends to offer under its "Empire" mark and the products or services that EMPIRE DISTRIBUTION offers or offered under its "Empire" marks.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS reflecting, referring or relating to any instance in which any person or entity made any statement, comment, inquiry or question regarding

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

any actual or potential association, affiliation, connection, correlation, relation or sponsorship between the *EMPIRE SERIES* and/or *EMPIRE SERIES MUSIC*, on the one hand, and EMPIRE DISTRIBUTION, on the other hand.

**REQUEST FOR PRODUCTION NO. 41:**

All COMMUNICATIONS by or from FOX, FOX's customers or other persons, expressing any actual or potential confusion, association, affiliation, connection, correlation, relation or sponsorship between FOX and EMPIRE DISTRIBUTION and their respective goods or services.

**REQUEST FOR PRODUCTION NO. 42:**

All COMMUNICATIONS by or from FOX, FOX's customers or other persons, expressing any lack of confusion, association, affiliation, connection, correlation, relation or sponsorship between FOX and EMPIRE DISTRIBUTION and their respective goods or services.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS reflecting, referring or relating to whether or not FOX's use of the "Empire" mark does, may or will infringe, or cause any actual or potential confusion with, EMPIRE DISTRIBUTION'S "Empire" marks.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS reflecting, referring or relating to any poll, survey, study, report, analysis, or evaluation done by FOX or on FOX's behalf that relates to the "Empire" mark.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS reflecting, referring or relating to any witness retained or specially employed by FOX to provide expert testimony in the case, including, but not limited to, all DOCUMENTS that reflect, refer, or relate to any opinions or conclusions of the expert, the basis of any such opinions or conclusions, any facts or data considered by the expert in forming any such opinions or conclusions, and all DOCUMENTS reviewed or relied upon by the expert in forming his/her opinions or conclusions.

**REQUEST FOR PRODUCTION NO. 46:**

All COMMUNICATIONS between FOX's attorneys and any expert witness who is required to provide a report under Fed. R. Civ. P. 26(a)(2)(B), to the extent the COMMUNICATION relates to the compensation for the expert's study or testimony; identifies facts or data that FOX's attorneys provided and that the expert considered in forming his/her opinions to be expressed; or identifies assumptions that FOX's attorneys provided and that the expert relied on in forming the opinions to be expressed.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS supporting the allegations in paragraph 1 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS supporting the allegations in paragraph 11 of FOX's COMPLAINT.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS supporting the allegations in paragraph 12 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS supporting the allegations in paragraph 20 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS supporting the allegations in paragraph 21 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS supporting the allegations in paragraphs 22 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS supporting the allegations in paragraph 23 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 54:**

All DOCUMENTS supporting the allegations in paragraph 24 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS supporting the allegations in paragraphs 25 of FOX's COMPLAINT.

25727976v3

EXHIBIT C
59
EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 56:**

All DOCUMENTS supporting the allegations in paragraph 26 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 57:**

All DOCUMENTS supporting the allegations in paragraph 27 of FOX's COMPLAINT.

**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS upon which FOX's answer or affirmative defenses to the COUNTERCLAIMS are based including, but not limited to, its first affirmative defense purportedly based on the First Amendment to the United States Constitution.

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS identified or referenced in FOX's Initial Disclosures, pursuant to Fed. R. Civ. P. 26(a)(1).

Dated:  July 17, 2015                          TROUTMAN SANDERS LLP


By: _____
Paul L. Gale
Peter N. Villar
John M. Bowler
Michael D. Hobbs

*Attorneys for Defendant and Counterclaimant Empire Distribution Inc.*

EXHIBIT C
66
EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# Exhibit A

EXHIBIT C
61

# ESI Production Format

**Format of Production:**

Both electronically stored information ("ESI") and hard copy paper files should be produced in image format with the exception of certain ESI formats identified in the technical specifications below. Images shall be endorsed with a bates number at the page level accompanied with text files containing the searchable text and a delimited data load file containing associated document information and metadata for each document. The original native files shall be preserved.

ESI shall be collected in a manner that preserves metadata to the extent reasonably possible. ESI shall be produced in a format that is reasonably usable to same extent as the original native file. Duplicates shall be removed from all ESI productions in a manner that does not break up document families – in other words, emails shall be treated as duplicates only if they are identical both in their bodies and in all their attachments, and an email attachment shall not be treated as a duplicate merely because an identical copy of the document exists as a separate file. ESI duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms to create and compare hash values for exact matches only. A duplicate custodian field ["DupCustodian"] shall be provided that identifies each custodian from whom the document was collected, but not produced because it was removed as a duplicate. Any duplicate ESI that is not produced shall be preserved.

Specific technical production format details are outlined below:

- Native ESI and paper shall be converted to black and white 300 dpi TIF format image files with Group IV compression and one TIF file per page. Upon written request, a Party shall produce color images for selected documents. Documents produced in color shall be produced as JPEG images, 200 dpi or higher and 24-bit color depth. Each color document image file shall be named with the unique Bates Number of the first page of the document in question followed by the file extension "JPG";

- For documents whose native format is a spreadsheet, database, audio or video the original native files should be produced in addition to a single page TIF placeholder for each document. The placeholder should be endorsed with the original filename of the document, "Produced In Native Format," and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document;

- For documents whose native format is MS PowerPoint, the original native files and single page black and white Group IV TIF format image files shall be produced (with any comments shown);

- Each image file shall be named with its unique Bates number and branded with the Bates number and confidentiality designation (if any) on the face of the image in a location that does not cover up any of the documents original text or images;

EXHIBIT C
62

- One text file per document shall be provided for all ESI and scanned paper documents containing searchable text for the document. Extracted full text shall be provided for ESI, and OCR text shall be provided for scanned paper. OCR generated text should only be used for ESI if extracted text is not available or if the document has been redacted. Text files shall be named with the beginning Bates number of the corresponding document and a path to the text file within the production should be provided in the data load file;

- An image identification file shall be provided containing a row of information for every image included in the production. The format of the file should be industry standard IPRO format (LFP), Concordance Image format (OPT) or other delimited file format using common ASCII (American Standard Code for Information Interchange) characters for field identification that includes one row of information for each image with fields for image Bates number, relative path to the image, image filename, page number, and document start identifier to designate the first page of a document;

- All document information and metadata for each document shall be produced in an ASCII (American Standard Code for Information Interchange) delimited data load file with one row for each document produced and shall include the document information and metadata identified in the table below. The format of the file shall be industry standard Concordance DAT file format or a delimited text file that uses ASCII character delimiters as follows: Field Delimiter = ""ASCII (020), Text Quote = "þ" ASCII (254), Multi-Entry = ";" ASCII (059)

## Document Information and Metadata To Be Produced

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| BegDoc | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| EndDoc | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| BegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| EndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| DupCustodian | Text – paragraph Separate entries with ";" | | All names of people the document was collected from even if removed from production as a duplicate | All names of people the document was collected from even if removed from production as a duplicate |
| Folder | Text | | File path/folder structure for the original native file as it existed at the time of collection | File path/folder structure for the original native file as it existed at the time of collection. Should include full path and folder locations of email container files such as PST and NSF and the internal path of the email within |

| | | | | those files |
|---|---|---|---|---|
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| DateSent | Date (mm/dd/yyyy) | | | Date message sent |
| TimeSent | Time (hh:mm:ss) | | | Time message sent |
| DateReceived | Date (mm/dd/yyyy) | | | Date message received |
| TimeRecv | Time (hh:mm:ss) | | | Time message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |
| DateCreated | Date/Time (mm/dd/yyyy) | | Date file was created | |
| DateModified | Date/Time (mm/dd/yyyy) | | Date file was last modified | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Company | Text - paragraph | | Document company or organization from metadata | |
| FileHash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# PROOF OF SERVICE

I, Anabel Pineda, declare:

I am a citizen of the United States and employed in Orange County, CA. I am over the age of 18 and not a party to the within action; my business address is 5 Park Plaza, Suite 1400, Irvine, CA 92614-2545.

On July 17, 2015, I served the following document(s) described as:

**EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS**

☐ **BY FACSIMILE TRANSMISSION**: As follows: The papers have been transmitted to a facsimile machine by the person on whom it is served at the facsimile machine telephone number as last given by that person on any document which he or she has filed in the cause and served on the party making the service. The copy of the notice or other paper served by facsimile transmission shall bear a notation of the date and place of transmission and the facsimile telephone number to which transmitted or be accompanied by an unsigned copy of the affidavit or certificate of transmission which shall contain the facsimile telephone number to which the notice of other paper was transmitted to the addressee(s).

☐ **BY MAIL**: As follows: I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Irvine, CA, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY OVERNIGHT MAIL**: As follows: I am readily familiar with the firm's practice of collection and processing correspondence for overnight mailing. Under that practice, it would be deposited with overnight mail on that same day prepaid at Irvine, CA in the ordinary course of business.

On the following parties:

Molly M. Lens
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035
Email: mlens@omm.com

26310892

EXHIBIT C
65

1   Marvin S. Putnam
2   **LATHAM & WATKINS LLP**
    10250 Constellation Blvd., #300
3   Los Angeles, California 90067-6203
    Email: marvin.putnam@lw.com
4

5       I declare that I am employed in the office of a member of the bar of this court at whose

6   direction the service was made.

7       Executed on July 17, 2015, at Irvine, CA.

8

9                                                   _Anabel Pineda_

10  _____
                        Anabel Pineda

11

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
3  CAMERON H. BISCAY (S.B. #266786)
   cbiscay@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, California 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:  (310) 246-6779

7  Attorneys for Twentieth Century Fox
   Television, a division of Twentieth Century
8  Fox Film Corporation, and Fox Broadcasting
   Company

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

13

| | |
|---|---|
| TWENTIETH CENTURY FOX TELEVISION, a division of TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware company, and FOX BROADCASTING COMPANY, a Delaware corporation, | Case No. 2:15-cv-2158 |
| | Hon. Percy Anderson |
| Plaintiffs, | **FOX'S RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| EMPIRE DISTRIBUTION, INC., a California corporation, | |
| Defendant. | |
| And related counterclaims | |

25  **PROPOUNDING PARTY:**   EMPIRE DISTRIBUTION, INC.

26  **RESPONDING PARTY:**    FOX

27  **SET NO.:**             ONE

28

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the

2  Local Rules of the United States District Court for the Central District of California

3  (the "Local Rules"), Plaintiffs and Counterclaim Defendants Twentieth Century

4  Fox Television, a division of Twentieth Century Fox Film Corporation, and Fox

5  Broadcasting Company (collectively, "Fox") hereby submit their responses and

6  objections to Defendant and Counterclaimant Empire Distribution, Inc.'s First Set

7  of Requests for Production of Documents ("Requests" and, individually,

8  "Request"), served on July 17, 2015, as follows:

9                              **<u>GENERAL OBJECTIONS</u>**

10    In addition to Fox's specific responses and objections to each Request as

11  provided below, Fox makes the following general objections to the Requests:

12    1.    Fox objects to each and every Request, definition, and instruction that

13  purports to impose obligations beyond those required or permitted by the Federal

14  Rules of Civil Procedure or the Local Rules.

15    2.    Fox objects to each and every Request, definition, and instruction to

16  the extent it contains inaccurate, incomplete, or misleading descriptions of the facts,

17  persons, relationships, events, and pleadings underlying this action.  The production

18  of any information shall not constitute Fox's agreement with or acquiescence to any

19  such description.

20    3.    Fox objects to each and every Request to the extent it seeks

21  information that is neither relevant to any claim or defense in this action, nor

22  reasonably calculated to lead to the discovery of admissible evidence.

23    4.    Fox objects to each and every Request to the extent it is vague,

24  ambiguous, unclear, or fails to identify the requested documents with reasonable

25  particularity as required by Federal Rule of Civil Procedure 34.  To the extent that a

26  Request requires subjective judgment on the part of Fox as to what information is

27  requested, Fox will produce responsive, non-privileged documents according to its

28  understanding of the Request.

5.     Fox objects to each and every Request to the extent it is overbroad, onerous, and unduly burdensome and, thus, outside the scope of permissible discovery.

6.     Fox objects to each and every Request to the extent it seeks information prior to the time Fox learned of the series that became *Empire* on the grounds that such requests are overbroad, beyond the scope of the allegations, and not reasonably calculated to lead to the discovery of admissible evidence.   Fox further objects to each and every Request to the extent it seeks information after the time that Empire Distribution sent its initial objection to Fox in February 2014 on the ground that such requests are overbroad, beyond the scope of the allegations, seek information protected by the attorney-client privilege and work product doctrines and not reasonably calculated to lead to the discovery of admissible evidence.  Fox will not produce documents outside of this relevant time period.

7.     Fox objects to each and every Request to the extent it seeks information that is a matter of public record, already in the possession of the defendant, or otherwise available to the public and the defendant.

8.     Fox objects to each and every Request to the extent it seeks the disclosure of information that is more easily obtainable by deposition.

9.     Fox objects to each and every Request to the extent it seeks cumulative or duplicative information.

10.     Fox objects to each and every Request to the extent it seeks the production of documents other than in Fox's possession, custody, or control.

11.     Fox objects to each and every Request to the extent it seeks the disclosure of information and/or production of documents protected by the attorney-client privilege, the attorney-work product doctrine, the common interest or joint defense privileges, rules and agreements governing privacy or confidentiality, or any other applicable privilege or protection recognized under statute or applicable case law.  Inadvertent production by Fox of any information

- 2 -

protected by any applicable privilege or protection shall not constitute a waiver of the privilege or protection.

12.     Fox objects to each and every Request to the extent it seeks Fox's sensitive, confidential, or proprietary business information.  To the extent such documents are responsive, relevant, and not privileged, Fox will provide such documents after the Court enters an appropriate protective order in this case.

13.     Fox objects to each and every Request to the extent it seeks information or the production of documents whose disclosure would otherwise be prohibited by applicable law, rule, regulation, or contract obligation.

14.     Nothing contained in any response herein shall be deemed an admission, concession, or waiver by Fox as to the validity of any claim or defense asserted by Fox.

15.     All objections as to the relevance, authenticity, or admissibility of any documents produced are expressly reserved by Fox.

16.     To the extent that Fox responds to any of the Requests, it reserves the right to object on any grounds, at any time, to other discovery requests involving or relating to the subject matter of the Requests that Fox has responded to herein.

17.     An objection or an undertaking to produce documents pursuant to a particular Request should not be construed to indicate that responsive documents actually exist.

18.     Fox reserves all objections to the use of these responses.  All such objections may be interposed by Fox at the time of trial or as otherwise required by the rules or order of the Court.

19.     Fox objects to each and every Request to the extent it seeks the production of "all" documents in Fox's possession.  To the extent that Fox undertakes to produce documents, Fox will conduct a reasonable search of custodians reasonably likely to have non-cumulative, responsive documents as qualified by Fox's objections and responses and, in the case of electronic

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

documents, Fox will use search terms reasonably expected to yield responsive documents. Fox further objects to the production of "all" documents when a subset of the documents would be sufficient to show the pertinent information.

20.     Fox objects to each and every Request to the extent it seeks the production of documents restored from backup tapes or archived data sources that are not reasonably accessible. Fox will not search backup tapes or archived data sources.

21.     Fox objects to Instruction A as unduly burdensome. Fox will meet and confer with defendant about the timing for the production of documents, including whether productions should be done on a rolling basis.

22.     Fox objects to Instruction B as overly broad and unduly burdensome to the extent that it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or Local Rules. Fox will meet and confer about a reciprocal protocol for the production of documents.

23.     Fox objects to Instruction E as premature. Fox will meet and confer with defendant about a protocol for privilege logs.

24.     Fox objects to the definition of "Fox" as overly broad and unduly burdensome to the extent that such definition purports to extend to Twentieth Century Fox Film Corporation as a whole. Fox will not produce documents from any division of Twentieth Century Fox Film Corporation other than Twentieth Century Fox Television. Fox further objects to the definition of "Fox" as overly broad and unduly burdensome to the extent it purports to include "principals, agents, representatives, attorneys, accountants, parents, subsidiaries, affiliates, and any other person or entity acting on" the behalf of Twentieth Century Fox Television or Fox Broadcasting Company.

25.     Fox objects to the definition of "*Empire Series Music*" as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

1   admissible evidence to the extent that it includes music other than the Soundtrack

2   Music, as defined in the complaint.

3       26.     Fox objects to the definition of "Documents" as overly broad and

4   unduly burdensome to the extent such definition purports to have Fox search for

5   documents or information neither relevant to the subject matter of this action nor

6   reasonably calculated to lead to the discovery of admissible evidence.  Fox further

7   objects to the definition to the extent that it purports to require Fox to produce

8   identical copies of documents.

9       27.     Fox objects to each and every Request to the extent it is premature in

10  asking or requiring Fox to provide information that is the subject of expert

11  disclosures under Federal Rule of Civil Procedure 26(a)(2) according to the

12  Scheduling Order filed by the Court on July 23, 2015 (Dkt. 23).

13      28.     Fox reserves the right to redact or exclude information from

14  documents to protect unnecessary disclosure of nonresponsive or irrelevant

15  sensitive, confidential, or proprietary business information.

16      29.     As used in each objection and response made herein, "and" or "or"

17  shall be construed both conjunctively and disjunctively.

18      30.     Fox reserves the right to supplement and/or amend these responses.

19      31.     The fact that Fox may reassert particular objections in responding to a

20  Request should not be construed in any way as limiting the generality of the

21  foregoing objections.  The General Objections set forth above are asserted with

22  respect to each and every Request set forth below.

23                      **<u>SPECIFIC OBJECTIONS AND RESPONSES</u>**

24      In addition to the foregoing General Objections that are incorporated in each

25  and every response set forth below, Fox makes the following specific responses and

26  objections to the Requests:

27

28

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS reflecting, referring or relating to FOX's creation and development of the *EMPIRE SERIES*, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015, including, without limitation, any notes, drafts, memos, treatments, scripts, scriptments, synopsis, outlines, pitches or COMMUNICATIONS relating to the concepts, themes, plots, premises, topics and/or characters of the series.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to Fox's creation and development of the *Empire* series, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "the time the series was first conceived;" (c) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; and (d) seeks documents outside Fox's possession, custody, and control.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents that reflect, refer, or relate to the use of the mark "Empire" in connection with Fox's creation and development of the *Empire* series from the time Fox learned of the series that became *Empire* through January 7, 2015, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 2:**

All COMMUNICATIONS between FOX and creators Lee Daniels or Danny Strong, or their agents/representatives, regarding the conception, creation or

- 6 -

1  development of the *EMPIRE SERIES*, from the time the series was first conceived

2  through the date of the first pilot episode on January 7, 2015.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

4        In addition to the foregoing General Objections, each of which is

5  incorporated herein by reference, Fox objects to this Request because it (a) is overly

6  broad and unduly burdensome in seeking all communications between Fox and

7  creators Lee Daniels or Danny Strong, or their agents/representatives, regarding the

8  conception, creation, or development of the *Empire* series, from the time the series

9  was first conceived through the date of the first pilot episode on January 7, 2015,

10  without regard to whether such documents are relevant to the issues in this action;

11  (b) is vague and ambiguous as to "the time the series was first conceived"; (c) seeks

12  the production of information outside of Fox's possession, custody, or control;

13  (d) seeks information that violates the right of privacy of the talent with whom Fox

14  works; and (e) is cumulative and duplicative of Request No. 1.  Subject to, and

15  without waiving, the General Objections and these specific objections, Fox will

16  produce, based on a reasonable inquiry, responsive, non-privileged communications

17  between Fox and creators Lee Daniels or Danny Strong, or their known

18  agents/representatives, regarding the use of the mark "Empire" in connection with

19  the conception, creation, or development of the *Empire* series, from the time Fox

20  learned of the series that became *Empire* through January 7, 2015, if any such

21  documents are within Fox's possession, custody, or control.

22  **REQUEST FOR PRODUCTION NO. 3:**

23        All DOCUMENTS reflecting, referring or relating to FOX's decision to use

24  the "Empire" name for the *EMPIRE SERIES* including, without limitation, when,

25  where, why, and by whom the name was chosen, any artistic relevance of the name

26  to the show, any alternate names for the series that were considered, proposed or

27  discussed, and all meetings or COMMUNICATIONS  regarding the use of the

28  name "Empire," or any alternate names, for the series.

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; (b) seeks information outside Fox's custody, possession, and control; and (c) is cumulative and duplicative of Request Nos. 1 and 2.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents reflecting, referring, or relating to Fox's decision to use the "Empire" name for the *Empire* series.  With respect to alternate names for the series that were considered, proposed, or discussed, however, subject to, and without waiving the General Objections and these specific objections, Fox will only produce documents sufficient to show any alternative names, if any such non-privileged documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS reflecting, referring or relating to FOX's research, investigation or due diligence, prior to the date of the first pilot episode of the EMPIRE SERIES on January 7, 2015, regarding any use or trademarks of the name "Empire" by any other company.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is vague and ambiguous as to what constitutes "use"; (b) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; and (c) is cumulative and duplicative of Request No. 1.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents reflecting, referring, or relating to Fox's research, investigation, or due diligence

1   regarding any trademarks of the name "Empire" by any other company, prior to

2   January 7, 2015, if any such documents are within Fox's possession, custody, or

3   control.

4   **REQUEST FOR PRODUCTION NO. 5:**

5        All DOCUMENTS reflecting, referring or relating to any research,

6   investigation or due diligence by FOX regarding EMPIRE DISTRIBUTION,

7   including, but not limited to, its use or trademark of the "Empire" name.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

9        In addition to the foregoing General Objections, each of which is

10  incorporated herein by reference, Fox objects to this Request because it (a) is overly

11  broad and unduly burdensome in seeking all documents reflecting, referring, or

12  relating to any research, investigation, or due diligence by Fox regarding Empire

13  Distribution, without regard to whether such documents are relevant to the issues in

14  this action; (b) is vague and ambiguous as to what constitutes "use"; (c) seeks the

15  production of documents immune from discovery under the attorney-client

16  privilege or work product doctrine; and (d) is argumentative.  Subject to, and

17  without waiving, the General Objections and these specific objections, Fox will

18  produce, based on a reasonable inquiry, responsive, non-privileged documents

19  reflecting, referring, or relating to any research, investigation, or due diligence by

20  Fox regarding Empire Distribution and *Empire*, if any such documents are within

21  Fox's possession, custody, or control.

22  **REQUEST FOR PRODUCTION NO. 6:**

23       All DOCUMENTS reflecting, referring or relating to any attempts by FOX to

24  register the name "Empire", or any other name, mark, logo or symbol relating to the

25  EMPIRE SERIES, as a trademark, including any COMMUNICATIONS relating

26  thereto.

27

28

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to any attempts by Fox to register the name "Empire" or any other name, mark, logo, or symbol relating to the *Empire* series, as a trademark, without regard to whether such documents are relevant to the issues in this action; (b) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; and (c) seeks information otherwise available to the public and the defendant. Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents submitted to the United States Patent and Trademark Office regarding Fox's application to register "Empire" as a trademark and responses received thereto, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS reflecting, referring or relating to any consumer or market research surveys conducted by FOX regarding the "Empire" name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to any consumer or market research surveys conducted by Fox regarding the "Empire" name, without regard to whether such documents are relevant to the issues in this action; (b) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; and (c) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information. Subject to, and without waiving, the General Objections and

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged consumer or market research surveys conducted by Fox regarding the "Empire" name, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS reflecting, referring or relating to FOX's alleged "intellectual property rights in and to the fictional television series *Empire* and the music therefrom, including copyright and trademark rights," as alleged in paragraph 3 of the COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to Fox's alleged intellectual property rights in and to the fictional television series *Empire* and the music therefrom, including copyright and trademark rights, without regard to whether such documents are relevant to the issues in this action; (b) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; (c) seeks information otherwise available to the public and the defendant; and (d) is argumentative.  Fox will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS reflecting, referring or relating to FOX's design of the "Empire" mark/logo for the *EMPIRE SERIES* including, without limitation, all drafts, sketches, designs, outlines, depictions or illustrations of the "Empire" mark/logo (including without limitation those depicted in paragraph 25 of the COMPLAINT and paragraph 21 of the COUNTERCLAIMS), any drafts, sketches, designs, outlines, depictions or illustrations of any alternate designs of the "Empire" mark/logo, and all COMMUNICATIONS relating thereto.

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to Fox's design of the "Empire" mark/logo for the *Empire* series, without regard to whether such documents are relevant to the issues in this action; and (b) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents relating to Fox's design of the "Empire" mark/logo for the *Empire* series, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS reflecting, referring or relating to FOX's use of a city skyline graphic in conjunction with the "Empire" mark/logo (as depicted in paragraph 22 of the COUNTERCLAIMS) including, without limitation, all COMMUNICATIONS regarding such use of the city skyline graphic.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is argumentative; (b) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; and (c) is cumulative and duplicative of Request No. 9.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents relating to Fox's use of a city skyline graphic in conjunction with the "Empire" mark/logo, if any such documents are within Fox's possession, custody, or control.

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS reflecting, referring or relating to any advertisements, promotions or marketing efforts by FOX using the "Empire" mark/logo.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to any advertisements, promotions, or marketing efforts by Fox using the "Empire" mark/logo, without regard to whether such documents are relevant to the issues in this action; and (b) is vague and ambiguous as to the meaning of "promotions or marketing efforts."  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged exemplars of advertisements, promotions, or marketing efforts by Fox using the "Empire" mark/logo, if any such exemplars are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS reflecting, referring or relating to the promotion, advertisement, or marketing of the *EMPIRE SERIES MUSIC* including, but not limited to, all contracts, agreements, or COMMUNICATIONS relating thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to the promotion, advertisement, or marketing of the *Empire* series music, without regard to whether such documents are relevant to the issues in this action; (b) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information; and (c) is vague and ambiguous as to the meaning of "promotion" and "marketing."  Subject to, and without waiving, the General

- 13 -

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

1    Objections and these specific objections, Fox will produce, based on a reasonable

2    inquiry, responsive, non-privileged exemplars of promotions, advertisements, or

3    marketing of the *Empire* series music and executed contracts, if any such

4    documents are within Fox's possession, custody, or control.

5    **REQUEST FOR PRODUCTION NO. 13:**

6         All DOCUMENTS reflecting, referring or relating to the sale, license,

7    distribution or release of the *EMPIRE SERIES MUSIC* in physical record stores,

8    online stores such as iTunes, Google Play, Amazon.com, and Spotify, or anywhere

9    else, including, but not limited to, all contracts, agreements, or

10   COMMUNICATIONS  relating thereto.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

12        In addition to the foregoing General Objections, each of which is

13   incorporated herein by reference, Fox objects to this Request because it (a) is overly

14   broad and unduly burdensome in seeking all documents reflecting, referring, or

15   relating to the sale, license, distribution, or release of the *Empire* series music,

16   without regard to whether such documents are relevant to the issues in this action;

17   (b) seeks proprietary or confidential business information, trade secrets, or other

18   highly sensitive information; and (c) seeks the production of documents immune

19   from discovery under the attorney-client privilege or work product doctrine.

20   Subject to, and without waiving, the General Objections and these specific

21   objections, Fox will produce, based on a reasonable inquiry, responsive, non-

22   privileged executed agreements relating to the sale, license, distribution, or release

23   of the *Empire* series music, if any such documents are within Fox's possession,

24   custody, or control.

25   **REQUEST FOR PRODUCTION NO. 14:**

26        All COMMUNICATIONS between FOX and the main cast members of the

27   EMPIRE SERIES or their agents/representatives, including, but not limited to,

28   Terrance Howard, Taraji Henson, Trai Byers, Jussie Smollett, Bryshere Gray,

- 14 -

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

Kaitlin Doubleday, Grace Gealey and Malik Yoba, regarding the concept of the

series prior to the date of the first pilot episode on January 7, 2015.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

In addition to the foregoing General Objections, each of which is

incorporated herein by reference, Fox objects to this Request because it (a) is overly

broad and unduly burdensome in seeking all communications between Fox and the

main cast members of the *Empire* series, or their agents/representatives, regarding

the concept of the series prior to January 7, 2015 without regard to whether such

documents are relevant to the issues in this action; (b) is vague and ambiguous as to

who the "main cast members" of the *Empire* series are; (c) seeks proprietary or

confidential business information, trade secrets, or other highly sensitive

information; (d) seeks the production of information outside of Fox's possession,

custody, or control; and (e) seeks information that violates the right of privacy of

the talent with whom Fox works.  Subject to, and without waiving, the General

Objections and these specific objections, Fox will produce, based on a reasonable

inquiry, responsive, non-privileged communications between Fox and the main cast

members of the *Empire* series, or their known agents/representatives, relating to the

use of the mark "Empire" in connection with the *Empire* series, if any such

communications are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 15:**

All agreements, contracts or COMMUNICATIONS between FOX and any

musicians who produce, perform or compose music for the *EMPIRE SERIES*,

regarding the production, promotion, advertisement, sale, license, distribution or

release of the *EMPIRE SERIES MUSIC*, including, but not limited to, Timbaland

(aka Timothy Mosely), Ne-Yo (aka Schaffer Chimere Smith), Jussie Smollett,

Bryshere Gray, Gladys Knight, Anthony Hamilton, Sway Calloway, Raven

Symone, Estelle, Mary J. Blige, Snoop Dogg, Rita Ora, Juicy J, Patti LaBelle and

Charles Hamilton, or any of their agents/representatives.

- 15 -

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all agreements, contracts, or communications between Fox and any musicians who produce, perform, or compose music for the *Empire* series, regarding the production, promotion, advertisement, sale, license, distribution, or release of the *Empire* series music, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "promotion"; (c) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; (d) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information; (e) seeks the production of information outside of Fox's possession, custody, or control; (f) seeks information that violates the right of privacy of the talent with whom Fox works; and (g) is cumulative and duplicative of Request Nos. 12 and 14.  Fox will not produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 16:**

All contracts, agreements, marketing plans and COMMUNICATIONS between FOX and Columbia Records regarding the promotion, advertisement, sale, license, distribution or release of *EMPIRE SERIES MUSIC*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all contracts, agreements, marketing plans, and communications between Fox and Columbia Records regarding the promotion, advertisement, sale, license, distribution, or release of *Empire* series music, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "marketing plans" and "promotion";

- 16 -

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

(c) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; (d) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information; (e) seeks the production of information outside of Fox's possession, custody, or control; and (f) is cumulative and duplicative of Request No. 12.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged executed contracts or agreements, marketing plans, and communications between Fox and Columbia Records regarding the use of the "Empire" mark in connection with the promotion, advertisement, sale, license, distribution, or release of *Empire* series music, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 17:**

All internal FOX COMMUNICATIONS regarding the production, sale, license, promotion, advertisement, marketing, distribution or release of the *EMPIRE SERIES MUSIC*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all internal Fox communications regarding the production, sale, license, promotion, advertisement, marketing, distribution, or release of the *Empire* series music, without regard to whether such communications are relevant to the issues in this action; (b) is vague and ambiguous as to "promotion" and "marketing"; (c) seeks the production of communications immune from discovery under the attorney-client privilege or work product doctrine; (d) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information; and (e) is cumulative and duplicative of Request Nos. 12 and 13.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a

- 17 -

1  reasonable inquiry, responsive, non-privileged internal Fox communications

2  regarding the use of the "Empire" mark/logo in connection with the production,

3  sale, license, promotion, advertisement, marketing, distribution or release of the

4  *Empire* series music, if any such communications are within Fox's possession,

5  custody, or control.

6  **REQUEST FOR PRODUCTION NO. 18:**

7    All DOCUMENTS reflecting, referring or relating to FOX's online account

8  with Mediabase.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

10    In addition to the foregoing General Objections, each of which is

11  incorporated herein by reference, Fox objects to this Request because it (a) is overly

12  broad and unduly burdensome in seeking all documents reflecting, referring, or

13  relating to Fox's online account with Mediabase, without regard to whether such

14  documents are relevant to the issues in this action; (b) is vague and ambiguous as to

15  "Mediabase"; (c) seeks proprietary or confidential business information, trade

16  secrets, or other highly sensitive information; (d) seeks the production of

17  information outside of Fox's possession, custody, or control; and (e) is

18  argumentative.  Fox will not produce documents responsive to this Request.

19  **REQUEST FOR PRODUCTION NO. 19:**

20    All DOCUMENTS reflecting, referring or relating to the performance,

21  presentation or promotion of the *EMPIRE SERIES MUSIC* at radio stations,

22  concerts, live performances, events, physical record stores and other venues.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

24    In addition to the foregoing General Objections, each of which is

25  incorporated herein by reference, Fox objects to this Request because it (a) is overly

26  broad and unduly burdensome in seeking all documents reflecting, referring, or

27  relating to the performance, presentation, or promotion of the *Empire* series music

28  at radio stations, concerts, live performances, events, physical record stores, and

<div align="center">- 18 -</div>

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

other venues, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "promotion" and "presentation"; (c) seeks the production of documents immune from discovery under the attorney-client privilege or work product doctrine; and (d) is cumulative and duplicative of Request No. 12.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents sufficient to show any performances, presentations, or promotions of the *Empire* series music at radio stations, concerts, live performances, events, physical record stores, and other venues, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 20:**

Digital and hard copies of the *EMPIRE SERIES* including each season and episode to date.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because digital and hard copies of the *Empire* series are available to the public and the defendant.  Fox will not produce digital or hard copies of the *Empire* series in response to this Request.

**REQUEST FOR PRODUCTION NO. 21:**

Digital and hard copies of all *EMPIRE SERIES MUSIC*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because digital and hard copies of all *Empire* series music are available to the public and the defendant. Fox will not produce digital or hard copies of *Empire* series music in response to this Request.

- 19 -

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS reflecting, referring or relating to any search or investigation of any record, including but not limited to the records of the United States Patent and Trademark Office, state trademark records, and business directories conducted by FOX that relate to the "Empire" mark or any similar name or mark used by FOX or anyone else, including any trademark search report for any mark or designation that consists of or includes the word "Empire" or any variant of that word.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to any search or investigation of any record by Fox that relates to the "Empire" mark or any similar name or mark used by Fox or anyone else, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to the meaning of "used," "record," and "similar"; (c) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; and (d) is cumulative and duplicative of Request No. 4.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents relating to any search or investigation of any record by Fox that relates to the "Empire" mark, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS reflecting, referring or relating to any legal opinion that FOX is relying on in this proceeding concerning its right to use the "Empire" mark or any similar mark or name.

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to any legal opinions that Fox is relying on in this proceeding concerning its right to use the "Empire" mark or any similar mark or name, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "legal opinion," "use," and "similar"; and (c) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, any responsive legal opinions that Fox intends to rely on in this proceeding concerning its right to use the "Empire" mark, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS reflecting, referring or relating to any agreements, written or oral, between FOX and anyone else concerning the use of the "Empire" mark.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to any agreements, written or oral, between Fox and anyone else concerning the use of the "Empire" mark, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "use"; (c) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; and (d) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information.  Subject to, and without waiving, the General Objections and these

- 21 -

1   specific objections, Fox will produce, based on a reasonable inquiry, responsive,

2   non-privileged executed agreements between Fox and anyone else concerning the

3   use of the "Empire" mark, if any such documents are within Fox's possession,

4   custody, or control.

5   **REQUEST FOR PRODUCTION NO. 25:**

6       All DOCUMENTS reflecting, referring or relating to any of FOX's present

7   or prospective sales, marketing or business plans/strategies regarding products or

8   services provided in connection with the "Empire" mark, including the *EMPIRE*

9   *SERIES* and *EMPIRE SERIES MUSIC*.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

11      In addition to the foregoing General Objections, each of which is

12  incorporated herein by reference, Fox objects to this Request because it (a) is overly

13  broad and unduly burdensome in seeking all documents reflecting, referring, or

14  relating to any of Fox's present or prospective sales, marketing, or business

15  plans/strategies regarding products or services provided in connection with the

16  "Empire" mark, without regard to whether such documents are relevant to the

17  issues in this action; (b) seeks the production of documents immune from discovery

18  under the attorney-client privilege and work product doctrine; and (c) seeks

19  proprietary or confidential business information, trade secrets, or other highly

20  sensitive information.  Subject to, and without waiving, the General Objections and

21  these specific objections, Fox will produce, based on a reasonable inquiry,

22  responsive, non-privileged documents sufficient to show sales of products or

23  services provided bearing the "Empire" mark, if any such documents are within

24  Fox's possession, custody, or control.

25  **REQUEST FOR PRODUCTION NO. 26:**

26      All DOCUMENTS sufficient to identify every existing or intended good or

27  service offered or sold by FOX in connection with the "Empire" mark, and the date

28

- 22 -

1  on which each such good or service was first offered or sold, or will be offered or

2  sold.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

4        In addition to the foregoing General Objections, each of which is

5  incorporated herein by reference, Fox objects to this Request because it (a) seeks

6  proprietary or confidential business information, trade secrets, or other highly

7  sensitive information; and (b) seeks information otherwise available to the public

8  and the defendant.  Subject to, and without waiving, the General Objections and

9  these specific objections, Fox will produce, based on a reasonable inquiry,

10  responsive, non-privileged documents sufficient to identify every existing or

11  intended good or service offered or sold by Fox in connection with the "Empire"

12  mark, and the date on which each such good or service was first offered or sold or

13  will be offered or sold, if any such documents are within Fox's possession, custody,

14  or control.

15  **REQUEST FOR PRODUCTION NO. 27:**

16        All DOCUMENTS sufficient to show the channels of trade or distribution

17  (e.g., retail, wholesale, Internet, catalog, etc.) through which FOX has sold or

18  offered for sale, currently sell or offer for sale, or plan to sell or offer for sale any

19  goods or services identified by the "Empire" mark.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

21        In addition to the foregoing General Objections, each of which is

22  incorporated herein by reference, Fox objects to this Request because it (a) seeks

23  proprietary or confidential business information, trade secrets, or other highly

24  sensitive information; and (b) seeks information otherwise available to the public

25  and the defendant.  Subject to, and without waiving, the General Objections and

26  these specific objections, Fox will produce, based on a reasonable inquiry,

27  responsive, non-privileged documents sufficient to show the channels of trade or

28  distribution through which Fox has sold or offered for sale or currently sells or

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

offers for sale or plans to sell or offer for sale any goods or services identified by the "Empire" mark, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS sufficient to show all geographical areas (by city and state; and, if outside the United States, by country) in which FOX has sold, or offered for sale, goods or services under or in connection with the "Empire" mark.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it seeks information otherwise available to the public and the defendant.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents sufficient to show all geographical areas (by state; and, if outside the United States, by country) in which Fox has sold, or offered for sale, goods or services under or in connection with the "Empire" mark, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS reflecting, referring or relating to any study regarding actual or likely purchasers of goods or services offered for sale, sold, promoted, or advertised under or in association with the "Empire" mark.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to any study regarding actual or likely purchasers of goods or services offered for sale, sold, promoted, or advertised under or in association with the "Empire" mark, without regard to whether such documents are relevant to the

- 24 -

issues in this action; (b) is vague and ambiguous as to "promoted" and "in association with"; (c) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; and (d) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged studies regarding actual or likely purchasers of goods or services offered for sale, sold, promoted, or advertised with the "Empire" mark, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS sufficient to show each purchase of any good or service offered for sale, sold, promoted, or advertised under or in association with the "Empire" mark.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents sufficient to show each purchase of any good or service offered for sale, sold, promoted, or advertised under or in association with the "Empire" mark, without regard to whether such documents are relevant to the issues in this action; (b) is vague and ambiguous as to "promoted" and "in association with"; (c) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; and (d) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information.  Fox will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS reflecting, referring or relating to FOX's revenues, expenses, and profits relating to all goods and services sold, or offered for sale,

- 25 -

1  under or in association with the "Empire" mark, including the *EMPIRE SERIES* and

2  *EMPIRE SERIES MUSIC*.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

4       In addition to the foregoing General Objections, each of which is

5  incorporated herein by reference, Fox objects to this Request because it (a) is vague

6  and ambiguous as to "in association with"; and (b) seeks proprietary or confidential

7  business information, trade secrets, or other highly sensitive information.  Subject

8  to, and without waiving, the General Objections and these specific objections, Fox

9  will produce, based on a reasonable inquiry, responsive, non-privileged documents

10  sufficient to show Fox's revenues, expenses, and profits relating to goods and

11  services sold, or offered for sale, with the "Empire" mark, if any such documents

12  are within Fox's possession, custody, or control.

13  **REQUEST FOR PRODUCTION NO. 32:**

14       All DOCUMENTS reflecting, referring or relating to the total volume of

15  sales for all goods and services sold under or in association with the "Empire"

16  mark, including the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

18       In addition to the foregoing General Objections, each of which is

19  incorporated herein by reference, Fox objects to this Request because it (a) is overly

20  broad and unduly burdensome in seeking all documents reflecting, referring, or

21  relating to the total volume of sales for all goods and services sold under or in

22  association with the "Empire" mark; (b) is vague and ambiguous as to "in

23  association with"; and (c) seeks proprietary or confidential business information,

24  trade secrets, or other highly sensitive information.  Subject to, and without

25  waiving, the General Objections and these specific objections, Fox will produce,

26  based on a reasonable inquiry, responsive, non-privileged documents sufficient to

27  show the total volume of sales for all goods and services sold with the "Empire"

28  mark, if any such documents are within Fox's possession, custody, or control.

- 26 -

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS reflecting, referring or relating to the amounts spent by FOX in each year to advertise, market and promote goods or services under or in association with the "Empire" mark or variations thereof, including the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to the amounts spent by Fox in each year to advertise, market, and promote goods or services under or in association with the "Empire" mark or variations thereof; (b) is vague and ambiguous as to "market and promote," "in association with," "variations thereof"; (c) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; and (d) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents sufficient to show the amount spent by Fox each year to advertise, market, and promote goods and services with the "Empire" mark, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS reflecting, referring or relating to any publicity or news relating to the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*, including but not limited to press releases, articles, interviews, and public relations pieces appearing in the media, press, blogs, websites, internet, journals, newspapers, magazines or trade publications.

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

2         In addition to the foregoing General Objections, each of which is

3   incorporated herein by reference, Fox objects to this Request because it (a) is overly

4   broad and unduly burdensome in seeking all documents reflecting, referring, or

5   relating to any publicity or news relating to the *Empire* series and *Empire* series

6   music, without regard to whether such documents are relevant to the issues in this

7   action; (b) seeks the production of documents immune from discovery under the

8   attorney-client privilege and work product doctrine; and (c) seeks information

9   otherwise available to the public and the defendant.  Subject to, and without

10  waiving, the General Objections and these specific objections, Fox will produce,

11  based on a reasonable inquiry, responsive, non-privileged documents not otherwise

12  available to the public and the defendant relating to any publicity or news relating

13  to the use of the "Empire" mark in connection with the Empire series and Empire

14  series music, if any such documents are within Fox's possession, custody, or

15  control.

16  **REQUEST FOR PRODUCTION NO. 35:**

17         All DOCUMENTS reflecting, referring or relating to anyone other than FOX

18  that has used or is using the designation or word "Empire" in the music industry.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

20         In addition to the foregoing General Objections, each of which is

21  incorporated herein by reference, Fox objects to this Request because it (a) is overly

22  broad and unduly burdensome in seeking all documents reflecting, referring, or

23  relating to anyone other than Fox that has used or is using the designation or word

24  "Empire" in the music industry, without regard to whether such documents are

25  relevant to the issues in this action; (b) is vague and ambiguous as to "has used or is

26  using" and "designation"; (c) seeks the production of documents immune from

27  discovery under the attorney-client privilege and work product doctrine; (d) seeks

28  information otherwise available to the public and the defendant; and (e) is

1   cumulative and duplicative of Request Nos. 4 and 5.  Subject to, and without

2   waiving, the General Objections and these specific objections, Fox will produce,

3   based on a reasonable inquiry, responsive, non-privileged documents relating to

4   anyone other than Fox that has used or is using the designation or word "Empire" in

5   the music industry, if any such documents are within Fox's possession, custody, or

6   control.

7   **REQUEST FOR PRODUCTION NO. 36:**

8       All DOCUMENTS sufficient to identify by name and address each entity or

9   individual authorized to sell, distribute, promote, advertise or market any goods or

10  services identified by FOX's "Empire" mark, including in connection with the

11  *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

13      In addition to the foregoing General Objections, each of which is

14  incorporated herein by reference, Fox objects to this Request because it seeks the

15  production of documents immune from discovery under the attorney-client

16  privilege and work product doctrine.  Subject to, and without waiving, the General

17  Objections and these specific objections, Fox will produce, based on a reasonable

18  inquiry, responsive, non-privileged documents sufficient to identify by name and

19  address each entity or individual authorized to sell, distribute, promote, advertise, or

20  market any goods or services identified by Fox's "Empire" mark, if any such

21  documents are within Fox's possession, custody, or control.

22  **REQUEST FOR PRODUCTION NO. 37:**

23      All DOCUMENTS reflecting, referring or relating to any cease-and-desist

24  letter, demand, dispute, complaint, objection, protest, lawsuit, threatened lawsuit, or

25  expression of concern by FOX to a third party, or by any third party to FOX,

26  relating to FOX's or the third party's existing or intended use of the "Empire"

27  mark.

28

- 29 -

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is vague and ambiguous as to "use"; and (b) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine. Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged communications sent to a third-party regarding any objection or concern by Fox regarding that third-party's existing or intended use of the "Empire" mark, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS reflecting, referring or relating to the date FOX first became aware of EMPIRE DISTRIBUTION and/or its use of the "Empire" name and any subsequent COMMUNICATIONS regarding EMPIRE DISTRIBUTION'S use of that mark.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is vague and ambiguous as to "use"; (b) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; and (c) is argumentative.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents relating to the date Fox first became aware of Empire Distribution and/or its use of the "Empire" name and any subsequent communications regarding Empire Distribution's use of the name, if any such documents are within Fox's possession, custody, or control.

- 30 -

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS reflecting, referring or relating any actual or potential, direct or indirect, competition between the products or services that FOX offers, offered, or intends to offer under its "Empire" mark and the products or services that EMPIRE DISTRIBUTION offers or offered under its "Empire" marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; (b) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information; and (c) is argumentative. Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents reflecting any actual or potential, direct or indirect, competition between the products or services that Fox offers, offered or intends to offer under its "Empire" mark and the products or services that Empire Distribution offers or offered with the "Empire" name, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS reflecting, referring or relating to any instance in which any person or entity made any statement, comment, inquiry or question regarding any actual or potential association, affiliation, connection, correlation, relation or sponsorship between the *EMPIRE SERIES* and/or *EMPIRE SERIES MUSIC*, on the one hand, and EMPIRE DISTRIBUTION, on the other hand.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to, and without waiving, the General Objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents relating to any instance in which any person or entity made any statement, comment, inquiry, or

- 31 -

1  question regarding any actual or potential association, affiliation, connection,

2  correlation, relation, or sponsorship between the *Empire* series and/or *Empire* series

3  music, on the one hand, and Empire Distribution, on the other hand, if any such

4  documents are within Fox's possession, custody, or control.

5  **REQUEST FOR PRODUCTION NO. 41:**

6      All COMMUNICATIONS by or from FOX, FOX's customers or other

7  persons, expressing any actual or potential confusion, association, affiliation,

8  connection, correlation, relation or sponsorship between FOX and EMPIRE

9  DISTRIBUTION and their respective goods or services.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

11      In addition to the foregoing General Objections, each of which is

12  incorporated herein by reference, Fox objects to this Request because it (a) seeks

13  the production of information outside of Fox's possession, custody, or control; (b)

14  seeks information that violates the right of privacy of Fox's customers; and (c) is

15  cumulative and duplicative of Request No. 40.  Subject to, and without waiving, the

16  General Objections and these specific objections, Fox will produce, based on a

17  reasonable inquiry, responsive, non-privileged communications by or from Fox,

18  Fox's customers or other persons, expressing any actual or potential confusion,

19  association, affiliation, connection, correlation, relation, or sponsorship between

20  Fox and Empire Distribution and their respective goods or services, if any such

21  documents are within Fox's possession, custody, or control.

22  **REQUEST FOR PRODUCTION NO. 42:**

23      All COMMUNICATIONS by or from FOX, FOX's customers or other

24  persons, expressing any lack of confusion, association, affiliation, connection,

25  correlation, relation or sponsorship between FOX and EMPIRE DISTRIBUTION

26  and their respective goods or services.

27

28

- 32 -

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; (b) seeks the production of information outside of Fox's possession, custody, or control; and (c) seeks information that violates the right of privacy of Fox's customers.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged communications by or from Fox, Fox's customers or other persons, expressing any lack of confusion, association, affiliation, connection, correlation, relation, or sponsorship between Fox and Empire Distribution and their respective goods or services, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS reflecting, referring or relating to whether or not FOX's use of the "Empire" mark does, may or will infringe, or cause any actual or potential confusion with, EMPIRE DISTRIBUTION'S "Empire" marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is vague and ambiguous as to "use"; (b) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; (c) is cumulative and duplicative of Request No. 23; and (d) is argumentative.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents relating to whether Fox's use of the "Empire" mark does, may or will infringe, or cause any actual or potential confusion with, Empire Distribution, if any such documents are within Fox's possession, custody, or control.

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS reflecting, referring or relating to any poll, survey, study, report, analysis, or evaluation done by FOX or on FOX's behalf that relates to the "Empire" mark.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) is overly broad and unduly burdensome in seeking all documents reflecting, referring, or relating to any poll, survey, study, report, analysis, or evaluation done by Fox or on Fox's behalf that relates to the "Empire" mark, without regard to whether such documents are relevant to the issues in this action; (b) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; (c) seeks proprietary or confidential business information, trade secrets, or other highly sensitive information; and (d) is cumulative and duplicative of Request No. 7.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged polls, surveys, studies, reports, analyses, or evaluations done by Fox or on Fox's behalf that relate to confusion between the "Empire" mark and Empire Distribution, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS reflecting, referring or relating to any witness retained or specially employed by FOX to provide expert testimony in the case, including, but not limited to, all DOCUMENTS that reflect, refer, or relate to any opinions or conclusions of the expert, the basis of any such opinions or conclusions, any facts or data considered by the expert in forming any such opinions or conclusions, and all DOCUMENTS reviewed or relied upon by the expert in forming his/her opinions or conclusions.

- 34 -

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

2      In addition to the foregoing General Objections, each of which is

3  incorporated herein by reference, Fox objects to this Request because it (a) seeks

4  the production of documents immune from discovery under the attorney-client

5  privilege and work product doctrine; (b) seeks documents protected from disclosure

6  by Rule 26; and (c) is premature in asking or requiring Fox to provide information

7  that is the subject of expert disclosures under Rule 26(a)(2), according to the

8  Scheduling Order filed by the Court on July 23, 2015 (Dkt. 23).  Fox will comply

9  with its obligations under Rule 26 and the Court's Scheduling Order.

10  **REQUEST FOR PRODUCTION NO. 46:**

11      All COMMUNICATIONS between FOX's attorneys and any expert witness

12  who is required to provide a report under Fed. R. Civ. P. 26(a)(2)(B), to the extent

13  the COMMUNICATION relates to the compensation for the expert's study or

14  testimony; identifies facts or data that FOX's attorneys provided and that the expert

15  considered in forming his/her opinions to be expressed; or identifies assumptions

16  that FOX's attorneys provided and that the expert relied on in forming the opinions

17  to be expressed.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

19      In addition to the foregoing General Objections, each of which is

20  incorporated herein by reference, Fox objects to this Request because it is

21  premature in asking or requiring Fox to provide information that is the subject of

22  expert disclosures under Federal Rule of Civil Procedure 26(a)(2), according to the

23  Scheduling Order filed by the Court on July 23, 2015 (Dkt. 23).  Fox will comply

24  with its obligations under Rule 26 and the Court's Scheduling Order.

25  **REQUEST FOR PRODUCTION NO. 47:**

26      All DOCUMENTS supporting the allegations in paragraph 1 of FOX's

27  COMPLAINT.

28

- 35 -

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents supporting the allegations in paragraph 1 of Fox's Complaint, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS supporting the allegations in paragraph 11 of FOX's COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents supporting the allegations in paragraph 11 of Fox's Complaint, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS supporting the allegations in paragraph 12 of FOX's COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it seeks the production of documents immune from discovery under the attorney-client

- 36 -

1  privilege and work product doctrine.  Subject to, and without waiving, the General

2  Objections and these specific objections, Fox will produce, based on a reasonable

3  inquiry, responsive, non-privileged documents supporting the allegations in

4  paragraph 12 of Fox's Complaint, if any such documents are within Fox's

5  possession, custody, or control.

6  **REQUEST FOR PRODUCTION NO. 50:**

7  All DOCUMENTS supporting the allegations in paragraph 20 of FOX's

8  COMPLAINT.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

10  In addition to the foregoing General Objections, each of which is

11  incorporated herein by reference, Fox objects to this Request because it seeks the

12  production of documents immune from discovery under the attorney-client

13  privilege and work product doctrine.  Subject to, and without waiving, the General

14  Objections and these specific objections, Fox will produce, based on a reasonable

15  inquiry, responsive, non-privileged documents supporting the allegations in

16  paragraph 20 of Fox's Complaint, if any such documents are within Fox's

17  possession, custody, or control.

18  **REQUEST FOR PRODUCTION NO. 51:**

19  All DOCUMENTS supporting the allegations in paragraph 21 of FOX' s

20  COMPLAINT.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

22  In addition to the foregoing General Objections, each of which is

23  incorporated herein by reference, Fox objects to this Request because it seeks the

24  production of documents immune from discovery under the attorney-client

25  privilege and work product doctrine.  Subject to, and without waiving, the General

26  Objections and these specific objections, Fox will produce, based on a reasonable

27  inquiry, responsive, non-privileged documents supporting the allegations in

28

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

paragraph 21 of Fox's Complaint, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS supporting the allegations in paragraphs 22 of FOX's COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine. Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents supporting the allegations in paragraph 22 of Fox's Complaint, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS supporting the allegations in paragraph 23 of FOX's COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine. Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents supporting the allegations in paragraph 23 of Fox's Complaint, if any such documents are within Fox's possession, custody, or control.

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

1   **REQUEST FOR PRODUCTION NO. 54:**

2       All DOCUMENTS supporting the allegations in paragraph 24 of FOX's

3   COMPLAINT.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

5       In addition to the foregoing General Objections, each of which is

6   incorporated herein by reference, Fox objects to this Request because it seeks the

7   production of documents immune from discovery under the attorney-client

8   privilege and work product doctrine.  Subject to, and without waiving, the General

9   Objections and these specific objections, Fox will produce, based on a reasonable

10  inquiry, responsive, non-privileged documents supporting the allegations in

11  paragraph 24 of Fox's Complaint, if any such documents are within Fox's

12  possession, custody, or control.

13  **REQUEST FOR PRODUCTION NO. 55:**

14      All DOCUMENTS supporting the allegations in paragraphs 25 of FOX's

15  COMPLAINT.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

17      In addition to the foregoing General Objections, each of which is

18  incorporated herein by reference, Fox objects to this Request because it seeks the

19  production of documents immune from discovery under the attorney-client

20  privilege and work product doctrine.  Subject to, and without waiving, the General

21  Objections and these specific objections, Fox will produce, based on a reasonable

22  inquiry, responsive, non-privileged documents supporting the allegations in

23  paragraph 25 of Fox's Complaint, if any such documents are within Fox's

24  possession, custody, or control.

25  **REQUEST FOR PRODUCTION NO. 56:**

26      All DOCUMENTS supporting the allegations in paragraph 26 of FOX's

27  COMPLAINT.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents supporting the allegations in paragraph 26 of Fox's Complaint, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 57:**

All DOCUMENTS supporting the allegations in paragraph 27 of FOX's COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents supporting the allegations in paragraph 27 of Fox's Complaint, if any such documents are within Fox's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS upon which FOX's answer or affirmative defenses to the COUNTERCLAIMS are based including, but not limited to, its first affirmative defense purportedly based on the First Amendment to the United States Constitution.

- 40 -

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 58</u>:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to this Request because it (a) seeks the production of documents immune from discovery under the attorney-client privilege and work product doctrine; and (b) seeks documents otherwise available to the public and defendant.  Subject to, and without waiving, the General Objections and these specific objections, Fox will produce, based on a reasonable inquiry, responsive, non-privileged documents upon which Fox's answer or affirmative defenses to the Counterclaims are based, if any such documents are within Fox's possession, custody, or control.

**<u>REQUEST FOR PRODUCTION NO. 59</u>:**

All DOCUMENTS identified or referenced in FOX's Initial Disclosures, pursuant to Fed. R. Civ. P. 26(a)(l).

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 59</u>:**

In addition to the foregoing General Objections, each of which is incorporated herein by reference, Fox objects to and is unable to respond to this Request because Fox's Initial Disclosures did not identify or reference any particular documents but rather identified categories of documents.

Dated:  August 20, 2015

DANIEL M. PETROCELLI
MOLLY M. LENS
CAMERON H. BISCAY
O'MELVENY & MYERS LLP


By:     <u>/s/  Molly M. Lens</u>
Molly M. Lens
Attorneys for Twentieth Century Fox
Television, a division of Twentieth
Century Fox Film Corporation, and Fox
Broadcasting Company

- 41 -

RESP. TO FIRST SET OF RFPS
CASE NO. 2:15-CV-2158

# EXHIBIT E

1   PAUL L. GALE (SBN 065873)
    paul.gale@troutmansanders.com
2   PETER N. VILLAR (SBN 204038)
    peter.villar@troutmansanders.com
3   TROUTMAN SANDERS LLP
    5 Park Plaza, Suite 1400
4   Irvine, California  92614-2545
    Telephone:  (949) 622-2704
5   Facsimile:   (949) 769-2052

6   JOHN M. BOWLER (*pro hac vice*)
    john.bowler@troutmansanders.com
7   MICHAEL D. HOBBS (*pro hac vice*)
    michael.hobbs@troutmansanders.com
8   LINDSAY M. HENNER (*pro hac vice*)
    lindsay.henner@troutmansanders.com
9   TROUTMAN SANDERS LLP
    Bank of America Plaza
10  600 Peachtree Street NE, Suite 5200
    Atlanta, Georgia  30308-2216

11
    *Attorneys for Defendant and*
12  *Counterclaimant Empire Distribution Inc.*

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                   WESTERN DIVISION

16

17  TWENTIETH CENTURY FOX          Case No.  2:15-cv-02158-PA-FFM
    TELEVISION, a division of
18  TWENTIETH CENTURY FOX          Hon. Percy Anderson
    FILM CORPORATION, a Delaware
19  company, and FOX               **EMPIRE DISTRIBUTION, INC.'S**
    BROADCASTING COMPANY, a        **SECOND SET OF REQUESTS FOR**
20  Delaware corporation,          **PRODUCTION OF DOCUMENTS**

21              Plaintiffs,

22         v.

23  EMPIRE DISTRIBUTION, INC., a
    California corporation,
24
                Defendant.
25

26  *AND RELATED COUNTERCLAIM.*

27

28

| | | |
|---|---|---|
| 1 | **PROPOUNDING PARTY:** | **EMPIRE DISTRIBUTION, INC.** |
| 2 | **RESPONDING PARTIES:** | **TWENTIETH CENTURY FOX** |
| 3 | | **TELEVISION, TWENTIETH CENTURY FOX FILM CORPORATION, AND FOX** |
| 4 | | **BROADCASTING COMPANY** |
| 5 | **SET NO.:** | **TWO** |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Empire Distribution, Inc. ("EMPIRE DISTRIBUTION") hereby serves this Second Request for Production of Documents upon Plaintiffs and Counter-Defendants Twentieth Century Fox Television, Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively "FOX").

## INSTRUCTIONS

A.     Pursuant to Fed. R. Civ. P. 34 (b), FOX shall respond in writing to each of these requests and produce all responsive documents within its possession, custody or control, within thirty (30) days after the service of these requests, at the offices of Troutman Sanders, LLP, located at 5 Park Plaza, Suite 1400, Irvine, CA 92614.

B.     Pursuant to Fed. R. Civ. P. 34 (b)(1)(C), FOX shall produce any ELECTRONICALLY STORED INFORMATION in accordance with the ESI Production Format attached as **Exhibit A** to EMPIRE DISTRIBUTION'S First Request for Production of Documents, unless otherwise agreed to in writing by the parties.

C.     If FOX is unable to comply with any particular request, in whole or in part, FOX shall state in its response that a diligent search and reasonable inquiry has been made in an effort to locate the items and provide the reason for its inability to comply – i.e., that the document never existed, has been lost, stolen or destroyed, or is in the possession, custody or control of another person or entity.

EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

D.     If FOX objects to any particular request, in whole or in part, FOX shall state the specific reason for the objection and the specific items being withheld based on the objection.

E.     If any document(s) is withheld under a claim of privilege, FOX shall provide a "privilege log" with its responses, stating the specific basis of the privilege and describing the document(s) being withheld in sufficient detail to enable EMPIRE DISTRIBUTION to assess the applicability of the privilege including the following information:

1.  the general nature of the document (letter, e-mail, memo, etc.);

2.  the general subject matter of the document;

3.  the date of the document;

4.  the identity and position of its author;

5.  the identity and position of all addressees and recipients; and

6.  the location of the document.

## DEFINITIONS

The following definitions apply to each of the document requests:

A.     The term "COMPLAINT" refers to the Complaint for Declaratory Relief filed by FOX on March 23, 2015 in this case, and any subsequent amendments thereto.

B.     The term "COUNTERCLAIMS" refers to the Counterclaims filed by EMPIRE DISTRIBUTION against FOX on June 4, 2015 in this case, and any subsequent amendments thereto.

C.     The term "FOX" refers collectively to Plaintiffs and Counter-Defendants Twentieth Century Fox Television, Twentieth Century Fox Film Corporation, and Fox Broadcasting Company, including their current or former officers, directors, employees, principals, agents, representatives, attorneys, accountants, parents, subsidiaries, affiliates and any other person or entity acting on their behalf.

EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

D.   The term "EMPIRE DISTRIBUTION" refers to Defendant and Counterclaimant Empire Distribution, Inc., including its current or former officers, directors, employees, principals, agents, representatives, attorneys, accountants, parents, subsidiaries, affiliates and any other person or entity acting on its behalf.

E.   The term "*EMPIRE SERIES*" refers to FOX's musical dramatic television series that is described in paragraph 10 of the COMPLAINT.

F.   The term "*EMPIRE SERIES MUSIC*" refers to any music that is produced, composed, performed and/or featured on or in connection with the *EMPIRE SERIES* as described in paragraph 12 of the COMPLAINT.

G.   The term "DOCUMENTS" is used in its customary and broadest sense to include all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained, including all COMMUNICATIONS and ELECTRONICALLY STORED INFORMATION.

H.   The term "COMMUNICATIONS" refers to any transmission of information between two or more persons including, but not limited to, letters, facsimiles, correspondence, memos, e-mails, text messages, instant messages, and social network communications including, but not limited to, messages and other postings on social network sites such as Facebook and Twitter.

I.   The term "ELECTRONICALLY STORED INFORMATION" shall include any information stored in an electronic medium (such as electrical, digital, magnetic, wireless, optical, electromagnetic or similar capabilities) including, but not limited to, e-mail, computer files, internet files, voice-mail, photos, graphics, text messages, instant messages, and social network communications including, but not limited to, messages and other postings on social network sites such as Facebook and Twitter.

EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

# REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 60:**

All DOCUMENTS reflecting, referring or relating to FOX's use of the "Empire" name and/or the *EMPIRE SERIES* in association with efforts to identify and retain recording artists, including but not limited to the "FOX'S NEXT EMPIRE ARTIST" contest.

**REQUEST FOR PRODUCTION NO. 61:**

All DOCUMENTS and COMMUNICATIONS reflecting, referring or relating to FOX's past or present use, or plans to use the "Empire" name to market, advertise, or promote goods or services, including but not limited to licensed merchandise of any kind, concert series, concert tours, and the like.

**REQUEST FOR PRODUCTION NO. 62:**

DOCUMENTS sufficient to show each and every revenue stream relating to the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*, including but not limited to television advertising revenue, syndication, DVD sales, sales via platforms such as Google PLAY or Hulu, internet advertising revenue, revenue from the sale of music, and the amount of revenue generated there from broken down by category.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS reflecting, referring or relating to any research, investigation or due diligence by FOX regarding potential or considered names for what eventually became the *EMPIRE SERIES* and the company and characters featured in the *EMPIRE SERIES*.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS reflecting, referring or relating to any research pertaining to the demographic makeup of the audiences for the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS reflecting, referring or relating to research, including but not limited to marketing research such as surveys and focus groups, research on social media (e.g., Twitter, Facebook) or on search engines (e.g., Google) conducted by FOX or acquired from third parties regarding potential names for what eventually became *EMPIRE SERIES* and the company featured in the *EMPIRE SERIES* as well as the *EMPIRE SERIES* skyline logo.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS reflecting, referring or relating to any research, including but not limited to marketing research such as surveys and focus groups, research on social media (e.g., Twitter, Facebook) or on search engines (e.g., Google) conducted by FOX or acquired from third parties regarding viewer tastes, beliefs, and/or perceptions including, for example:

- What viewers like and don't like about the *EMPIRE SERIES*
- Viewers' perceptions and judgment of the characters and their actions
- Viewers' (and others') beliefs about whether and to what extent the characters, events, companies in the *EMPIRE SERIES* are based on actual people, events, and companies respectively
- Perceived association, affiliation, connection, sponsorship between the *EMPIRE SERIES/ EMPIRE SERIES MUSIC* and any existing or

EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

1    non-existing companies, including but not limited to EMPIRE

2    DISTRIBUTION.

3

4    **REQUEST FOR PRODUCTION NO. 67:**

5        All DOCUMENTS reflecting, referring or relating to any research, including

6    but not limited to marketing research such as surveys and focus groups, research on

7    social media (e.g., Twitter, Facebook) or on search engines (e.g., Google)

8    conducted by FOX or acquired from third parties (e.g., Nielsen) regarding the

9    demographics of the viewers/listeners for the *EMPIRE SERIES / EMPIRE SERIES*

10    *MUSIC* and/or consumers of any related products.

11

12    **REQUEST FOR PRODUCTION NO. 68:**

13        All DOCUMENTS reflecting, referring or relating to the meta-data

14    embedded on websites hosted by FOX and others (e.g., iTunes) featuring the

15    *EMPIRE SERIES / EMPIRE SERIES MUSIC* regarding the *EMPIRE SERIES /*

16    *EMPIRE SERIES MUSIC*, including but not limited to tags to increase the

17    likelihood of a search engine identifying a particular site and listing it higher in the

18    displayed results.

19

20    **REQUEST FOR PRODUCTION NO. 69:**

21        All DOCUMENTS in FOX's possession, custody or control reflecting,

22    referring or relating to accounts with Mediabase regardless of the entity that owns

23    or controls the account.

24

25    **REQUEST FOR PRODUCTION NO. 70:**

26        All DOCUMENTS in FOX's possession, custody or control reflecting,

27    referring or relating to radio station airplay of the *EMPIRE SERIES MUSIC*

28    including, but not limited to, any song charts, airplay analyses of radio airplay and

1  any other data prepared by Mediabase, or any other such companies that monitor

2  radio station airplay, and any COMMUNICATIONS relating thereto.

3

4  **REQUEST FOR PRODUCTION NO. 71:**

5      All DOCUMENTS and COMMUNICATIONS referring or relating to Ghazi

6  Shami.

7

8  **REQUEST FOR PRODUCTION NO. 72:**

9      All DOCUMENTS and COMMUNICATIONS referring or relating to the

10  inspiration behind and selection of character's names (first and last) for the

11  *EMPIRE SERIES*, including but not limited to "Lyon" and "Hakeem."

12

13  **REQUEST FOR PRODUCTION NO. 73:**

14      All COMMUNICATIONS or DOCUMENTS exchanged between FOX and

15  Brian Grazer, Francie Calfo, Ilene Chaiken, or any representatives of Imagine

16  Entertainment or Little Chicken Productions, regarding the potential creation of

17  what became the *EMPIRE SERIES* including, but not limited to, any treatments,

18  synopses, outlines or other "pitch" materials.

19

20  **REQUEST FOR PRODUCTION NO. 74:**

21      All COMMUNICATIONS and DOCUMENTS exchanged between FOX and

22  Sony Music regarding the *EMPIRE SERIES MUSIC* including, but not limited to,

23  any Mediabase reports or the promotion, advertisement, sale, license, distribution or

24  release of the *EMPIRE SERIES MUSIC*.

25

26

27

28

1 | Dated:  November 12, 2015

TROUTMAN SANDERS LLP

By:

Paul L. Gale
Peter N. Villar
John M. Bowler
Michael D. Hobbs
Lindsay M. Henner

*Attorneys for Defendant and
Counterclaimant Empire
Distribution Inc.*

EMPIRE DISTRIBUTION, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS
117

# EXHIBIT F



PETER N. VILLAR
949.622.2783 telephone
949.622.2739 facsimile
peter.villar@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
949.622.2700 telephone
troutmansanders.com

September 25, 2015

**VIA E-MAIL**

Molly M. Lens, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

  **Re:**   **Twentieth Century Fox Television, et al. v. Empire Distribution, Inc.**

Dear Ms. Lens:

  On July 17, 2015, your office was served with Empire Distribution, Inc.'s ("Empire") First Request for Production of Documents to Twentieth Century Fox Television, Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively "Fox").  In August 2015, Empire also served Subpoenas to Produce Documents on various third parties.  Your office has undertaken to respond to the First Request for Production as well as the Subpoenas to Fox Music, Inc., Daniel Strong, and Lee Daniels Entertainment.[1]  Pursuant to L.R. 37-1, we write in an effort to resolve the following deficiencies with each of the responses to this discovery.

## I. First Request for Production of Documents

  As a preliminary matter, Fox's refusal to produce documents outside of its self-defined relevant time period is baseless.  Fox objects to requests seeking documents *prior to* the time that Fox learned of the series that became the *EMPIRE SERIES* and to requests seeking information *after* the time that Empire sent its initial objection to Fox in February 2014.  *See* General Objection No. 6.  Fox must produce responsive documents pertaining not only to the unnamed series that became the *EMPIRE SERIES*, but also documents referring or relating to the concepts and discrete ideas that Fox and others then developed into a unified television series.  Such documents may predate the existence of the "series" itself.  Fox also must produce responsive documents created after February 2014, as Empire's claim is not limited to instances of past infringement.  Fox's ongoing use of Empire's mark, its ever expanding use of such mark, and intended future use of the mark are highly relevant to this case.

---

[1] Lee Daniels Entertainment stipulated that it has "possession, custody, or control" over any and all documents that Lee Daniels may have and, therefore, the parties agreed that the subpoena directed at Lee Daniels personally did not have to be served or responded to.

ATLANTA BEIJING CHARLOTTE CHICAGO HONG KONG NEW YORK ORANGE COUNTY PORTLAND RALEIGH
RICHMOND SAN DIEGO SAN FRANCISCO SHANGHAI TYSONS CORNER VIRGINIA BEACH WASHINGTON, DC
EXHIBIT F
118

Molly M. Lens, Esq.
September 25, 2015
Page 2

### a.  REQUEST NOS. 1 & 2

Fox improperly limits its response to "documents that reflect, refer, or relate to the use of the mark 'Empire'" in connection with Fox's creation and development of the *EMPIRE SERIES* from the time of conception of the series that became *Empire* through January 7, 2015.  Empire's claim and document request is not limited to Fox's use of the mark 'Empire,' but also relates to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files.  Fox's objection based on "the right of privacy of the talent" is also improper in light of the Protective Order Concerning Confidential Information issued by the Court on September 24, 2015.  Fox must produce all documents relating to its creation and development of the *EMPIRE SERIES*, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015, including, notes, drafts, memos, treatments, scripts, scriptments, synopsis, outlines, pitches or communications relating to the concepts, themes, plots, premises, topics and/or characters of the series, as well as communications between Fox and Lee Daniels or Danny Strong and their representatives regarding the same.

### b.  REQUEST NO. 3

Fox improperly limits its response to "documents sufficient to show any alternate names." Empire's claim and document request is not limited to Fox's use of the mark 'Empire,' but also relates to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is misleading.  Meetings or communications regarding the use of the name "Empire," or any alternate names, for the series are highly relevant to determining what

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 3

meaning and commercial impression Fox intended to communicate to the public through the name of the series, including the discussions and reasoning why alternate names were not used.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files. All documents requested in Request No. 3 must be produced.

### c.  REQUEST NO. 6

Fox improperly limits its response to "documents submitted to the United States Patent and Trademark Office regarding Fox's application to register 'Empire' as a trademark and responses received thereto." This request seeks all documents relating to any attempts by Fox "to register the name 'Empire', or any other name, mark, logo or symbol relating to the *EMPIRE SERIES*, as a trademark, including any communications relating thereto. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files. All documents requested in Request No. 6 must be produced, including non-privileged documents and communications other than those directly with the USPTO.

### d.  REQUEST NO. 8

Fox has improperly refused to produce documents relating to its "intellectual property rights in and to the fictional television series *Empire* and the music therefrom, including copyright and trademark rights" as alleged in paragraph 3 of the Complaint. The request is limited to documents that Fox put at issue in this case. These documents are therefore plainly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

Further, there has been no showing whatsoever by Fox that it does not have in its possession, custody, or control any responsive documents or that there is any undue burden on Fox in producing the documents from its own files. Fox's objection based on "proprietary or

**TROUTMAN SANDERS**

Molly M. Lens, Esq.
September 25, 2015
Page 4

confidential business information" is also improper in light of the Court's Protective Order  All documents requested in Request No. 8 must be produced.

### e.  REQUEST NOS. 11 & 12

Fox has improperly limited its response to "exemplars" of promotions, advertisements, and marketing efforts and executed contracts.  The limited production of exemplars does not fulfill Fox's obligation to produce relevant documents.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files.  Fox's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  All documents requested in Request Nos. 11 and 12 must be produced.

### f.  REQUEST NO. 13

Fox improperly limits its response to "executed agreements" relating to *EMPIRE SERIES MUSIC*.  The unnecessarily limited production of only executed agreements does not fulfill Fox's obligation to produce relevant documents relating to the sale, license, distribution or release of *EMPIRE SERIES MUSIC* in physical record stores, online stores such as iTunes, Google Play, Amazon.com, and Spotify, or anywhere else, including, but not limited to, all contracts, agreements, or communications relating thereto.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files.  Fox's objection based on "proprietary or

**TROUTMAN**
**SANDERS**

Molly M. Lens, Esq.
September 25, 2015
Page 5

confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 13 must be produced.

### g. REQUEST NO. 14

Fox's objection based on "the right of privacy of the talent" is improper in light of the Court's Protective Order. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files. All documents requested in Request No. 14 must be produced.

### h. REQUEST NO. 15

Fox has improperly refused to produce any documents responsive to this document request which seeks all agreements, contracts or communications between Fox and any musicians who produce, perform or compose music for the *EMPIRE SERIES*, regarding the production, promotion, advertisements, sales, license, distribution or relate of the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that it does not have in its possession, custody, or control of any responsive documents or that there is any undue burden on Fox in producing the documents from its own files. Fox's objection based on "the right of privacy of the talent" is also improper in light of the Court's Protective Order. All documents requested in Request No. 15 must be produced.

Molly M. Lens, Esq.
September 25, 2015
Page 6

### i.   REQUEST NOS. 16 & 17

Fox improperly limits its response to documents and communications referring or relating to "use of the mark 'Empire'" in connection with the promotion, advertisement, sale, license, distribution or release of *EMPIRE SERIES MUSIC*.  Empire's claim and document request are not limited to Fox's use of the mark 'Empire,' but also relate to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files.  Fox's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  Fox must produce documents and communications relating to the promotion, advertisement, sale, license, distribution or release of *EMPIRE SERIES MUSIC* generally, including, but not limited to, documents and communications relating to the use of the 'Empire' mark.

### j.   REQUEST NO. 18

Fox has improperly refused to produce any documents responsive to this document request which seeks documents reflecting, referring or relating to FOX's online account with Mediabase.  Mediabase produces song charts based on monitored airplay to provide music industry analytics.  Fox or others on its behalf have provided promotional content to Mediabase, and is functioning as a record label.  These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that it does not have in its possession, custody, or control of any responsive documents or that there is any undue burden on Fox in producing the documents from its own files.  Fox's objection based on "proprietary or

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 7

confidential business information" is also improper in light of the Court's Protective Order.  Fox must produce documents relating to its involvement with Mediabase and its music industry analytics.

### k.  REQUEST NO. 25

Fox improperly limits its response to "documents sufficient to show sales," and does not address the remainder of Empire's request, which seeks not only present but also "prospective" sales, marketing or business plans/strategies regarding products or services provided in connection with the "Empire" mark.  Empire's claim is not limited to instances of past infringement.  Fox's ongoing use of Empire's mark and intended future use of the mark are highly relevant to this case.  In addition, Empire's claim and document request relate to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files.  Fox must produce documents relating to present and prospective sales, marketing, or business plans/strategies, including, but not limited to, documents showing sales to date as requested in Request No. 25.

### l.  REQUEST NO. 30

Fox has improperly refused to produce any documents responsive to this document request which seeks documents sufficient to show each purchase of any good or service offered for sale, sold, promoted, or advertised under or in association with the "Empire" mark.  Empire's claim and document request relate to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 8

Further, there has been no showing whatsoever by Fox that it does not have in its possession, custody, or control of any responsive documents or that there is any undue burden on Fox in producing the documents from its own files. Fox's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 30 must be produced.

### m.  REQUEST NO. 34

Fox improperly limits its response to documents referring or relating to publicity or news relating to "use of the mark 'Empire.'" These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

There has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files. Further, Empire is not required to guess what documents that are "available to the public" may be in the possession, custody, or control of Fox and the fact that publicly-available documents are in Fox's possession, custody, or control may be highly relevant and pursued in a deposition of Fox. Fox must produce documents relating to publicity or news relating to the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC* generally, including, but not limited to, those relating to the use of the 'Empire' mark.

### n.  REQUEST NO. 37

Fox improperly limits its response to documents "sent to a third party regarding any objection or concern by Fox regarding that third-party's existing or intended use of the 'Empire' mark." Empire's request also seeks documents relating to any expression of concern "by any third party to FOX relating to FOX's...existing or intended use of the 'Empire' mark." There has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files. All documents requested in Request No. 37 must be produced.

### o.  REQUEST NO. 44

Fox improperly limits its response to documents relating to "confusion between the 'Empire' mark and Empire Distribution." Empire's request seeks documents relating to any poll, survey, study, report, analysis or evaluation relating to the "Empire" mark, including, but not limited to, those relating to confusion. For instance, Empire is entitled to, and its request covers, any focus

Molly M. Lens, Esq.
September 25, 2015
Page 9

group studies or other studies testing audience impression of the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox that there is any undue burden on Fox in producing the documents from its own files. Fox's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 44 must be produced.

## II.   Daniel Strong Subpoena to Produce Documents

Mr. Strong's refusal to produce documents outside of a self-defined relevant time period is baseless. Namely, Mr. Strong objects to requests seeking documents prior to the time that he learned of the series that became the *EMPIRE SERIES* and to requests seeking information after the time that Empire sent its initial objection to Fox in February 2014. *See* General Objection No. 6. Mr. Strong must produce responsive documents pertaining not only to the unnamed series that became the *EMPIRE SERIES*, but also documents referring or relating to the concepts and discrete ideas that Fox then developed into a unified television series. Such documents may predate the existence of the "series" itself. Mr. Strong also must produce responsive documents created after February 2014, as Empire's claim is not limited to instances of past infringement. Fox's ongoing use of Empire's mark and intended future use of the mark are highly relevant to this case.

### a.   REQUEST NO. 1:

Mr. Strong improperly limits his response to "documents that reflect, refer, or relate to the use of the mark 'Empire' in connection with Mr. Strong's creation and development of the *EMPIRE SERIES* from the time he became involved with the series that became *Empire* through January 7, 2015. Empire's claim and subpoena request is not limited to Mr. Strong's use of the mark 'Empire,' but also relates to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a

Molly M. Lens, Esq.
September 25, 2015
Page 10

likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

There has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. Mr. Strong must produce all documents relating to its creation and development of the *EMPIRE SERIES*, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015, including, notes, drafts, memos, treatments, scripts, scriptments, synopsis, outlines, pitches or communications relating to the concepts, themes, plots, premises, topics and/or characters of the series.

### b.  REQUEST NO. 3:

With respect to alternate names for the series that were considered, proposed, or discussed, Mr. Strong improperly limits his response to "documents sufficient to show any alternate names." Empire's claim and subpoena request is not limited to Mr. Strong's use of the name "Empire," but also relates to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

There has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. Mr. Strong must produce all documents regarding all meetings or communications regarding the use of the name "Empire," or any alternate names, for the series are highly relevant to determining what meaning and commercial impression Mr. Strong intended to communicate to the public through the name of the series and the discussions and reasoning why alternate names were not used.

### c.  REQUEST NO. 6

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to any attempts by Mr. Strong or Fox "to register the name 'Empire', or any other name, mark, logo or symbol relating to the *EMPIRE SERIES*, as a trademark, including any communications relating thereto.  These documents are highly relevant

T̲ROUTMAN
S̲ANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 11

to the issues in this case, and there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. All documents requested in Request No. 6 must be produced.

### d. REQUEST NO. 9

Mr. Strong has improperly limited his response to "documents sufficient to reflect the use of a city skyline graphic in conjunction with the 'Empire' mark/logo." Empire's claim is not limited to Fox or Mr. Strong's use of the name "Empire" or the city skyline graphic in conjunction with the "Empire" mark/logo, but also relates to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

Empire's subpoena request therefore seeks all documents reflecting, referring or relating to use of such city skyline graphic, including, without limitation, all communications regarding such use of the city skyline graphic which are highly relevant to determining why the city skyline graphic was chosen, what meaning and commercial impression was intended to be conveyed to the public by use of the city skyline in conjunction with the "Empire" mark/logo, and the discussions and communications regarding such use.

### e. REQUEST NO. 10.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring, or relating to any advertisements, promotions or marketing efforts by Mr. Strong or Fox using the "Empire" mark/logo. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 12

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. All documents requested in Request No. 10 must be produced.

### f.   REQUEST NO. 11.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring, or relating to the promotion, advertisement, or marketing of the *EMPIRE SERIES MUSIC*, including, but not limited to, all contracts, agreements, or communications relating thereto.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. Mr. Strong's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  All documents requested in Request No. 11 must be produced.

### g.   REQUEST NO. 12.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring, or relating to sale, license, distribution or release of the *EMPIRE SERIES MUSIC* in physical record stores, online stores such as iTunes, Google Play, Amazon.com, and Spotify, or anywhere else, including, but not limited to, all contracts, agreements, or communications relating thereto.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In

**TROUTMAN**
**SANDERS**

Molly M. Lens, Esq.
September 25, 2015
Page 13

addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents from his own files. All documents requested in Request No. 12 must be produced.

### h. REQUEST NO. 14.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all agreements, contracts or communications between him or Fox and any musicians who produce, perform or compose music for the *EMPIRE SERIES*, regarding the production, promotion, advertisements, sales, license, distribution or relate of the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. Mr. Strong's objection based on "the right of privacy of the talent" is also improper in light of the Court's Protective Order. All documents requested in Request No. 14 must be produced.

### i. REQUEST NO. 15.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all communications between him and FOX, or any other person or entity, regarding the production, sale, license, promotion, advertisement, marketing, distribution or release of the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 14

the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. Mr. Strong's objection based on "the right of privacy of the talent" is also improper in light of the Court's Protective Order. All documents requested in Request No. 15 must be produced.

### j.  REQUEST NO. 16.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring or relating to the performance, presentation or promotion of the *EMPIRE SERIES MUSIC* at radio stations, concerts, live performances, events, physical record stores and other venues. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including but not limited to whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, control, or control. All documents requested in Request No. 16 must be produced.

### k.  REQUEST NO. 18.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring or relating to any publicity or news relating to the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 15

and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. Empire is not required to guess what documents that are "available to the public" may be in the possession, custody, or control of Mr. Strong and the fact that publicly-available documents are in Mr. Strong's possession, custody, or control may be highly relevant and pursued in a deposition of Fox.

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. All documents requested in Request No. 18 must be produced.

### l.   REQUEST NO. 22.

Mr. Strong has improperly limited his response to documents relating to "confusion between the 'Empire' mark and Empire Distribution." Empire's subpoena request seeks documents relating to any poll, survey, study, report, analysis or evaluation relating to the "Empire" mark, including <u>but not limited to</u> those relating to confusion. For instance, Empire is entitled to, and its request covers, any focus group studies or other studies testing audience impression of the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. Mr. Strong's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 22 must be produced.

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 16

### m. REQUEST NO. 23.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to the complaint of Fox or counterclaims of Empire. These documents are highly relevant to the issues in this case.  Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents from its own files.  Mr. Strong's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  All documents requested in Request No. 23 must be produced.

### n. REQUEST NO. 24.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to Empire.  These documents are highly relevant to the issues in this case.  Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control.  Further, Empire is not required to guess what documents that are "available to the public" may be in the possession, custody, or control of Mr. Strong and the fact that publicly-available documents are in Mr. Strong's possession, custody, or control may be highly relevant and pursued in a deposition of Mr. Strong.  All documents requested in Request No. 24 must be produced.

### o. REQUEST NO. 26.

Mr. Strong has improperly refused to produce any documents responsive to this subpoena request which seeks any research, including, but not limited to, marketing research such as surveys and focus groups, research on social media or on search engines conducted by Lee Daniels Entertainment, or acquired from third parties (e.g., Nielsen), regarding the demographics of the consumers of the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC*.  These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 17

Further, there has been no showing whatsoever by Mr. Strong that he does not have in his possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Mr. Strong in producing the documents that are in his possession, custody, or control. All documents requested in Request No. 26 must be produced.

### III.   Fox Music, Inc. Subpoena to Produce Documents

Fox Music's refusal to produce documents outside of its self-defined relevant time period is baseless. Namely, Fox Music objects to requests seeking documents prior to the time that Fox Music learned of the series that became the *EMPIRE SERIES* and to requests seeking information after the time that Empire sent its initial objection to Fox in February 2014. *See* General Objection No. 6. Fox Music must produce responsive documents pertaining not only to the unnamed series that became the *EMPIRE SERIES*, but also documents referring or relating to the concepts and discrete ideas that Fox then developed into a unified television series. Such documents may predate the existence of the "series" itself. Fox Music also must produce responsive documents created after February 2014, as Empire's claim is not limited to instances of past infringement. Fox's ongoing use of Empire's mark and intended future use of the mark are highly relevant to this case.

#### a.   REQUEST NOS. 1 & 2

Fox Music improperly limits its response to documents referring or relating to Empire Distribution, the *EMPIRE SERIES*, and *EMPIRE SERIES MUSIC* and their "use of the 'Empire' name." These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, Empire is not required to guess what documents that are "available to the public" may be in the possession, custody, or control of Fox Music and the fact that publicly-available documents are in Fox Music's possession, custody, or control may be highly relevant and pursued in a deposition of Fox Music. In addition, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, custody, or control. Fox Music must produce documents relating to relating to the

**TROUTMAN
SANDERS**

Molly M. Lens, Esq.
September 25, 2015
Page 18

Empire Distribution and the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC* generally, including, but not limited to, those relating to the use of the 'Empire' name.

### b.   REQUEST NO. 5

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to any attempts by Fox Music to register 'Empire' or any other name, mark, logo or symbol relating to *EMPIRE SERIES MUSIC*. Fox Music's decision to pursue trademark protection for names and symbols used in conjunction with its music goods and services, which overlap with Empire's goods and services, and the circumstances surrounding that decision are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, custody, or control. All documents requested in Request No. 5 must be produced.

### c.   REQUEST NO. 7

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring, or relating to the promotion, advertisement, or marketing of the *EMPIRE SERIES MUSIC*, including, but not limited to, all contracts, agreements, or communications relating thereto. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 19

burden on Fox Music in producing the documents that are in its possession, custody, or control. Fox Music's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  All documents requested in Request No. 7 must be produced.

### d.   REQUEST NO. 8

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring, or relating to sale, license, distribution or release of the *EMPIRE SERIES MUSIC* in physical record stores, online stores such as iTunes, Google Play, Amazon.com, and Spotify, or anywhere else, including, but not limited to, all contracts, agreements, or communications relating thereto.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents from its own files.  Fox Music's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  All documents requested in Request No. 8 must be produced.

### e.   REQUEST NO. 9

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all agreements, contracts or communications between it or Fox and any musicians who produce, perform or compose music for the *EMPIRE SERIES*, regarding the production, promotion, advertisements, sales, license, distribution or relate of the *EMPIRE SERIES MUSIC*.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 20

to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, custody, or control. Fox Music's objection based on "the right of privacy of the talent" is also improper in light of the Court's Protective Order.  All documents requested in Request No. 9 must be produced.

### f.   REQUEST NOS. 10 & 11

Fox improperly refuses to produce documents referring or relating to the promotion, advertisement, sale, license, distribution or release of *EMPIRE SERIES MUSIC*.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, custody, or control. Fox Music's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  All documents requested in Request Nos. 10 and 11 must be produced.

### g.   REQUEST NO. 12

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring or relating to the performance, presentation or promotion of the *EMPIRE SERIES MUSIC* at radio stations, concerts, live performances, events, physical record stores and other venues.  These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters,

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 21

business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, control, or control. All documents requested in Request No. 12 must be produced.

### h. REQUEST NO. 13

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to any present or prospective sales, marketing or business plans/strategies regarding the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, control, or control. Fox Music's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 13 must be produced.

### i. REQUEST NO. 14

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to any revenues, expenses, and profits relating to all goods and services sold, or offered for sale, in association with the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 22

parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, control, or control. Fox Music's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 14 must be produced.

### j.  REQUEST NO. 15

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to relating to the total volume of sales for all goods and services sold in association with the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, control, or control. All documents requested in Request No. 15 must be produced.

### k.  REQUEST NO. 16

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to the amounts spent to advertise, market and promote goods or services in association with the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 23

issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in its possession, control, or control.  Fox Music's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  All documents requested in Request No. 16 must be produced.

## l.   REQUEST NO. 17

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring or relating to any publicity or news relating to the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.  These publicity documents are highly relevant to the issues in this case.  Empire is not required to guess what documents that are "available to the public" may be in the possession, custody, or control of Fox Music and the fact that publicly-available documents are in Fox Music's possession, custody, or control may be highly relevant and pursued in a deposition of Fox Music.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in his possession, custody, or control.  All documents requested in Request No. 17 must be produced.

## m.  REQUEST NO. 18

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to anyone other than FOX that has used or is using the designation or word "Empire" in the music industry.  These documents are highly relevant to the issues in this case.  Empire is not required to guess what documents that are "available to the public" may be in the possession, custody, or control of Fox Music and the fact that publicly-available documents are in Fox Music's possession, custody, or control may be highly relevant and pursued in a deposition of Fox Music.

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 24

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Fox Music in producing the documents that are in his possession, custody, or control. All documents requested in Request No. 18 must be produced.

**n.   REQUEST NO. 21**

Fox Music improperly limits its response to documents relating to "confusion between the 'Empire' mark and Empire Distribution."  Empire's subpoena request seeks documents relating to any poll, survey, study, report, analysis or evaluation relating to the "Empire" mark, including, but not limited to, those relating to confusion.  For instance, Empire is entitled to, and its request covers, any focus group studies or other studies testing audience impression of the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC*.  These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.  All documents requested in Request No. 21 must be produced.

**o.   REQUEST NO. 23**

Fox Music has improperly refused to produce any documents responsive to this subpoena request which seeks any research, including, but not limited to, marketing research such as surveys and focus groups, research on social media or on search engines conducted by Fox Music, or acquired from third parties (e.g., Nielsen), regarding the demographics of the consumers of the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC*.  These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Fox Music that it does not have in its possession, custody, or control any responsive documents or that there is any undue burden on

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 25

Fox Music in producing the documents from its own files.  All documents requested in Request No. 23 must be produced.

## IV.   Lee Daniels Entertainment Subpoena to Produce Documents

Lee Daniels Entertainment's refusal to produce documents outside of its self-defined relevant time period is baseless.  Namely, Lee Daniels Entertainment objects to requests seeking documents prior to the time that it learned of the series that became the *EMPIRE SERIES* and to requests seeking information after the time that Empire sent its initial objection to Fox in February 2014.  *See* General Objection No. 6.  Lee Daniels Entertainment must produce responsive documents pertaining not only to the unnamed series that became the *EMPIRE SERIES*, but also documents referring or relating to the concepts and discrete ideas that Fox then developed into a unified television series.  Such documents may predate the existence of the "series" itself.  Lee Daniels Entertainment also must produce responsive documents created after February 2014, as Empire's claim is not limited to instances of past infringement.  Fox's ongoing use of Empire's mark and intended future use of the mark are highly relevant to this case.

### a.   REQUEST NO. 1:

Lee Daniels Entertainment improperly limits its response to "documents that reflect, refer, or relate to the use of the mark 'Empire'" in connection with Lee Daniels Entertainment's creation and development of the *EMPIRE SERIES* from the time Lee Daniels Entertainment became involved with the series that became *Empire* through January 7, 2015.  Empire's claim and subpoena request is not limited to Fox or Lee Daniels Entertainment's use of the mark 'Empire,' but also relates to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

There has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents that are in his possession, custody, or control.  Lee Daniels Entertainment must produce all documents relating to its creation and development of the *EMPIRE SERIES*, from the time the series was first conceived through the date of the first pilot episode on January 7, 2015, including, notes, drafts, memos, treatments, scripts, scriptments, synopsis, outlines, pitches or communications relating to the concepts, themes, plots, premises, topics and/or characters of the series.

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 26

**b. REQUEST NO. 3:**

With respect to alternate names for the series that were considered, proposed, or discussed, Lee Daniels Entertainment improperly limits its response to "documents sufficient to show any alternate names." Empire's claim and subpoena request is not limited to Fox or Lee Daniels Entertainment's use of the name "empire," but also relates to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.

There has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents that are in his possession, custody, or control. Lee Daniels Entertainment must produce all documents regarding all meetings or communications regarding the use of the name "Empire," or any alternate names, for the series are highly relevant to determining what meaning and commercial impression Lee Daniels Entertainment intended to communicate to the public through the name of the series and the discussions and reasoning why alternate names were not used.

**c. REQUEST NO. 6**

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to any attempts by Lee Daniels Entertainment or Fox "to register the name 'Empire', or any other name, mark, logo or symbol relating to the *EMPIRE SERIES*, as a trademark, including any communications relating thereto. These documents are highly relevant to the issues in this case, and there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files. All documents requested in Request No. 6 must be produced.

**d. REQUEST NO. 9**

Lee Daniels Entertainment has improperly limited its response to "documents sufficient to reflect the use of a city skyline graphic in conjunction with the "Empire' mark/logo." Empire's claim is not limited to Fox or Lee Daniels Entertainment's use of the name "Empire" or the city skyline graphic in conjunction with the "Empire" mark/logo, but also relates to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 27

the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  Empire's subpoena request therefore seeks all documents reflecting, referring or relating to use of such city skyline graphic, including, without limitation, all communications regarding such use of the city skyline graphic which are highly relevant to determining why the city skyline graphic was chosen, what meaning and commercial impression was intended to be conveyed to the public by use of the city skyline in conjunction with the "Empire" mark/logo, and the discussions and communications regarding such use.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents that are in his possession, custody, or control.  All documents requested in Request No. 9 must be produced.

**e.  REQUEST NO. 10.**

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring, or relating to any advertisements, promotions or marketing efforts by Lee Daniels Entertainment or Fox using the "Empire" mark/logo.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files.  All documents requested in Request No. 10 must be produced.

**TROUTMAN SANDERS**

Molly M. Lens, Esq.
September 25, 2015
Page 28

### f.   REQUEST NO. 11.

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring, or relating to the promotion, advertisement, or marketing of the *EMPIRE SERIES MUSIC*, including, but not limited to, all contracts, agreements, or communications relating thereto.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files.  Lee Daniels Entertainment's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.  All documents requested in Request No. 11 must be produced.

### g.   REQUEST NO. 12.

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring, or relating to sale, license, distribution or release of the *EMPIRE SERIES MUSIC* in physical record stores, online stores such as iTunes, Google Play, Amazon.com, and Spotify, or anywhere else, including, but not limited to, all contracts, agreements, or communications relating thereto.  These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative,

**TROUTMAN**
**SANDERS**

Molly M. Lens, Esq.
September 25, 2015
Page 29

non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files. Lee Daniels Entertainment's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 12 must be produced.

### h.   REQUEST NO. 14.

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all agreements, contracts or communications between Lee Daniels Entertainment or Fox and any musicians who produce, perform or compose music for the *EMPIRE SERIES*, regarding the production, promotion, advertisements, sales, license, distribution or relate of the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files. Lee Daniels Entertainment's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 14 must be produced.

### i.   REQUEST NO. 15.

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all communications between Lee Daniels Entertainment and FOX, or any other person or entity, regarding the production, sale, license, promotion, advertisement, marketing, distribution or release of the *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims (including damages) and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to

**TROUTMAN SANDERS**

Molly M. Lens, Esq.
September 25, 2015
Page 30

determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files.  Lee Daniels Entertainment's objection based on "the right of privacy of the talent" is also improper in light of the Court's Protective Order.  All documents requested in Request No. 15 must be produced.

### j.   REQUEST NO. 16.

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring or relating to the performance, presentation or promotion of the *EMPIRE SERIES MUSIC* at radio stations, concerts, live performances, events, physical record stores and other venues.  These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion.  In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files.  All documents requested in Request No. 16 must be produced.

### k.   REQUEST NO. 18.

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all documents reflecting, referring or relating to any publicity or news relating to the *EMPIRE SERIES* and *EMPIRE SERIES MUSIC*.  These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 31

between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files. Empire is not required to guess what documents that are "available to the public" may be in the possession, custody, or control of Lee Daniels Entertainment and the fact that publicly-available documents are in Lee Daniels Entertainment's possession, custody, or control may be highly relevant and pursued in a deposition of Lee Daniels Entertainment. All documents requested in Request No. 18 must be produced.

### l.  REQUEST NO. 22.

Lee Daniels Entertainment has improperly limited its response to documents relating to "confusion between the 'Empire' mark and Empire Distribution." Empire's subpoena request seeks documents relating to any poll, survey, study, report, analysis or evaluation relating to the "Empire" mark, including, but not limited to, those relating to confusion. For instance, Empire is entitled to, and its request covers, any focus group studies or other studies testing audience impression of the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Lee Daniels Entertainment's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order.

### m.  REQUEST NO. 23.

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to the complaint of Fox or counterclaims of Empire. These documents are highly relevant to the issues in this case.

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 32

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files. Lee Daniels Entertainment's objection based on "proprietary or confidential business information" is also improper in light of the Court's Protective Order. All documents requested in Request No. 23 must be produced.

**n. REQUEST NO. 24.**

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks all documents relating to Empire. These documents are highly relevant to the issues in this case. There has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative, non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files.

Further, Empire is not required to guess what documents that are "available to the public" Lee Daniels Entertainment may have in its possession, custody, or control and the fact that they are in Lee Daniels' possession, custody, or control may be highly relevant and pursued in a deposition of Lee Daniels Entertainment. All documents requested in Request No. 24 must be produced.

**o. REQUEST NO. 26.**

Lee Daniels Entertainment has improperly refused to produce any documents responsive to this subpoena request which seeks any research, including, but not limited to, marketing research such as surveys and focus groups, research on social media or on search engines conducted by Lee Daniels Entertainment, or acquired from third parties (e.g., Nielsen), regarding the demographics of the consumers of the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC*. These documents are highly relevant to the parties' claims and defenses in this trademark case, which have put at issue thematic similarities between the *EMPIRE SERIES* or *EMPIRE SERIES MUSIC* on the one hand and Empire on the other hand, overlap between the parties' respective businesses, overlap between the parties' target markets, and overlap between the *EMPIRE SERIES* characters, business themes, music, musical artists, marketing/advertising channels, product line expansion, and distribution channels, all of which are relevant to determining a likelihood of confusion. In addition, Fox has injected the issue of a "First Amendment" defense to trademark infringement and this request seeks documents relevant to issues including, but not limited to, whether Fox's use of the 'Empire' mark is commercial and/or misleading.

Further, there has been no showing whatsoever by Lee Daniels Entertainment that it does not have in its possession, custody, or control any responsive documents that are non-cumulative,

TROUTMAN
SANDERS

Molly M. Lens, Esq.
September 25, 2015
Page 33

non-duplicative, or non-identical to the discovery available from Fox or that there is any undue burden on Lee Daniels Entertainment in producing the documents from its own files.  All documents requested in Request No. 26 must be produced.

  We reserve the right to raise additional issues including, but not limited to, any issues raised by Fox with regard to Empire's responses to requests for production of documents.  Pursuant to Local Rule 37-1, please provide your availability for a telephone conference within the next ten days, to discuss these issues.

  Sincerely,

  Peter N. Villar

EXHIBIT F
150

# EXHIBIT G

**Volpe, Stephen**

| | |
|---|---|
| **From:** | Lens, Molly |
| **Sent:** | Tuesday, November 10, 2015 5:57 PM |
| **To:** | Villar, Peter N. |
| **Cc:** | Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Gale, Paul L. |
| **Subject:** | RE: Fox v. Empire Distribution |

Peter -

Your question is not straightforward, as it presumes something about the manner in which Mediabase accounts exist, which you have now confirmed that you do not know to be the case.  And it's inconsistent with our understanding of how Mediabase accounts work.  Moreover, at this point, it's clear that your question is not tied to the parties' ongoing meet-and-confer efforts over the Requests for Production; we have repeatedly confirmed that there are no documents responsive to Request No. 18, which is the request targeted at Mediabase.  We do not agree with your belated attempt to stretch other Requests to somehow cover these documents.  All I can tell you, without any waiver of privilege, is that we understand Fox does not have an account with Mediabase.  To the extent that we encounter documents relating to Mediabase and Empire in our search for documents which are actually responsive to your RFPs, we will agree produce them, notwithstanding the lack of an RFP calling for their production.  In closing, we don't appreciate your suggestion that we have not attempted to meet and confer with you in good faith, when the record is the opposite.

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Thursday, November 05, 2015 10:32 AM
**To:** Lens, Molly
**Cc:** Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Gale, Paul L.
**Subject:** RE: Fox v. Empire Distribution

Molly, I am not going to respond to your commentary on our prior meet and confer discussions and distortion of the record.  In response to your question, as previously stated, this shall further confirm that our client's production will include documents from Empire Recordings and Empire Distribution.  With respect to Mediabase (Request No. 18), our question is straightforward:  Is it your position that there is no account/agreement with Mediabase relating to the *Empire* series music, or whether there is an account/agreement with Mediabase relating to the *Empire* series music but in the name of an entity other than Fox (such as Sony Music)?  Your assertion that "no documents exist that are responsive to this Request" does not end our inquiry because we need to know the basis of your assertion if we are to potentially resolve this discovery dispute (which is the purpose of the meet and confer process).  If it is your position that there is no

Mediabase account/agreement relating to the *Empire* series music exists at all, then presumably there would be no responsive documents in the possession, custody or control of any entity.  If your position is that there is an account/agreement with Mediabase but that it is not specifically in the name of Fox, then we could continue to meet and confer with Fox regarding the production of such documents as they arguably would be covered by the definition of FOX and/or covered by other Requests including, for example, Request Nos. 12, 13, 16, 17, 25, 27, 28, 29, 31, 32, 33, 34, and 44.  We may also have to obtain them from a third party.  We won't know until you answer this fundamental question.  I do not know how Mediabase manages all of its accounts (including any accounts relating to the *Empire* series music) and, frankly, it is irrelevant whether there is one account or multiple accounts or whether accounts are organized "by artist/soundtrack etc."  Ultimately, we want any song charts, airplay analyses and other data from Mediabase relating to the *Empire* series music regardless of the format or number of the account or accounts.  We would appreciate a direct, good faith response to our question above (as we have responded to your multiple questions) in an effort to avoid a motion to compel and/or unnecessary additional discovery.  Thank you.

- Peter

---

**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Wednesday, November 04, 2015 3:39 PM
**To:** Villar, Peter N.
**Cc:** Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Gale, Paul L.
**Subject:** RE: Fox v. Empire Distribution

Peter -

Your response with respect to Empire Recordings contradicts what John Bowler stated during the October 5 meet and confer, namely that Empire Recordings was an unincorporated division of Empire Distribution.  Regardless, we understand that we should operate under your representation below.  (And we won't comment on your statement about how the various Fox entities may or may not operate).  Please confirm that your forthcoming revised responses will confirm that any and all responsive documents will be produced from Empire Recordings, as well as Empire Distribution.

Request No. 18 asks for "all Documents reflecting, referring, or relating to Fox's online account with Mediabase."  We have confirmed that no documents exist that are responsive to this Request, which we thought would have ended your inquiry.  In any event, so that we can attempt to understand your question, are you representing that accounts with Mediabase are by artist/soundtrack etc.?  For example, does Empire Distribution have one account with Mediabase or multiple accounts, with each account covering individual artists?

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

  

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Wednesday, November 04, 2015 9:44 AM
**To:** Lens, Molly
**Cc:** Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Gale, Paul L.
**Subject:** RE: Fox v. Empire Distribution

Molly, my general understanding is that Empire Distribution and Empire Recordings are separate corporations but operate more like divisions of the Empire Music brand (much like many of the Fox entities).  We would also appreciate the courtesy of a response to the question we asked two weeks ago in our October 21 email below regarding Mediabase – specifically, whether your representation is that there is no account/agreement with Mediabase relating to the *Empire* series music, or whether there is an account/agreement with Mediabase relating to the *Empire* series music but in the name of an entity other than Fox (such as Sony Music)?  Thanks.

- Peter

**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Tuesday, November 03, 2015 4:36 PM
**To:** Villar, Peter N.
**Cc:** Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Gale, Paul L.
**Subject:** RE: Fox v. Empire Distribution

Peter -

We'll look forward to (hopefully) receiving your responses tomorrow.  As to Empire Recordings, we appreciate your confirmation that your forthcoming production includes any and all responsive information from Empire Recordings.  However, we still need clarification of the relationship between Empire Distribution and Empire Recordings.

Thanks,

Molly

_____
**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

  

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Tuesday, November 03, 2015 1:57 PM
**To:** Lens, Molly
**Cc:** Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Gale, Paul L.
**Subject:** RE: Fox v. Empire Distribution

Molly, we are working through the issues and hope to get back to you by tomorrow.  With respect to Empire Recordings, as discussed, our collection of documents from Empire Distribution would include any responsive documents from Empire Recordings so no subpoena is necessary.

- Peter

**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Tuesday, November 03, 2015 11:37 AM
**To:** Villar, Peter N.
**Cc:** Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.
**Subject:** RE: Fox v. Empire Distribution

Peter -

Please let us know where we are on all the issues below, including our October 22 email on Empire Recordings.

Thanks,

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

  

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Lens, Molly
**Sent:** Wednesday, October 28, 2015 2:47 PM
**To:** Villar, Peter N.
**Cc:** Bowler, John M.; lindsay.henner@troutmansanders.com; Petrocelli, Daniel; Biscay, Cameron H.
**Subject:** RE: Fox v. Empire Distribution

Peter -

Please see my responses interlineated in red below.

Molly

_____
**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593

Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Lens, Molly
**Sent:** Monday, October 26, 2015 8:45 PM
**To:** 'Villar, Peter N.'
**Subject:** RE: Fox v. Empire Distribution

Peter -

We are in the process of preparing a response to your email from last Wednesday.  Please also let us know where we stand on Fox's Request 58.

Thanks,

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Monday, October 26, 2015 2:31 PM
**To:** Lens, Molly
**Subject:** RE: Fox v. Empire Distribution

Molly, let me know when you're available to complete our discussions on these remaining issues.  Thanks.

-   Peter

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Wednesday, October 21, 2015 9:59 AM
**To:** Lens, Molly
**Cc:** Petrocelli, Daniel; Biscay, Cameron H.; Henner, Lindsay Mitchell; Bowler, John M.
**Subject:** RE: Fox v. Empire Distribution

Molly –

Thank you for your summary of our meet and confer discussions.  While it is mostly consistent with our understanding, we do have several comments and points of clarification.

**Fox's Response to Empire Distribution's First Set of RFP's**

Request Nos. 3, 6, 11, 12, 13, 16, 17, 34, 37, and 44:  We agree that Fox has agreed to amend these responses as discussed during our meet and confer conferences (namely by removing the limitations stated in your responses).  While we have agreed to amend these responses, as we have repeatedly stated, we do so preserving all objections.

Request Nos. 1 & 2:  We cannot agree to your proposed change as it unreasonably limits the scope of the requests, and the proposed subcategories are too vague, ambiguous and subject to the discretion of Fox.  While we believe the requests are appropriate as crafted, we would be willing to significantly narrow the scope of the requests to include the following categories within the limited timeframe set forth in the requests:  (1) the initial series of communications with Fox (both internal and external) regarding the potential creation/development of the television show that became "Empire" "The initial series of communications" is vague, ambiguous, and impossible to discern, and the topic of "the potential creation/development" of the show is as broad as the initial request.  Even more fundamentally, you have not been able to articulate why the creative and development documents that you seek are relevant.  Quite the opposite, with respect to each proffer of relevance, we have demonstrated that Empire Distribution will be receiving the desired documents through a separate request.  For these reasons, and in light of the burden imposed, Fox will not agree to produce these documents.  (2) any treatments, synopses, outlines or other "pitch" materials provided to Fox regarding the creation or development of the show from the creators Lee Daniels or Danny Strong or the executive producers Brian Grazer (Imagine Entertainment), Francie Calfo (Imagine Entertainment) or Ilene Chaiken (Little Chicken Productions); You have not justified your purported need for these creative materials other than to say they are relevant to Fox's First Amendment defense.  The Court need look no further than the show itself, however, to find the minimal artistic relevance required to support Fox's First Amendment defense.  As noted above, absent an adequate proffer of relevance, Fox will not agree to undertake the burden to search through more than a year's worth of creative and developmental documents to identify and produce these documents.  (3) any communications/documents discussing the fictional "Empire" record label and any potential relation to/inspiration from real life individuals, artists, musicians, events, companies or record labels, or any intent to portray a real life record label; Fox will revise its responses to produce any such non-privileged documents identified through a reasonable search.  (4) any communications/documents regarding the use, production, or sale of music in connection with the Empire series (including but not limited to the use of real musicians/artists/composers in connection with the series); Fox will revise its responses to produce any non-privileged documents regarding the sale of music in connection with *Empire* to generate money identified through a reasonable search.  (5)  all documents/communications relating to the origin/use of the name "Empire" for the show; Fox has already agreed to produce these documents in response to Request No. 3. and (6) any communications/documents regarding the target audience/markets for the Empire series or music.  Fox has already agreed to produce documents regarding the actual viewers of the show and consumers of the music.  Why do you contend that information regarding the target audience/markets is relevant?

Request No. 8:  Based on my notes, we agreed that Fox would produce all documents relating to Fox's alleged trademark rights in and to the television show Empire and the music therefrom in the United States.  We cannot agree to narrow this request to documents "sufficient to show" Fox's alleged trademark rights given the allegations and claims at issue in the case.  We never agreed to produce all documents relating to Fox's trademark rights in *Empire* and *Empire* series music.  Fox's trademarks are not at issue in this case.

Request No. 14:  We have given this further thought and would be willing to significantly narrow the scope of the request in the same manner as Request Nos. 1 and 2.  Please see our above response to 1 and 2.

Request No. 15:  We stand by our proposal which we believe substantially narrows the scope of the request and alleviates any conceivable burden on Fox.  We cannot agree to your proposal.  We do not think that document

discovery of highly confidential and sensitive documents is the appropriate way to explore Fox's use of "real musicians" on Empire, which is the only reason you have advanced to support your purported need for these documents.  To the extent your clients seek to establish that Fox uses established musicians as guest stars on the show, they can serve requests for admission on this topic that would more efficiently get at this information.  And, as to your comment regarding burden, we suggest that you review your team's position on Fox's Request 59.

Request No. 18:  To be clear, is it your representation that there is no account/agreement with Mediabase relating to the Empire series music, or that the account/agreement is not in the name of Fox?  We expect that Fox will amend its response to confirm it has no communications/documents responsive to this request.  Fox will agree to amend its responses to state that it has no documents responsive to this request.

Request No. 25:  To be clear, we understood our agreement to include all sales/marketing/business plans regarding products or services provided in connection with the "Empire" mark, and documents sufficient to show sales of products or services bearing the "Empire" mark.  Please explain how the above differs from my summary.

Request No. 30:  Your summary with regard to this request is correct.

In addition, we want to confirm that you will not be withholding documents based on your General Objections and that you will not be limiting your production to documents before "Empire Distribution sent its initial objection to Fox in February 2014" as stated in paragraph 6 of your General Objections.  As discussed, the documents should be produced at least through the date of your collection.  As we told you on October 5, to the extent our general objections relate to the scope of documents being produced, such as the relevant time period or geographic limitation to the United States, we are withholding documents based on our general objections.  With respect to the relevant time period, we were surprised to see this addressed in your email, since you never responded to our request that you identify which documents you needed beyond our February 2015 cutoff date, nor did you address this in our October 9 call.  As a compromise, however, we propose extending our cutoff date to the date the complaint was filed, March 23, 2015, with the additional agreement to provide the following documents up to the date of collection:

- Exemplars of advertisements, promotions, or marketing efforts using the "Empire" logo
- Executed agreements between Fox and anyone else primarily or solely relating to the use of the "Empire" mark/logo
- Documents sufficient to identify goods or services offered or sold in connection with the "Empire" mark
- Documents sufficient to show the channels of trade or distribution through which Fox has sold or offered for sale or currently sells any goods or services identified by the "Empire" mark
- Documents sufficient to show geographical areas in which Fox has sold or offered for sale goods or services under the "Empire" mark
- Documents sufficient to show Fox's revenues, expenses, and profits relating to goods and services sold or offered for sale with the "Empire" mark
- Documents sufficient to show the total volume of sales for all goods and services sold with the "Empire" mark
- Documents sufficient to show the amount spent by Fox each year to advertise, market, and promote goods and services with the "Empire" mark
- Documents sufficient to identify each entity or individual authorized to sell, distribute, promote, advertise, or market any goods or services identified by Fox's "Empire" mark
- Documents relating to any instance in which any person or entity made any statement, comment, inquiry, or question regarding any actual or potential association, affiliation, connection, correlation, relation, or sponsorship between the Empire series and/or Empire series music, on the one hand, and Empire Distribution, on the other hand

- Communications by or from Fox, Fox's customers or other persons, expressing any actual or potential confusion, association, affiliation, connection, correlation, relation, or sponsorship, or lack thereof, between Fox and Empire Distribution and their respective goods or services
- Documents Fox is required to produce under Rule 26 and the Court's Scheduling Order

To the extent you believe you need any additional documents up to the date of collection, please identify those documents so that Fox can consider your request. As we have repeatedly noted, however, we remind you that Empire Distribution's existing requests have already imposed an incredible burden on Fox and thus ask that you carefully consider your true need for any additional documents.

**Empire Distribution's Responses to Fox's First and Second Sets of RFPs**:

Empire has agreed to provide amended clarifying responses, preserving all objections, stating that Empire will produce responsive documents identified through a reasonable search for Requests 3, 4, 14, 10, 11, 18, 19, 20, 21, 22, 24, 26, 30, 34, 37, 43, 44, 46, 48, 50, 52, 54, 56, 57, 67, 69, 70, 71, 72, 73, and 74.  Agreed.

With respect to Request No. 5, Empire confirmed that, subject to its objections, it will produce documents in its possession, custody, or control relating to disputes concerning the Empire Distribution marks whether or not those disputes matured into a litigation, proceeding, or arbitration.  Agreed.

With respect to Request No. 16, Empire will amend its response to reflect the narrowed request in Fox's September 24 letter.  Agreed.

With respect to Request No. 25, Empire will amend its response to reflect the narrowed request of documents relating to ages, incomes, education levels, demographics, or other characteristics of Empire Distribution's customers.  Agreed.

With respect to Request Nos. 27-28, 31-34, 36-38, Empire confirmed that the term "non-expert" as used in these Requests was limited to non-litigation experts.  Agreed.

With respect to Requests No. 41, 42, 45, and 55, Empire will amend its responses to specify that it will produce documents relating to injury or damages based on a reasonable search, and is not limiting the scope of its production.  Request Nos. 42 and 55 seek documents sufficient to identify all persons with knowledge of Empire Distribution's alleged injury or damages.  Please confirm Empire Distribution will amend its responses accordingly.

With respect to Request No. 58, Empire is considering your arguments.  However, Empire has already stated that it has no licensees, has otherwise agreed to produce documents sufficient to identify individuals or entities that it considers to be a "partner," and products sold will be indentified at least through Request No. 8 if not others.  We reiterate our request, renewed earlier this week, that you confirm that you will amend Empire Distribution's responses to provide these documents.  Contrary to your statement above, the products sold will not be identified through Request No. 8, as that request seeks documents sufficient to identify products offered for sale by YOU (as defined in the Requests), while Request No. 58 seeks documents sufficient to identify products distributed, sold, or offered to the public by each licensee or partner.  These documents are patently relevant to this action, as paragraphs 11-13 of the counterclaim reference specific products sold by Empire Distribution's alleged partners to support Empire Distribution's claim that it "is a well-known music record label and music distribution company." Moreover, this request is narrowly-tailored, seeking only "documents sufficient to identify" such products, so any claims of burden lack merit.  We also ask for a response to our October 22 email so that we can evaluate your representation as to licensees.

With respect to Request No. 59, Empire confirmed that it does not enter into license agreements for use of its marks.  Fox has not proffered the relevance of each and every contract and agreement between Empire and each and every individual or entity with whom Empire conducts business.  Fox asserted a thin argument that these documents were necessary to evaluate Empire's reputation, and implied that Empire falsely claims to have business relationships with particular artists.  We explained, in detail, that Empire's agreements were not necessary for Fox to probe Empire's reputation or the mere existence of business relationships with various individuals.  We further explained that the production of each and every agreement was in no way necessary to support Fox's claims or defenses in this case.  Empire maintains its objections to this request.  You have misstated the scope of the request as well as the parties' prior discussions.  For example, your claim that you "explained, in detail" why your client is refusing to produce these documents is not accurate.  During the October 9 meet and confer, other than what's recounted in our October 16 email, you refused to discuss this request with us.  As to the scope, this request does not seek every agreement between Empire Distribution and any third party.  Rather, it only seeks the agreements between Empire Distribution and its partners, as the term is repeatedly used in the counterclaim.  Far from being "thin," Fox's argument that these agreements are necessary to evaluate Empire Distribution's reputation stems directly from the counterclaim, as Empire Distribution cites its alleged partnerships with various artists and record companies in paragraphs 10-13 of the counterclaim in support of its claim that it "has had numerous Billboard charting releases from well-recognized artists" and "has built relationships across the music industry to successfully record, promote, and distribute platinum and gold-certified records."  These agreements are also relevant to any attempts that Empire Distribution may have made to protect its alleged marks. Further, in addition to probing Empire Distribution's allegations of fame and Empire Distribution's relationships with certain artists, Fox is entitled to see what the agreements say regarding the use of Empire Distribution and the partners' respective alleged trademarks and any provisions that reflect the partners' brand prominence.  Notwithstanding the clear discoverability of the requested agreements, we understand the parties are at an impasse on this request and thus will have no choice but to move to compel.  Please also be advised that Fox intends to explore obtaining these agreements directly from Empire Distribution's partners.

With respect to Request No. 68, Empire again confirmed that it does not enter into license agreements for use of its marks.  Thus, upon a fair reading of the request, Request No. 68 is moot.  To the extent that this request seeks agreements outside of license agreements, Fox has not proffered the relevance of each and every agreement between Empire and each and every individual or entity with whom Empire conducts business, let alone each and every document referring to or relating to those agreements.   Fox asserted the identical argument that these documents were necessary to evaluate Empire's reputation, and implied that Empire falsely claims to have business relationships with particular artists.  We identified that Request No. 68 is virtually identical to Request No. 59.  In fact, Request No. 68 is even more broad and burdensome in calling for *every document related* to any agreements.  During the parties' three-hour meet and confer, we had previously explained in detail with respect to earlier requests that Empire's agreements were not necessary for Fox to probe Empire's reputation or the mere existence of business relationships with various individuals, and further explained that the production of each and every agreement was in no way necessary to support Fox's claims or defenses in this case.  Empire maintains its objections to this request.  Again your attempt to sanitize the meet-and-confer record is not well taken.  We note that you do not dispute the accuracy of our summary but rather simply are trying to provide a "gloss" on it.  And, again, you have inaccurately characterized the Request in an attempt to justify your refusal.  The Request does not seek every agreement between Empire Distribution and every individual or entity with whom it conducts business, but rather seeks documents relating to agreements concerning the use of Empire Distribution's alleged marks.  To the extent you claim that no such agreements exist, please amend your response accordingly.  To the extent you claim such agreements do exist, without prejudice to our right to seek additional documents at a subsequent date, we propose narrowing the request to seek simply the responsive agreements and contracts themselves.  Please confirm by the end of this week whether this works for you.  Otherwise, we will include this Request in our forthcoming motion to compel.

**Empire Distribution's Subpoenas:**

**Fox Music**:  Based on your representations, we are willing to agree to your proposal at this time without prejudice to our right to revisit any categories as we obtain additional information.  Agreed.

**Danny Strong / Lee Daniels**:  As discussed, Mr. Strong and Mr. Daniels are key witnesses and likely possess highly relevant documents (many of which would likely not be in the possession, custody or control of Fox).  We are willing to give you additional time to consult with them through the end of the week, but if they are not willing to produce documents under the compromise proposal, we reserve our right to seek all responsive documents in connection with a motion to compel.  We will address these subpoenas in separate email(s).

**Productions/Privilege Logs:**

We agree with your summary regarding the exchange of privilege logs.

Let's aim to complete our meet and confer discussions on any remaining issues by the end of the week.

Best regards,

Peter


Peter N. Villar
Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Tel:  949-622-2783
Fax:  949-622-2739
Email: peter.villar@troutmansanders.com


**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Friday, October 16, 2015 5:16 PM
**To:** Villar, Peter N.; Bowler, John M.
**Cc:** Petrocelli, Daniel; Biscay, Cameron H.; Henner, Lindsay Mitchell
**Subject:** Fox v. Empire Distribution

Peter and John -

I write to follow up on our meet-and-confer discussions on October 5 and 9.  I thought it would be useful to memorialize some of the more salient points, though given the length and extent of the discussions, this email does not purport to be a complete summary.  To the extent that you believe that I have inaccurately characterized anything, please let me know.

**Fox's Responses to Empire Distribution's First Set of RFPs**:

We have agreed to revise Fox's responses to the following RFPs, as specified during our conversations:  3, 6, 11, 12, 13, 16, 17, 34, 37, and 44.

With respect to Request Nos. 1 & 2, we agreed that we would propose a narrowing of these Requests based on your proffer of relevance.  Provided that this resolves the dispute, Fox will agree to provide documents prior to January 7,

2015 that relate to (1) Fox allegedly "wanting to act as a record label"; (b) the potential to derive revenue based on the sale of music; and (c) the show being allegedly based on a "real-life record label."  As these documents address all the concerns that you have raised, we are hopeful that this is a compromise that works for both parties.

With respect to Request No. 8, we confirm that Fox will produce documents sufficient to support Fox's trademarks rights in and to Empire in the United States

With respect to Request No. 14, you have indicated that you wanted to give it further thought.

With respect to Request No. 15, you have agreed to narrow the Request to any agreements between Fox and any musicians who produce, perform, or compose music for the Empire Series.  While we appreciate your willingness to narrow the Request, we are concerned that, even as narrowed, the Request is not targeted to responsive information, seeks highly confidential material, and that the burden associated with collecting these agreements outweighs any probative value that the agreements could potentially have.  That said, we are considering your proposal and will revert back.

With respect to Request No. 18, we have confirmed that Fox does not have an account with Mediabase and thus the Request is moot.

With respect to Request No. 25, you have agreed to narrow the Request to documents sufficient to show sales of products or services bearing the "Empire" mark and any marketing, sales, or business plans regarding products or services provided under the Empire mark.  We agree to this proposal.

With respect to Request No. 30, you have agreed to narrow the Request to documents sufficient to identify any products or services provided under the Empire mark.  We agree to this proposal.

With respect to the responses that we have agreed to amend, we are in the in process of finalizing our amended responses.  While we had agreed to try to exchange amended responses by today, upon further reflection, we are not sure that it makes sense to do so before we resolve the open issues on Request Nos. 1-2, 14, and 15.  Please let us know if you disagree.

It is our understanding that we have thus resolved all the issues that you took with Fox's responses, with the possible exception of Request Nos 14 and 15.

**Empire Distribution's Responses to Fox's First and Second Sets of RFPs**:

You agreed to provide amended responses, removing any qualifications and clarifying that all responsive documents identified through a reasonable search would be produced for the following Requests:  3, 4, 14, 10, 11, 18, 19, 20, 21, 22, 24, 26, 30, 34, 37, 43, 44, 46, 48, 50, 52, 54, 56, 57, 67, 69, 70, 71, 72, 73, and 74.

With respect to Request No. 5, you confirmed that you interpreted the Request as per our September 24 letter.

With respect to Request No. 16, you agreed to produce documents responsive to the narrowed Request, as reflected in our September 24 letter.  Similarly, with respect to Request No. 25, you agreed to produce documents responsive to Request as narrowed during the call (documents relating to the demographics or characteristics (including, but not limited to, race, age, gender, geographic location, and socio-economic status) of Empire Distribution's customers).  We agreed that Fox need not serve amended Requests but rather that Empire Distribution's responses would reflect the narrowed Requests.

With respect to Request Nos. 27-28, 31-34, 36-38, you confirmed that the term "non-expert" as used in these Requests was limited to non-litigation experts

With respect to Requests No. 41, 42, 45, and 55, you proposed amending your responses to specify that you will
produce documents relating to Empire Distribution's alleged injury or damages based on a reasonable search, which you
have confirmed is not intended to narrow the scope of the requested documents.  This is acceptable for Requests 41 &
45.  Please confirm that you will also remove the limitations in Request Nos. 42 & 55.

With respect to Request Nos. 58-59, you confirmed that Empire Distribution has not entered into any license
agreements for use of its alleged marks.  You, however, maintained your refusal to produce documents sufficient to
identify Empire Distribution's partners as well as produce any such agreements with these partners.  We explained that
these documents are patently relevant, given Empire Distribution's repeated allegations in its counterclaims about its
partners.  We also noted that your position directly contradicts the position that your firm took with respect to Fox's
responses.  We further explained that we needed such documents to probe Empire Distribution's allegations of fame
and popularity, as you have used these co-ventures to support such allegations.  We further noted that that Empire
Distribution's relationship to and involvement with the artists and albums cited in the counterclaims remained
unclear.  We asked whether the alleged "partnerships" were through particular artists or through other labels more
generally but you refused to answer.  You then said that it was overly burdensome to produce these documents.  In
response to this objection, we noted that the burden objection indicated that this practice might be widespread and
noted that the request was narrowly tailored in seeking only the agreements themselves.  You then cut me off and
refused to talk about the matter further.  We responded that, if you refused to participate in the meet and confer
further, we would have no choice but to move to compel and explain to the Court why.  We ask once again that you
reconsider your position and agree to produce the requested documents for all the reasons listed above.  Further, we
are entitled to see what the agreements say regarding the use of the Empire Distribution and the partners' respective
alleged trademarks and any provisions that reflect the partners' respective brand prominence.  If we do not receive
your confirmation by next Friday, we will understand that the parties are at an impasse on this issue.

With respect to Request No. 68, which requests agreements between Empire Distribution and any third party
concerning the use of an Alleged Empire Distribution Mark, you have agreed only to provide "agreements solely or
primarily concerning the use" of the alleged marks.  When we spoke on October 9, we asked you to explain the basis for
your refusal to produce these documents, noting that Empire Distribution has demanded such documents from Fox (and
Fox agreed to produce them).  However, you refused to answer our question, saying only that it was "the same
issue."  We explained that we did not understand what you meant but you refused to say anything other than "what we
just talked about."  We then tried again to encourage you to engage in the discussion, explaining that the rules require
the parties to meaningfully meet and confer.  We then asked why you contended that you were entitled to such
documents but did not need to produce them to us.  In response, you would say only "they're different issues."  We
then asked you again to explain what you meant but said that "you would not repeat anything."  We ask again that you
agree to produce the requested documents, which are patently related to damages.  If we do not receive your
agreement by next Friday, we will understand that the parties are at an impasse on this issue and move to compel
production.

**Empire Distribution's Subpoenas**

We noted our objection to Empire Distribution's approach to third-party discovery, which was served without any
attempt to reduce the burden on third parties.  We further explained that third-party discovery should be used to obtain
documents not available from the parties, as opposed to seeking cumulative discovery.  With those objections aside, we
discussed as follows:

- **Fox Music**: We explained that Fox Music plays three roles with respect to *Empire*:  (1) it handles the licensing for
the show's original music and would also handle any commercial/product integration deals, though no such
agreements exist as of yet; (2) it administers the royalties to the cast member actors who write their own music;
and (3) it handles the clearance for music on the show that Fox does not own.  You indicated that you were not
interested in the third category but that you wanted any signed contracts in the first category and documents
sufficient to show the royalties administered by Fox Music (in the aggregate).  We agree to produce any
licensing/commercial/product integration deals, even though we do not believe such agreements are relevant,

but do not understand why you are requesting the information relating to royalties.  The only proffer of relevance that you made during the call was that this was evidence that Fox Music was acting like a record label, which, leaving aside the merits of the proffer, is irrelevant as Fox Music is not a party to the litigation.  We suggest that we defer the discussion of whether you need any royalty information from Fox Music until after you have received and reviewed Fox's productions.  Otherwise, we understand that Fox Music's production of the agreements in the first category above should satisfy its obligations under the subpoena.

- **Danny Strong / Lee Daniels**:  You asked us to consider whether Danny Strong and Lee Daniels would agree to produce the same scope of documents as Fox, as revised by the parties' meet and confer discussions.  While we have continue to have serious concerns about the burdens being placed on third parties, we are considering your request and will be in a better position to consult with our clients after Fox serves its amended responses.

**Productions/Privilege Logs**

The parties agreed to find a future time to discuss the timing of productions and privilege logs.

Thanks,

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

# EXHIBIT H

## Volpe, Stephen

| | |
|---|---|
| **From:** | Villar, Peter N. <Peter.Villar@troutmansanders.com> |
| **Sent:** | Thursday, November 19, 2015 4:06 PM |
| **To:** | Lens, Molly |
| **Cc:** | Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Gale, Paul L. |
| **Subject:** | RE: Fox v. Empire Distribution |

Molly – We are willing to wait until the end of the week for your response regarding the Danny Strong and Lee Daniels subpoenas.  However, we have met and conferred extensively regarding Fox's Response to Empire Distribution's First Set of RFP's for two months and it has been 10 days since you received our last email.  Given the extent of our discussions and case deadlines, we cannot afford to wait any longer and intend to proceed with a motion to compel.  We will send you our portion of the Joint Stipulation shortly.

Regards,

Peter

**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Wednesday, November 18, 2015 11:04 AM
**To:** Gale, Paul L.; Villar, Peter N.
**Cc:** Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.
**Subject:** RE: Fox v. Empire Distribution

Paul and Peter -

In an effort to avoid motion practice, our clients are considering your proposals.  We hope to get back to you before the end of the week.

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Gale, Paul L. [mailto:Paul.Gale@troutmansanders.com]
**Sent:** Monday, November 09, 2015 6:10 PM
**To:** Villar, Peter N.
**Cc:** Lens, Molly; Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.
**Subject:** Re: Fox v. Empire Distribution

See if this works.

On Nov 5, 2015, at 6:26 PM, Villar, Peter N. <Peter.Villar@troutmansanders.com> wrote:

Molly –

This shall respond to your comments in red in your October 28 email below.

**Fox's Response to Empire Distribution's First Set of RFP's**

We have reviewed your comments and it appears that Fox has taken its final position regarding Empire's First Set of RFPs, agreeing to amend its responses in certain instances and refusing to produce any additional documents in response to others.  With respect to those document requests, we appear to have reached an impasse and there is nothing left to discuss with the exception of Request No. 18 (Mediabase), which we addressed in a prior email, and the general objections.  With regard to the general objections, you state "to the extent our general objections relate to the *scope of documents being produced*, such as the relevant time period or geographic limitation to the United States, we are withholding documents based on our general objections."  That was not our understanding from our prior discussions.  We understood that your general objections would not further limit the scope of documents being produced beyond any limit placed in your specific responses (other than the relevant time period which is the subject of our meet and confer discussions).  With regard to the relevant time period, we cannot agree to your proposal (i.e., a cutoff date of March 23, 2015 with a number of exceptions).  Beyond being overly complicated, your proposal would arbitrarily exclude documents from production even if they are admittedly relevant to the claims, issues and damages in the case.  We continue to maintain that documents should be produced at least through the date of collection while reserving the right to seek later documents if appropriate or necessary.

**Empire Distribution's Responses to Fox's First and Second Sets of RFPs**

With respect to Requests No. 41, 42, 45, and 55, Empire will amend its responses to specify that it will produce documents relating to injury or damages based on a reasonable search and sufficient to identify all persons with knowledge of Empire's injury and damages.

With respect to Request No. 58, again, Empire has already stated that it has no licensees and has otherwise agreed to produce documents sufficient to identify individuals or entities that it considers to be  "partners."  Empire maintains that products sold will be indentified at least through Request No. 8 if not others, as all Empire products are sold or offered for sale by Empire, whether or not a third party processes the transaction.  However, to the extent that Fox is concerned that some Empire products will not be identified through documents produced in response to other requests, Empire will amend its response to state that it will produce documents sufficient to identify its partners and products distributed, sold, or offered to the public by each partner.

With respect to Request No. 59, Empire maintains that its agreements are not necessary to evaluate Empire's reputation, and Fox's implications that Empire falsely claims to have business relationships with particular artists can be explored through other avenues of discovery.  However, in Fox's response to Empire's Request No. 15, you refer us to Empire's position on its own agreements in the context of this request.  Without conceding the relevance of these agreements to Fox's case, in the spirit of compromise, Empire would be willing to produce its agreements if Fox will produce all of its agreements in response to Empire Request No. 15.  If Fox agrees to this proposal, the parties can, without waiving objections, amend their respective responses to reflect this compromise.

With respect to Request No. 68, Empire again confirms that it does not enter into license agreements for use of its marks and, as previously agreed, will amend its response to reflect this fact.  Fox's agreement to narrow this request to "seek simply the responsive agreements and contracts themselves" is appreciated.  Empire's agreements that may concern the use of Empire's marks, if any exist,  would be produced in response to Request No. 59 in the event Fox similarly consents

to produce its agreements.  If Fox agrees to this proposal, the parties can, without waiving objections, amend their respective responses to reflect this compromise.

**Danny Strong and Lee Daniels Subpoenas**

We have reviewed your October 30 email and strongly disagree with your objections to these subpoenas.  Mr. Strong and Mr. Daniels created and produce the *Empire* series that we contend infringed and continues to infringe Empire's trademark rights, and they are refusing to produce numerous categories of documents that are highly relevant to the claims at issue in this case.  One of your primary objections appears to be "the overlapping nature of the requests" in that you claim Messrs. Strong and Daniels must produce "many of the same documents that will be produced by Fox."  As discussed, we believe that Messrs. Strong and Daniels would possess many relevant documents that are not in the possession of Fox.  However, in an effort to minimize any potential duplication of productions without prejudicing our ability to obtain relevant documents that may not be in Fox's possession, we are willing to offer the following compromise.  Messrs. Strong and Daniels would amend their responses:

(1)   As proposed in your October 30 email; and
(2)   To Request Nos. 1 and 2 to include the following categories:  (1) all communications regarding the creation or development of the Empire series by, between or among Lee Daniels, Danny Strong, or the executive producers Brian Grazer (Imagine Entertainment), Francie Calfo (Imagine Entertainment) or Ilene Chaiken (Little Chicken Productions) from the date the show was first conceived through the time the show was pitched to Fox; (2) any treatments, synopses, outlines or other "pitch" materials provided to Fox regarding the creation or development of the show; (3) any communications/documents discussing the fictional "Empire" record label and any potential relation to/inspiration from real life individuals, artists, musicians, events, companies or record labels, or any intent to portray a real life record label; (4) any communications/documents regarding the use, production, or sale of music in connection with the Empire series (including but not limited to the use of real musicians/artists/composers in connection with the series); (5)  all documents/communications relating to the origin/use of the name "Empire" for the show; and (6) any communications/documents regarding the target audience/markets for the Empire series or music.

We hope your clients can appreciate our efforts to substantially limit the scope of the subpoenas.  However, if they are unwilling to agree to the reasonable compromise, we reserve our right to seek all responsive documents pursuant to the subpoenas.

Regards,

Peter

Peter N. Villar
Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Tel:  949-622-2783
Fax:  949-622-2739
Email: peter.villar@troutmansanders.com

**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Wednesday, October 28, 2015 2:47 PM
**To:** Villar, Peter N.
**Cc:** Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.
**Subject:** RE: Fox v. Empire Distribution

Peter -

Please see my responses interlineated in red below.

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Lens, Molly
**Sent:** Monday, October 26, 2015 8:45 PM
**To:** 'Villar, Peter N.'
**Subject:** RE: Fox v. Empire Distribution

Peter -

We are in the process of preparing a response to your email from last Wednesday.  Please also let us know where we stand on Fox's Request 58.

Thanks,

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Monday, October 26, 2015 2:31 PM
**To:** Lens, Molly
**Subject:** RE: Fox v. Empire Distribution

Molly, let me know when you're available to complete our discussions on these remaining issues.  Thanks.

-   Peter

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Wednesday, October 21, 2015 9:59 AM
**To:** Lens, Molly
**Cc:** Petrocelli, Daniel; Biscay, Cameron H.; Henner, Lindsay Mitchell; Bowler, John M.
**Subject:** RE: Fox v. Empire Distribution

Molly –

Thank you for your summary of our meet and confer discussions.  While it is mostly consistent with our understanding, we do have several comments and points of clarification.

### Fox's Response to Empire Distribution's First Set of RFP's

Request Nos. 3, 6, 11, 12, 13, 16, 17, 34, 37, and 44:  We agree that Fox has agreed to amend these responses as discussed during our meet and confer conferences (namely by removing the limitations stated in your responses).  While we have agreed to amend these responses, as we have repeatedly stated, we do so preserving all objections.

Request Nos. 1 & 2:  We cannot agree to your proposed change as it unreasonably limits the scope of the requests, and the proposed subcategories are too vague, ambiguous and subject to the discretion of Fox.  While we believe the requests are appropriate as crafted, we would be willing to significantly narrow the scope of the requests to include the following categories within the limited timeframe set forth in the requests:  (1) the initial series of communications with Fox (both internal and external) regarding the potential creation/development of the television show that became "Empire" "The initial series of communications" is vague, ambiguous, and impossible to discern, and the topic of "the potential creation/development" of the show is as broad as the initial request.  Even more fundamentally, you have not been able to articulate why the creative and development documents that you seek are relevant.  Quite the opposite, with respect to each proffer of relevance, we have demonstrated that Empire Distribution will be receiving the desired documents through a separate request.  For these reasons, and in light of the burden imposed, Fox will not agree to produce these documents.  (2) any treatments, synopses, outlines or other "pitch" materials provided to Fox regarding the creation or development of the show from the creators Lee Daniels or Danny Strong or the executive producers Brian Grazer (Imagine Entertainment), Francie Calfo (Imagine Entertainment) or Ilene Chaiken (Little Chicken Productions); You have not justified your purported need for these creative materials other than to say they are relevant to Fox's First Amendment defense.  The Court need look no further than the show itself, however, to find the minimal artistic relevance required to support Fox's First Amendment defense.  As noted above, absent an adequate proffer of relevance, Fox will not agree to undertake the burden to search through more than a year's worth of creative and developmental documents to identify and produce these documents.  (3) any communications/documents discussing the fictional "Empire" record label and any potential relation to/inspiration from real life individuals, artists, musicians, events, companies or record labels, or any intent to portray a real life record label; Fox will revise its responses to produce any such non-privileged documents identified through a reasonable search.  (4) any communications/documents regarding the use, production, or sale of music in connection with the Empire series (including but not limited to the use of real musicians/artists/composers in connection with the series); Fox will revise its responses to produce any non-privileged documents regarding the sale of music in connection with *Empire* to generate money identified through a reasonable search.  (5)  all documents/communications relating to the origin/use of the name "Empire" for the show; Fox has already agreed to produce these documents in response to Request No. 3. and (6) any communications/documents regarding the target audience/markets for the Empire series or music.  Fox has already agreed to produce documents regarding the actual viewers of the show and consumers of the music.  Why do you contend that information regarding the target audience/markets is relevant?

Request No. 8:  Based on my notes, we agreed that Fox would produce all documents relating to Fox's alleged trademark rights in and to the television show Empire and the music therefrom in the United States.  We cannot

agree to narrow this request to documents "sufficient to show" Fox's alleged trademark rights given the allegations and claims at issue in the case.  We never agreed to produce all documents relating to Fox's trademark rights in *Empire* and *Empire* series music.  Fox's trademarks are not at issue in this case.

Request No. 14:  We have given this further thought and would be willing to significantly narrow the scope of the request in the same manner as Request Nos. 1 and 2.  Please see our above response to 1 and 2.

Request No. 15:  We stand by our proposal which we believe substantially narrows the scope of the request and alleviates any conceivable burden on Fox.  We cannot agree to your proposal.  We do not think that document discovery of highly confidential and sensitive documents is the appropriate way to explore Fox's use of "real musicians" on Empire, which is the only reason you have advanced to support your purported need for these documents.  To the extent your clients seek to establish that Fox uses established musicians as guest stars on the show, they can serve requests for admission on this topic that would more efficiently get at this information.  And, as to your comment regarding burden, we suggest that you review your team's position on Fox's Request 59.

Request No. 18:  To be clear, is it your representation that there is no account/agreement with Mediabase relating to the Empire series music, or that the account/agreement is not in the name of Fox?  We expect that Fox will amend its response to confirm it has no communications/documents responsive to this request.  Fox will agree to amend its responses to state that it has no documents responsive to this request.

Request No. 25:  To be clear, we understood our agreement to include all sales/marketing/business plans regarding products or services provided in connection with the "Empire" mark, and documents sufficient to show sales of products or services bearing the "Empire" mark.  Please explain how the above differs from my summary.

Request No. 30:  Your summary with regard to this request is correct.

In addition, we want to confirm that you will not be withholding documents based on your General Objections and that you will not be limiting your production to documents before "Empire Distribution sent its initial objection to Fox in February 2014" as stated in paragraph 6 of your General Objections.  As discussed, the documents should be produced at least through the date of your collection.  As we told you on October 5, to the extent our general objections relate to the scope of documents being produced, such as the relevant time period or geographic limitation to the United States, we are withholding documents based on our general objections.  With respect to the relevant time period, we were surprised to see this addressed in your email, since you never responded to our request that you identify which documents you needed beyond our February 2015 cutoff date, nor did you address this in our October 9 call.  As a compromise, however, we propose extending our cutoff date to the date the complaint was filed, March 23, 2015, with the additional agreement to provide the following documents up to the date of collection:
- Exemplars of advertisements, promotions, or marketing efforts using the "Empire" logo
- Executed agreements between Fox and anyone else primarily or solely relating to the use of the "Empire" mark/logo
- Documents sufficient to identify goods or services offered or sold in connection with the "Empire" mark
- Documents sufficient to show the channels of trade or distribution through which Fox has sold or offered for sale or currently sells any goods or services identified by the "Empire" mark
- Documents sufficient to show geographical areas in which Fox has sold or offered for sale goods or services under the "Empire" mark
- Documents sufficient to show Fox's revenues, expenses, and profits relating to goods and services sold or offered for sale with the "Empire" mark
- Documents sufficient to show the total volume of sales for all goods and services sold with the "Empire" mark

- Documents sufficient to show the amount spent by Fox each year to advertise, market, and promote goods and services with the "Empire" mark
- Documents sufficient to identify each entity or individual authorized to sell, distribute, promote, advertise, or market any goods or services identified by Fox's "Empire" mark
- Documents relating to any instance in which any person or entity made any statement, comment, inquiry, or question regarding any actual or potential association, affiliation, connection, correlation, relation, or sponsorship between the Empire series and/or Empire series music, on the one hand, and Empire Distribution, on the other hand
- Communications by or from Fox, Fox's customers or other persons, expressing any actual or potential confusion, association, affiliation, connection, correlation, relation, or sponsorship, or lack thereof, between Fox and Empire Distribution and their respective goods or services
- Documents Fox is required to produce under Rule 26 and the Court's Scheduling Order

To the extent you believe you need any additional documents up to the date of collection, please identify those documents so that Fox can consider your request.  As we have repeatedly noted, however, we remind you that Empire Distribution's existing requests have already imposed an incredible burden on Fox and thus ask that you carefully consider your true need for any additional documents.

**Empire Distribution's Responses to Fox's First and Second Sets of RFPs**:

Empire has agreed to provide amended clarifying responses, preserving all objections, stating that Empire will produce responsive documents identified through a reasonable search for Requests 3, 4, 14, 10, 11, 18, 19, 20, 21, 22, 24, 26, 30, 34, 37, 43, 44, 46, 48, 50, 52, 54, 56, 57, 67, 69, 70, 71, 72, 73, and 74.  Agreed.

With respect to Request No. 5, Empire confirmed that, subject to its objections, it will produce documents in its possession, custody, or control relating to disputes concerning the Empire Distribution marks whether or not those disputes matured into a litigation, proceeding, or arbitration.  Agreed.

With respect to Request No. 16, Empire will amend its response to reflect the narrowed request in Fox's September 24 letter.  Agreed.

With respect to Request No. 25, Empire will amend its response to reflect the narrowed request of documents relating to ages, incomes, education levels, demographics, or other characteristics of Empire Distribution's customers.  Agreed.

With respect to Request Nos. 27-28, 31-34, 36-38, Empire confirmed that the term "non-expert" as used in these Requests was limited to non-litigation experts.  Agreed.

With respect to Requests No. 41, 42, 45, and 55, Empire will amend its responses to specify that it will produce documents relating to injury or damages based on a reasonable search, and is not limiting the scope of its production.  Request Nos. 42 and 55 seek documents sufficient to identify all persons with knowledge of Empire Distribution's alleged injury or damages.  Please confirm Empire Distribution will amend its responses accordingly.

With respect to Request No. 58, Empire is considering your arguments.  However, Empire has already stated that it has no licensees, has otherwise agreed to produce documents sufficient to identify individuals or entities that it considers to be a "partner," and products sold will be indentified at least through Request No. 8 if not others. We reiterate our request, renewed earlier this week, that you confirm that you will amend Empire Distribution's responses to provide these documents.  Contrary to your statement above, the products sold will not be identified through Request No. 8, as that request seeks documents sufficient to identify products offered for sale by YOU (as defined in the Requests), while Request No. 58 seeks documents sufficient to identify

products distributed, sold, or offered to the public <u>by each licensee or partner</u>.  These documents are patently
relevant to this action, as paragraphs 11-13 of the counterclaim reference specific products sold by Empire
Distribution's alleged partners to support Empire Distribution's claim that it "is a well-known music record
label and music distribution company." Moreover, this request is narrowly-tailored, seeking only "documents
sufficient to identify" such products, so any claims of burden lack merit.  We also ask for a response to our
October 22 email so that we can evaluate your representation as to licensees.

With respect to Request No. 59, Empire confirmed that it does not enter into license agreements for use of its
marks.  Fox has not proffered the relevance of each and every contract and agreement between Empire and each
and every individual or entity with whom Empire conducts business.  Fox asserted a thin argument that these
documents were necessary to evaluate Empire's reputation, and implied that Empire falsely claims to have
business relationships with particular artists.  We explained, in detail, that Empire's agreements were not
necessary for Fox to probe Empire's reputation or the mere existence of business relationships with various
individuals.  We further explained that the production of each and every agreement was in no way necessary to
support Fox's claims or defenses in this case.  Empire maintains its objections to this request.  You have
misstated the scope of the request as well as the parties' prior discussions.  For example, your claim that you
"explained, in detail" why your client is refusing to produce these documents is not accurate.  During the
October 9 meet and confer, other than what's recounted in our October 16 email, you refused to discuss this
request with us.  As to the scope, this request does not seek every agreement between Empire Distribution and
any third party.  Rather, it only seeks the agreements between Empire Distribution and its partners, as the term
is repeatedly used in the counterclaim.  Far from being "thin," Fox's argument that these agreements are
necessary to evaluate Empire Distribution's reputation stems directly from the counterclaim, as Empire
Distribution cites its alleged partnerships with various artists and record companies in paragraphs 10-13 of the
counterclaim in support of its claim that it "has had numerous Billboard charting releases from well-recognized
artists" and "has built relationships across the music industry to successfully record, promote, and distribute
platinum and gold-certified records."  These agreements are also relevant to any attempts that Empire
Distribution may have made to protect its alleged marks.  Further, in addition to probing Empire Distribution's
allegations of fame and Empire Distribution's relationships with certain artists, Fox is entitled to see what the
agreements say regarding the use of Empire Distribution and the partners' respective alleged trademarks and
any provisions that reflect the partners' brand prominence.  Notwithstanding the clear discoverability of the
requested agreements, we understand the parties are at an impasse on this request and thus will have no choice
but to move to compel.  Please also be advised that Fox intends to explore obtaining these agreements directly
from Empire Distribution's partners.

With respect to Request No. 68, Empire again confirmed that it does not enter into license agreements for use of
its marks.  Thus, upon a fair reading of the request, Request No. 68 is moot.  To the extent that this request
seeks agreements outside of license agreements, Fox has not proffered the relevance of each and every
agreement between Empire and each and every individual or entity with whom Empire conducts business, let
alone each and every document referring to or relating to those agreements.   Fox asserted the identical
argument that these documents were necessary to evaluate Empire's reputation, and implied that Empire falsely
claims to have business relationships with particular artists.  We identified that Request No. 68 is virtually
identical to Request No. 59.  In fact, Request No. 68 is even more broad and burdensome in calling for *every
document related* to any agreements.  During the parties' three-hour meet and confer, we had previously
explained in detail with respect to earlier requests that Empire's agreements were not necessary for Fox to probe
Empire's reputation or the mere existence of business relationships with various individuals, and further
explained that the production of each and every agreement was in no way necessary to support Fox's claims or
defenses in this case.  Empire maintains its objections to this request.  Again your attempt to sanitize the meet-
and-confer record is not well taken.  We note that you do not dispute the accuracy of our summary but rather
simply are trying to provide a "gloss" on it.  And, again, you have inaccurately characterized the Request in an
attempt to justify your refusal.  The Request does not seek every agreement between Empire Distribution and
every individual or entity with whom it conducts business, but rather seeks documents relating to agreements

concerning the use of Empire Distribution's alleged marks.  To the extent you claim that no such agreements exist, please amend your response accordingly.  To the extent you claim such agreements do exist, without prejudice to our right to seek additional documents at a subsequent date, we propose narrowing the request to seek simply the responsive agreements and contracts themselves.  Please confirm by the end of this week whether this works for you.  Otherwise, we will include this Request in our forthcoming motion to compel.

**Empire Distribution's Subpoenas:**

    **Fox Music**:  Based on your representations, we are willing to agree to your proposal at this time without prejudice to our right to revisit any categories as we obtain additional information.  Agreed.

    **Danny Strong / Lee Daniels**:  As discussed, Mr. Strong and Mr. Daniels are key witnesses and likely possess highly relevant documents (many of which would likely not be in the possession, custody or control of Fox).  We are willing to give you additional time to consult with them through the end of the week, but if they are not willing to produce documents under the compromise proposal, we reserve our right to seek all responsive documents in connection with a motion to compel.  We will address these subpoenas in separate email(s).

**Productions/Privilege Logs:**

We agree with your summary regarding the exchange of privilege logs.

Let's aim to complete our meet and confer discussions on any remaining issues by the end of the week.

Best regards,

Peter


Peter N. Villar
Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Tel:  949-622-2783
Fax:  949-622-2739
Email: peter.villar@troutmansanders.com


**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Friday, October 16, 2015 5:16 PM
**To:** Villar, Peter N.; Bowler, John M.
**Cc:** Petrocelli, Daniel; Biscay, Cameron H.; Henner, Lindsay Mitchell
**Subject:** Fox v. Empire Distribution

Peter and John -

I write to follow up on our meet-and-confer discussions on October 5 and 9.  I thought it would be useful to memorialize some of the more salient points, though given the length and extent of the discussions, this email does not purport to be a complete summary.  To the extent that you believe that I have inaccurately characterized anything, please let me know.

**Fox's Responses to Empire Distribution's First Set of RFPs**:

We have agreed to revise Fox's responses to the following RFPs, as specified during our conversations:  3, 6, 11, 12, 13, 16, 17, 34, 37, and 44.

With respect to Request Nos. 1 & 2, we agreed that we would propose a narrowing of these Requests based on your proffer of relevance.  Provided that this resolves the dispute, Fox will agree to provide documents prior to January 7, 2015 that relate to (1) Fox allegedly "wanting to act as a record label"; (b) the potential to derive revenue based on the sale of music; and (c) the show being allegedly based on a "real-life record label."  As these documents address all the concerns that you have raised, we are hopeful that this is a compromise that works for both parties.

With respect to Request No. 8, we confirm that Fox will produce documents sufficient to support Fox's trademarks rights in and to Empire in the United States

With respect to Request No. 14, you have indicated that you wanted to give it further thought.

With respect to Request No. 15, you have agreed to narrow the Request to any agreements between Fox and any musicians who produce, perform, or compose music for the Empire Series.  While we appreciate your willingness to narrow the Request, we are concerned that, even as narrowed, the Request is not targeted to responsive information, seeks highly confidential material, and that the burden associated with collecting these agreements outweighs any probative value that the agreements could potentially have.  That said, we are considering your proposal and will revert back.

With respect to Request No. 18, we have confirmed that Fox does not have an account with Mediabase and thus the Request is moot.

With respect to Request No. 25, you have agreed to narrow the Request to documents sufficient to show sales of products or services bearing the "Empire" mark and any marketing, sales, or business plans regarding products or services provided under the Empire mark.  We agree to this proposal.

With respect to Request No. 30, you have agreed to narrow the Request to documents sufficient to identify any products or services provided under the Empire mark.  We agree to this proposal.

With respect to the responses that we have agreed to amend, we are in the in process of finalizing our amended responses.  While we had agreed to try to exchange amended responses by today, upon further reflection, we are not sure that it makes sense to do so before we resolve the open issues on Request Nos. 1-2, 14, and 15.  Please let us know if you disagree.

It is our understanding that we have thus resolved all the issues that you took with Fox's responses, with the possible exception of Request Nos 14 and 15.

**Empire Distribution's Responses to Fox's First and Second Sets of RFPs**:

You agreed to provide amended responses, removing any qualifications and clarifying that all responsive documents identified through a reasonable search would be produced for the following Requests:  3, 4, 14, 10, 11, 18, 19, 20, 21, 22, 24, 26, 30, 34, 37, 43, 44, 46, 48, 50, 52, 54, 56, 57, 67, 69, 70, 71, 72, 73, and 74.

With respect to Request No. 5, you confirmed that you interpreted the Request as per our September 24 letter.

With respect to Request No. 16, you agreed to produce documents responsive to the narrowed Request, as reflected in our September 24 letter.  Similarly, with respect to Request No. 25, you agreed to produce documents responsive to Request as narrowed during the call (documents relating to the demographics or characteristics (including, but not

limited to, race, age, gender, geographic location, and socio-economic status) of Empire Distribution's customers).  We agreed that Fox need not serve amended Requests but rather that Empire Distribution's responses would reflect the narrowed Requests.

With respect to Request Nos. 27-28, 31-34, 36-38, you confirmed that the term "non-expert" as used in these Requests was limited to non-litigation experts

With respect to Requests No. 41, 42, 45, and 55, you proposed amending your responses to specify that you will produce documents relating to Empire Distribution's alleged injury or damages based on a reasonable search, which you have confirmed is not intended to narrow the scope of the requested documents.  This is acceptable for Requests 41 & 45.  Please confirm that you will also remove the limitations in Request Nos. 42 & 55.

With respect to Request Nos. 58-59, you confirmed that Empire Distribution has not entered into any license agreements for use of its alleged marks.  You, however, maintained your refusal to produce documents sufficient to identify Empire Distribution's partners as well as produce any such agreements with these partners.  We explained that these documents are patently relevant, given Empire Distribution's repeated allegations in its counterclaims about its partners.  We also noted that your position directly contradicts the position that your firm took with respect to Fox's responses.   We further explained that we needed such documents to probe Empire Distribution's allegations of fame and popularity, as you have used these co-ventures to support such allegations.  We further noted that that Empire Distribution's relationship to and involvement with the artists and albums cited in the counterclaims remained unclear.  We asked whether the alleged "partnerships" were through particular artists or through other labels more generally but you refused to answer.  You then said that it was overly burdensome to produce these documents.  In response to this objection, we noted that the burden objection indicated that this practice might be widespread and noted that the request was narrowly tailored in seeking only the agreements themselves.  You then cut me off and refused to talk about the matter further.  We responded that, if you refused to participate in the meet and confer further, we would have no choice but to move to compel and explain to the Court why.  We ask once again that you reconsider your position and agree to produce the requested documents for all the reasons listed above.  Further, we are entitled to see what the agreements say regarding the use of the Empire Distribution and the partners' respective alleged trademarks and any provisions that reflect the partners' respective brand prominence.   If we do not receive your confirmation by next Friday, we will understand that the parties are at an impasse on this issue.

With respect to Request No. 68, which requests agreements between Empire Distribution and any third party concerning the use of an Alleged Empire Distribution Mark, you have agreed only to provide "agreements solely or primarily concerning the use" of the alleged marks.  When we spoke on October 9, we asked you to explain the basis for your refusal to produce these documents, noting that Empire Distribution has demanded such documents from Fox (and Fox agreed to produce them).  However, you refused to answer our question, saying only that it was "the same issue."  We explained that we did not understand what you meant but you refused to say anything other than "what we just talked about."  We then tried again to encourage you to engage in the discussion, explaining that the rules require the parties to meaningfully meet and confer.  We then asked why you contended that you were entitled to such documents but did not need to produce them to us.  In response, you would say only "they're different issues."  We then asked you again to explain what you meant but said that "you would not repeat anything."  We ask again that you agree to produce the requested documents, which are patently related to damages.  If we do not receive your agreement by next Friday, we will understand that the parties are at an impasse on this issue and move to compel production.

**Empire Distribution's Subpoenas**

We noted our objection to Empire Distribution's approach to third-party discovery, which was served without any attempt to reduce the burden on third parties.  We further explained that third-party discovery should be used to obtain documents not available from the parties, as opposed to seeking cumulative discovery.  With those objections aside, we discussed as follows:

- **Fox Music**:  We explained that Fox Music plays three roles with respect to *Empire*:  (1) it handles the licensing for the show's original music and would also handle any commercial/product integration deals, though no such agreements exist as of yet; (2) it administers the royalties to the cast member actors who write their own music; and (3) it handles the clearance for music on the show that Fox does not own.  You indicated that you were not interested in the third category but that you wanted any signed contracts in the first category and documents sufficient to show the royalties administered by Fox Music (in the aggregate).  We agree to produce any licensing/commercial/product integration deals, even though we do not believe such agreements are relevant, but do not understand why you are requesting the information relating to royalties.  The only proffer of relevance that you made during the call was that this was evidence that Fox Music was acting like a record label, which, leaving aside the merits of the proffer, is irrelevant as Fox Music is not a party to the litigation.  We suggest that we defer the discussion of whether you need any royalty information from Fox Music until after you have received and reviewed Fox's productions.  Otherwise, we understand that Fox Music's production of the agreements in the first category above should satisfy its obligations under the subpoena.

- **Danny Strong / Lee Daniels**:  You asked us to consider whether Danny Strong and Lee Daniels would agree to produce the same scope of documents as Fox, as revised by the parties' meet and confer discussions.  While we have continue to have serious concerns about the burdens being placed on third parties, we are considering your request and will be in a better position to consult with our clients after Fox serves its amended responses.

**Productions/Privilege Logs**

The parties agreed to find a future time to discuss the timing of productions and privilege logs.

Thanks,

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

# EXHIBIT I

**Volpe, Stephen**

---

| | |
|---|---|
| **From:** | Lens, Molly |
| **Sent:** | Wednesday, November 25, 2015 2:15 PM |
| **To:** | Villar, Peter N. |
| **Cc:** | Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy |
| **Subject:** | RE: Fox v. Empire |

Peter -

While I appreciate hearing from you, if we do not receive confirmation within the hour that we have agreement, I cannot guarantee that the proposal will remain open.

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Wednesday, November 25, 2015 2:04 PM
**To:** Lens, Molly
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
**Subject:** RE: Fox v. Empire

Molly, we forwarded your proposal to our client and are still waiting for confirmation.  As with your clients, our client is extremely busy especially with the long holiday break beginning.  We remain hopeful that we can reach an agreement and avoid motion practice.  We will let you know as soon as we hear back.

-    Peter

Peter N. Villar
Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Tel:  949-622-2783
Fax:  949-622-2739
Email: peter.villar@troutmansanders.com

**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Wednesday, November 25, 2015 12:27 PM
**To:** Villar, Peter N.
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
**Subject:** RE: Fox v. Empire

Peter -

We need an answer from you.

Molly

_____
**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

_____

**From:** Lens, Molly
**Sent:** Tuesday, November 24, 2015 8:56 PM
**To:** Villar, Peter N.
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
**Subject:** RE: Fox v. Empire

Thanks, Peter.  As to the third-party subpoenas, Empire Distribution made its compromise proposal for the first time on November 9.  We are close to sending you Messrs. Strong's and Daniel's response but I too am waiting client approval.  I am sure that you can understand that these third parties have incredibly demanding schedules.  We are doing everything we can to respond either later tonight or, failing that, tomorrow.

_____
**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Tuesday, November 24, 2015 8:13 PM
**To:** Lens, Molly
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
**Subject:** Re: Fox v. Empire

Molly, as you may expect we need to confirm with our client including regarding the proposed production date.   While we have attempted to meet your two hour deadline we may not know until tomorrow.  Your request for the professional courtesy of a response within hours is ironic given that we have been waiting for many weeks for a response from you regarding the Daniels/Strong subpoenas and you have ignored my requests repeatedly.  We would appreciate the courtesy of a response to our last proposal tonight or we will have no choice but to file a motion to compel.  Thank you.
- Peter


On Nov 24, 2015, at 7:46 PM, Lens, Molly <mlens@omm.com> wrote:

> Peter (and Paul, John and Lindsay) -
>
> We have agreed to what you proposed in your November 23 email, with the addition that the parties agree to produce these documents by December 9, which, of course, is consistent with your complaints that Fox has not produced any documents.  We await your confirmation that the parties are in agreement.   Absent confirmation, we are left finalizing a joint stipulation to be served tomorrow which is, in all likelihood, moot.  The professional courtesy of a response this evening would be appreciated.
>
> Molly
>
> _____
>
> **Molly M. Lens**
> **O'Melveny & Myers LLP**
> 1999 Avenue of the Stars
> Los Angeles, CA 90067
> Phone: (310) 246-8593
> Fax: (310) 246-6779
> mlens@omm.com
>
> *This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

> **From:** Lens, Molly
> **Sent:** Tuesday, November 24, 2015 4:45 PM
> **To:** Villar, Peter N.
> **Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
> **Subject:** RE: Fox v. Empire
>
> Peter -
>
> Here's our final attempt to resolve the parties' disagreement with respect to Fox's Requests No. 59 and 68 and Empire Distribution's Request No. 15.

Fox will produce any responsive, non-privileged agreements with musicians who perform, produce, or compose music for the *Empire* series regarding the production, promotion, advertisement, sale, license, distribution, or release of the *Empire* Series Music provided that, as per your November 23 email, Empire Distribution agrees to produce all agreements responsive to Requests No. 59 & 68, which would include, for the avoidance of doubt, the agreements with Empire's "partners," as used throughout the counterclaims.  *See, e.g.*, Dkt. 16 ¶ 10, 11, 13, 14, & 20.  Further, the parties need to agree to exchange such documents no later than December 8.

Please confirm by 7:00 pm that we have reached agreement and that you will accordingly withdraw Section E of your joint stipulation.

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Tuesday, November 24, 2015 10:09 AM
**To:** Lens, Molly
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
**Subject:** RE: Fox v. Empire

Molly, we cannot agree to exclude Fox's agreements with those who compose the Empire series music.  We believe that the agreements with the composers are just as relevant as the producers and performers to determine, among other things, who writes the Empire series music (original songs, scores, etc.), who has publishing rights and other IP rights to the music, whether there are licensing fees or royalties paid to the songwriters, etc.

-   Peter

---

**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Monday, November 23, 2015 8:12 PM
**To:** Villar, Peter N.
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
**Subject:** RE: Fox v. Empire

Peter -

I would have to speak to Fox about whether they would agree to this but could we agree that Request No. 15 would be limited to musicians who have performed or produced music for the show?  Even under your proffers of relevance, I do not see the relevance of any composers.

As to the date, see F.R.C.P. 6(a)(6)(c).

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Monday, November 23, 2015 7:21 PM
**To:** Lens, Molly
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
**Subject:** Re: Fox v. Empire

Molly – Your comments regarding our alleged ulterior motive for serving the joint stipulation, after meeting and conferring on the subjects for more than two months, are off base. In response to the issues raised in your email below, we will not agree to Fox's "modification" of our proposal limiting its production to only those agreements for the specific individuals listed in Request No. 15. Those individuals are only some of the musicians who we believe have entered into contracts with Fox to produce, perform or compose music for the Empire series and your response seems to confirm there are others. The production of only some of the agreements and withholding of others does not "satisfy" the concerns raised in our portion of the joint stipulation. We have already significantly narrowed the scope of the Request. If you are willing to produce all such agreements (as we have proposed producing in response to your Requests) we would withdraw this issue from our motion. With respect to the timing of your response, please let us know the basis of your contention that it is due on Monday, November 30 per the applicable rules. Finally, we are still waiting on your response to our proposal regarding the subpoenas to Mr. Daniels and Mr. Strong. Please let us know by tomorrow morning.

Regards,

Peter

On Nov 23, 2015, at 6:17 PM, Lens, Molly <mlens@omm.com> wrote:

Peter, John, Paul, and Lindsey -

Please let us know if we have reached agreement with respect to Fox's Requests Nos. 59 and 68 and Empire Distribution's Request No. 15.  Given the pending joint stipulation, the upcoming holiday, and its effect on whether Fox will be serving Empire Distribution with a joint stipulation on Wednesday, we would appreciate a response this evening.

Thanks,

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

**From:** Lens, Molly
**Sent:** Friday, November 20, 2015 6:51 PM
**To:** Villar, Peter N.
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy
**Subject:** RE: Fox v. Empire

Peter -

We are in receipt of the attached joint stipulation.

As you know, it is our position that the joint stipulation was served prematurely, presumably in an attempt to gain some sort of leverage before today's mediation.  That said, we write to address two issues.

First, in your email of November 9, you stated that Empire Distribution would agree to produce agreements responsive to Request Nos. 59 and 68 (which would include its agreements with Republic Records, Atlantic, and eOne) provided that Fox agree to produce agreements responsive to Request No. 15.  Fox is amenable to this compromise, with one modification, namely that Fox will agree to produce only the agreements for the individuals listed in Request No. 15.  The production of these agreements satisfies the concerns in your portion of the joint stipulation.  Given the pending joint stipulation, we ask that you confirm that we have agreement on this issue and that you will thus be withdrawing this portion of the joint stipulation by close of business on Monday.  To the extent that you do not agree, please be advised that we intend to serve you with a joint stipulation on Requests No. 59 and 68 on Wednesday, which will be noticed for hearing on December 29.  And, for efficiency purposes, we would ask that you agree to a consolidated hearing on this day.

Second, while the email below states that our response is due in seven days, per the applicable rules, we will provide you with our opposition on Monday, November 30.

Thanks,

Molly

_____

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

**From:** Lybarger, Felisa H [mailto:Felisa.Lybarger@troutmansanders.com]
**Sent:** Thursday, November 19, 2015 4:27 PM
**To:** Biscay, Cameron H.; Petrocelli, Daniel; Ehlers, J. Hardy; Lens, Molly
**Cc:** Gale, Paul L.; Villar, Peter N.; Bowler, John M.; Henner, Lindsay Mitchell
**Subject:** Fox v. Empire

Dear Counsel:

Pursuant to L.R. 37-2, please find the Joint Stipulation Re: Empire Distribution, Inc.'s Motion to Compel Production of Documents, including Empire's portion and exhibits.  Please return Fox's portion of the Joint Stipulation to us within seven days in accordance with the Rule.

Thank you,

Felisa H. Lybarger | Legal Secretary | Troutman Sanders LLP | 5 Park Plaza, Suite 1400, Irvine CA 92614 | direct: 949 622 2750

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

# EXHIBIT J

## Volpe, Stephen

| | |
|---|---|
| **From:** | Villar, Peter N. <Peter.Villar@troutmansanders.com> |
| **Sent:** | Monday, November 30, 2015 5:14 PM |
| **To:** | Lens, Molly |
| **Cc:** | Bowler, John M.; Gale, Paul L.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H. |
| **Subject:** | Empire |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Molly:  I write to follow up on various outstanding issues that we have been discussing over the past few weeks:

First, with respect to the parties' document productions, we are prepared to exchange documents on December 3, as proposed in your November 18 email.  We cannot confirm that we will be able to "complete" our production by that date but expect to be producing a substantial volume of documents by that date.  We hope to also exchange privilege logs on or about that date, but before we do so we need to further discuss your position regarding the content of the logs since you indicated you did not agree to our November 4 counterproposal.

Second,  we have spoken to our client and are willing to agree to your proposal set forth in your November 24 email regarding production of documents responsive to Fox's Requests No. 59 and 68 and Empire Distribution's Request No. 15.  We are able to exchange such documents by December 9 as you proposed.  We assume our agreement moots your and our Joint Stipulations on these issues.

Third, we are willing to agree to your proposal regarding Messrs. Daniels and Strong subpoena responses as set forth in your November 25 email.  I believe that resolves those issues.

Fourth, with respect to your contemplated summary judgment motions, we do not agree to the proposed briefing schedule set forth in your November 25 email (i.e., that you file your motions on December 22, we file our opposition briefs by January 6, and you file your replies by January 15).  We do not believe that 14 days in between the Christmas and New Year's holidays is fair or reasonable to respond to multiple motions for summary judgment.  We would be willing to agree to the same schedule (we file oppositions on January 6 and you reply on January 15) provided you file your motions by December 7.  While that still would be a tight schedule under the above circumstances, it would at least give us 30 days (including weekends and holidays) to respond to your motions.  (Since it would not resolve the discovery issues, we would of course reserve our right to raise arguments under Rule 56(d)).  As discussed, if we can agree on a continuance of the case deadlines (including a summary judgment briefing schedule) we can likely avoid the scheduling issues.  I have a very busy schedule this week but can make some time tomorrow morning around 10 a.m. (in addition to the other dates/times previously mentioned) to discuss a joint stipulation to continue the case deadlines if that works for you.

Regards,

Peter


Peter N. Villar
Troutman Sanders LLP

5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Tel:  949-622-2783
Fax:  949-622-2739
Email: peter.villar@troutmansanders.com

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

# EXHIBIT K

**Volpe, Stephen**

---

**From:**      Lens, Molly
**Sent:**       Wednesday, November 18, 2015 5:17 PM
**To:**         Villar, Peter N.
**Cc:**         Bowler, John M.; Gale, Paul L.; lindsay.henner@troutmansanders.com; Petrocelli, Daniel; Biscay, Cameron H.
**Subject:**    Fox v. Empire Distribution

Peter -

During the parties' meet and confer discussions in October, we agreed that the parties would find a future time to discuss the timing of productions and privilege logs.  We are writing to continue those discussions.  Fox is prepared to make its first production provided that Empire Distribution agrees to make its production on the same date.  We further propose that the parties agree to complete their productions by December 3 (for documents otherwise due by this date) and provide privilege logs on that same date for all withheld documents.  (For the avoidance of doubt, we do not agree to the November 4 counterproposal by Empire Distribution with respect to the logging of documents).

Molly

_____
**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*