1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  MOLLY M. LENS (S.B. #283867)
   mlens@omm.com
3  CAMERON H. BISCAY (S.B. #266786)
   cbiscay@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, California  90067-6035
   Telephone:   (310) 553-6700
6  Facsimile:    (310) 246-6779

7  Attorneys for Twentieth Century Fox
   Television, a division of Twentieth Century
8  Fox Film Corporation, and Fox
   Broadcasting Company

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                          WESTERN DIVISION

13
   TWENTIETH CENTURY FOX                    Case No. 2:15-cv-02158 PA(FFMx)
14 TELEVISION, a division of
   TWENTIETH CENTURY FOX FILM               **DECLARATION OF MOLLY M.**
15 CORPORATION, a Delaware company,         **LENS IN SUPPORT OF FOX'S**
   et al.,                                  **REPLY IN SUPPORT OF**
16                                          **MOTION FOR SUMMARY**
              Plaintiffs,                   **JUDGMENT**
17
         v.                                 **Judge:** Hon. Percy Anderson
18
   EMPIRE DISTRIBUTION, INC., a             **Hearing Date:** February 1, 2016
19 California corporation,                  **Time:** 1:30 p.m.
                                            **Place:** Courtroom 15
20            Defendant.

21

22 ────────────────────────────────
   And related counterclaims
23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

**<u>Title</u>**                                                                                    **<u>Page</u>**

**Lens Declaration** ................................................................... 1

**Exhibit 21:** Ms. Lens Nov. 18 Email to Mr. Villar ........................ 4

**Exhibit 22:** Ms. Lens Nov. 25 Email to Mr. Villar ........................ 5

**Exhibit 23:** Mr. Villar Nov. 30 Email to Ms. Lens ........................ 9

**Exhibit 24:** Joint Stipulation Regarding Motion Cut-Off Date ...................... 11

**Exhibit 25:** Mr. Villar Dec. 9 Email to Ms. Lens ........................ 15

**Exhibit 26:** Mr. Johnson Deposition Transcript ........................ 16

**Exhibit 27:** Dr. Jay Deposition Transcript ........................ 21

**Exhibit 28:** USPTO Suspension Notice (86590365) ...................... 30

**Exhibit 29:** USPTO Suspension Notice (86590402) ...................... 37

**Exhibit 30:** USPTO Suspension Notice (86476822) ...................... 45

**Exhibit 31:** Mr. Etminan Deposition Transcript ........................ 51

**Exhibit 32:** Mr. Shami Deposition Transcript ........................ 57

**Exhibit 33:** Exhibit 80 to Mr. Shami Deposition Transcript ........................ 71

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, Molly M. Lens, the undersigned, hereby declare:

1.      I am a member in good standing of the State Bar of California, an attorney in the law firm of O'Melveny & Myers LLP, and counsel for plaintiffs and counterclaim defendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation, and Fox Broadcasting Company (collectively, "Fox").  I submit this declaration in support of Fox's Reply In Support Of Motion For Summary Judgment.  I have personal knowledge of the facts set forth herein and, if called to testify, could and would testify competently thereto.

2.      On November 18, 2015, I sent an email to Mr. Villar proposing that the parties complete their productions of documents by December 3, 2015.  This communication represented the first time either party proposed a date for the production of documents in response to the parties' requests for production.  A true and correct copy of my November 18, 2015 email to Mr. Villar is attached hereto as **Exhibit 21**.

3.      On November 25, 2015, I sent an email to Mr. Villar pointing out that defendant had not responded to my proposal that the parties complete their productions in early December.  A true and correct copy of my November 25, 2015 email to Mr. Villar is attached hereto as **Exhibit 22**.

4.      On November 30, 2015, Mr. Villar finally responded to my proposal, stating that defendant was prepared to exchange documents on December 3, 2015, as proposed in my November 18, 2015 email.  A true and correct copy of Mr. Villar's November 30, 2015 email is attached hereto as **Exhibit 23**.

5.      The parties ultimately exchanged document productions on December 4, 2015, though Fox had produced some documents in November and both parties have since made supplemental productions.

- 1 -

6.      On December 8, 2015, the parties filed a joint stipulation regarding the summary judgment briefing schedule with the Court.  A true and correct copy of this December 8, 2015 stipulation is attached hereto as **Exhibit 24**.

7.      On December 9, 2015, Mr. Villar sent me an email identifying "priority" depositions for defendant.  Mr. Villar identified Fox's 30(b)(6) witness, Geoff Bywater, and Shannon Ryan as its "priority" depositions.  A true and correct copy of Mr. Villar's December 9, 2015 email is attached hereto as **Exhibit 25**.

8.      Defendant took the deposition of Geoff Bywater on December 22, 2015 (both in his percipient capacity and as Fox's 30(b)(6) witness on several topics), the deposition of Fox's expert Phil Johnson on December 29, 2015 and the deposition of Fox's expert Deborah Jay on December 30, 2015.  True and correct copies of excerpts of the transcripts of the depositions of Mr. Johnson and Dr. Jay are attached hereto as **Exhibits 26 and 27**, respectively.

9.      On information and belief, Fox was closed for the holidays from December 24, 2015 to January 4, 2016.

10.     On January 12, 2016, under my supervision and direction, Farrah Reynolds, a staff attorney in the Intellectual Property & Technology Group at O'Melveny & Myers, conducted an online search of the USPTO database for applications filed by defendant to register trademarks that contain the word "empire."

11.     Defendant has three trademark applications that the USPTO has suspended.  The application for "EMPIRE" with Serial No. 86590365 was suspended on July 17, 2015; the application for "EMPIRE" with Serial No. 86590402 was suspended on July 17, 2015; and the application for "EMPIRE DISTRIBUTION" with Serial No. 86476822  was suspended on October 19, 2015.  True and correct copies of the USPTO Suspension Notices are attached hereto as **Exhibits 28-30.**

- 2 -

12.     On January 14, 2016, I took the deposition of Nima Etminan, defendant's Vice President of Operations.  A true and correct copy of excerpts of Mr. Etminan's deposition transcript is attached hereto as **Exhibit 31.**

13.     On January 15, 2016, I took the deposition of Ghazi Shami, defendant's Chief Executive Officer.  A true and correct copy of excerpts of Mr. Shami's rough deposition transcript is attached hereto as **Exhibit 32.**  A true and correct copy of the document referenced as "Exhibit 80" in the rough deposition transcript of Ghazi Shami is attached hereto as **Exhibit 33**.

14.     Prior to filing its opposition brief, defendant never indicated to Fox that it was pursuing a reverse confusion claim.


I declare under penalty of perjury that the foregoing is true and correct. Executed on January 15, 2016, at San Francisco, California.


_____
Molly M. Lens

- 3 -

# EXHIBIT 21

## Volpe, Stephen

| | |
|---|---|
| **From:** | Lens, Molly |
| **Sent:** | Wednesday, November 18, 2015 5:17 PM |
| **To:** | Villar, Peter N. |
| **Cc:** | Bowler, John M.; Gale, Paul L.; lindsay.henner@troutmansanders.com; Petrocelli, Daniel; Biscay, Cameron H. |
| **Subject:** | Fox v. Empire Distribution |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Peter -

During the parties' meet and confer discussions in October, we agreed that the parties would find a future time to discuss the timing of productions and privilege logs.  We are writing to continue those discussions.  Fox is prepared to make its first production provided that Empire Distribution agrees to make its production on the same date.  We further propose that the parties agree to complete their productions by December 3 (for documents otherwise due by this date) and provide privilege logs on that same date for all withheld documents.  (For the avoidance of doubt, we do not agree to the November 4 counterproposal by Empire Distribution with respect to the logging of documents).

Molly

_____
**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

EXHIBIT 21

# EXHIBIT 22

## Volpe, Stephen

| | |
|---|---|
| **From:** | Lens, Molly |
| **Sent:** | Wednesday, November 25, 2015 5:35 PM |
| **To:** | Villar, Peter N. |
| **Cc:** | Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Ehlers, J. Hardy |
| **Subject:** | RE: Fox v. Empire Distribution |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Peter -

Your email evidences that you are operating under a fundamental misconception.  We have not "created" any scheduling problems.  Nor are we giving you an "ultimatum;" we are just presenting facts.   We reached out to you in a good faith attempt to meet and confer about the schedule, under the confines of the scheduling order, which you've known about for months.  The reality is that the last day for a summary judgment motion to be heard is February 1.  With the minimum notice period, this means that a motion can be filed no later than January 4.  Thus, we are not "insisting on proceeding with []our motion[] under the current schedule before the discovery deadline" but must do so, absent an extension of the summary judgment deadline.   Further, giving Empire Distribution additional time to oppose our motion necessarily means that you will be opposing our motion over the holidays.   (And we cannot help but observe that your complaints about briefing motions over the holiday are especially disingenuous given that you chose to serve us with a joint stipulation right before Thanksgiving and tried, contrary to the rules, to make us respond to the motion on the day after Thanksgiving.)

There is no reason to recite Judge Anderson's scheduling order to us.  Consistent with that scheduling order, we reached out to you, weeks before we were required to do so, to discuss a schedule for our motion for summary judgment.  (Since you have ignored our question, we presume that Empire Distribution does not intend to move for summary judgment).  Our efforts were met with complaints and accusations.

We are amenable to discussing a potential extension of the entire schedule, including trial, as you propose below.  In the meantime, however, we need to proceed on a parallel track under the existing schedule.  Given the February 1 hearing date, we propose the following schedule:  we file our motion on December 22, you oppose the motion on January 6, and we submit our reply on January 15 (given the MLK holiday this is the last day to submit the reply).  Including the two holidays and weekends, that gives you 15 days to oppose our motion (as compared to the statutory 7) and us nine days to submit our reply (as opposed to the statutory 7).  This schedule presumes two things: (1) that you would be willing to exchange expert rebuttal reports on December 18 rather than on December 21; and (2) that Judge Anderson would be willing to allow us to move more than 35 days in advance of the hearing date.  To the extent that you want to try to work something out, rather than make complaints, we encourage you to reconsider your refusal to speak with us until the end of next week, when it may be too late as a practical matter to submit a stipulation to Judge Anderson.

We will close by noting that your complaints about the state of discovery are equally misguided.  You complain that Fox has not produced any documents but neither has Empire Distribution.  In fact, you have not even bothered to respond to our proposal that the parties complete their productions, with respect to the documents that the parties have agreed to provide, on December 4.  Similarly, you complain that Fox has not responded to any requests for admission or interrogatories when you know well that, given Empire Distribution's delay in serving discovery, no responses have been due from Fox.  And we cannot fathom what the basis is for your threat as to additional discovery motions against Fox, given that you have identified no discovery disputes not covered in your pending joint stipulation.

EXHIBIT 22

Molly

**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** Villar, Peter N. [mailto:Peter.Villar@troutmansanders.com]
**Sent:** Tuesday, November 24, 2015 10:36 AM
**To:** Lens, Molly
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Ehlers, J. Hardy
**Subject:** RE: Fox v. Empire Distribution

Molly –

The timing and substance of your email regarding your contemplated summary judgment motions is troublesome.  You indicated during our Rule 26(f) conference and in the Rule 26(f) Joint Report, five months ago, that Fox intended to file an "early" motion for summary judgment on First Amendment grounds.  That did not happen and, instead, you plan to wait to file multiple motions for summary judgment "shortly before the holidays, with [our] oppositions falling over the Christmas/New Year holidays."  In an attempt to resolve this scheduling problem you created, you have given us an ultimatum – either agree to an extension of the summary judgment deadline or spend our holidays responding to your multiple motions on minimal notice.  We do not believe your approach is reasonable, appropriate or consistent with Judge Anderson's Scheduling Order.

Judge Anderson's Scheduling Order states that "[i]n virtually every case, the Court expects that the moving party will provide more than the minimum twenty-eight (28) day notice for such motions".  It further states  "the Court expects that more than the minimum notice will be provided to counsel opposing motion for summary judgment" and that "the parties should confer and agree on the date for setting such motions."  Your proposal to extend the summary judgment hearing deadline with a February 29 hearing date does not resolve the problem of insufficient notice.  I believe your proposed briefing schedule would provide us an additional two days over the weekend to respond to your motions beyond the minimum 28-day notice period.  Moreover, there is no guarantee that your proposal would "allow the parties to complete discovery prior to summary judgment briefing."  To date, neither Fox nor any of the third party witnesses you represent has produced a single document, responded to a single request for admission or interrogatory, or provided us a single deposition date.  We have already served one discovery motion that will likely not be decided until January and we likely will be filing several more if we cannot obtain the discovery we have requested.  Therefore, it is very likely that we will be receiving relevant discovery pursuant to court orders after the discovery cut-off deadline and we will almost certainly not have all key deposition transcripts prior to early February given that we have yet to receive a deposition date.

If you are serious about setting a briefing schedule and hearing date that provides the parties sufficient time to complete discovery and adequately brief the issues, we would be open to discussing a stipulation for a brief continuance of the trial date and all case deadlines including a reasonable summary judgment briefing schedule.  Otherwise, if you insist with proceeding with your motions under the current schedule before the discovery cut-off deadline, we expect that you will confer in good faith to set a mutually convenient date for the hearing and provide us substantially more than the minimum notice period (taking into account the holidays) in accordance with the Court's Scheduling Order.  We, of course, reserve our right to oppose the motions on Rule 56(d) grounds particularly if your clients (parties and third parties) have not provided us all of the discovery on First Amendment and other issues that has been requested.

EXHIBIT 22

We are happy to discuss these issues with you further during the L.R. 7-3 conference in addition to any substantive issues relating to your contemplated motions.  We are not available later this week in light of the Thanksgiving holiday, but can be available next Wednesday (December 2 early afternoon) or Friday (December 4 morning).

- Peter

---

**From:** Lens, Molly [mailto:mlens@omm.com]
**Sent:** Monday, November 23, 2015 8:54 AM
**To:** Villar, Peter N.
**Cc:** Gale, Paul L.; Bowler, John M.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H.; Ehlers, J. Hardy
**Subject:** Fox v. Empire Distribution

Peter -

We write to meet and confer in advance of our contemplated motion for summary judgment.  We intend to move for summary judgment on all claims based on the dispositive First Amendment defense; the lack of likelihood of confusion; and the lack of famousness of Empire Distribution's alleged marks.  Pursuant to L.R. 7.3, please let us know when you are available to meet and confer.  When you respond, please let us know if you anticipate moving for summary judgment on any claims.

With respect to the schedule, as you should be aware, Judge Anderson's scheduling order provides that the current deadline for summary judgment hearings is February 1.  The scheduling order separately encourages the moving party to provide more than the minimum twenty-eight (28) day notice for such motions.  This means, under the current schedule, summary judgment motion(s) will be filed prior to the completion of discovery.  Further, the motions themselves will likely be filed shortly before the holidays, with oppositions falling over the Christmas/New Year holidays.

In light of this, we propose the parties stipulate to an extension of the summary judgment hearing deadline to February 29 (leaving all other case deadlines in place).  This would allow the parties to complete discovery prior to summary judgment briefing and, of lesser importance, avoid any holiday conflicts.  While the parties can meet and confer to discuss the specific schedule, we propose the following, working backwards from the February 29 hearing date:  January 25: deadline to move for summary judgment, contemporaneous with the close of discovery; February 4:  opposition date; February 12:  reply date (given the holiday of February 15).

To the extent your client is not willing to agree that the parties should jointly request that Judge Anderson move the hearing to February 29, we ask that Empire Distribution stipulate that it will not oppose our forthcoming summary judgment motion on 56(d) grounds.

We ask for your response by 10:00 am tomorrow, which will allow the parties to present any agreement to Judge Anderson for his consideration on Wednesday before the Thanksgiving holiday.

Molly

_____
**Molly M. Lens**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (310) 246-8593
Fax: (310) 246-6779
mlens@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this*

EXHIBIT 22
7

*information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

# EXHIBIT 23

**Volpe, Stephen**

| | |
|---|---|
| **From:** | Villar, Peter N. <Peter.Villar@troutmansanders.com> |
| **Sent:** | Monday, November 30, 2015 5:14 PM |
| **To:** | Lens, Molly |
| **Cc:** | Bowler, John M.; Gale, Paul L.; Henner, Lindsay Mitchell; Petrocelli, Daniel; Biscay, Cameron H. |
| **Subject:** | Empire |

Molly:  I write to follow up on various outstanding issues that we have been discussing over the past few weeks:

First, with respect to the parties' document productions, we are prepared to exchange documents on December 3, as proposed in your November 18 email.  We cannot confirm that we will be able to "complete" our production by that date but expect to be producing a substantial volume of documents by that date.  We hope to also exchange privilege logs on or about that date, but before we do so we need to further discuss your position regarding the content of the logs since you indicated you did not agree to our November 4 counterproposal.

Second,  we have spoken to our client and are willing to agree to your proposal set forth in your November 24 email regarding production of documents responsive to Fox's Requests No. 59 and 68 and Empire Distribution's Request No. 15.  We are able to exchange such documents by December 9 as you proposed.  We assume our agreement moots your and our Joint Stipulations on these issues.

Third, we are willing to agree to your proposal regarding Messrs. Daniels and Strong subpoena responses as set forth in your November 25 email.  I believe that resolves those issues.

Fourth, with respect to your contemplated summary judgment motions, we do not agree to the proposed briefing schedule set forth in your November 25 email (i.e., that you file your motions on December 22, we file our opposition briefs by January 6, and you file your replies by January 15).  We do not believe that 14 days in between the Christmas and New Year's holidays is fair or reasonable to respond to multiple motions for summary judgment.  We would be willing to agree to the same schedule (we file oppositions on January 6 and you reply on January 15) provided you file your motions by December 7.  While that still would be a tight schedule under the above circumstances, it would at least give us 30 days (including weekends and holidays) to respond to your motions.  (Since it would not resolve the discovery issues, we would of course reserve our right to raise arguments under Rule 56(d)).  As discussed, if we can agree on a continuance of the case deadlines (including a summary judgment briefing schedule) we can likely avoid the scheduling issues.  I have a very busy schedule this week but can make some time tomorrow morning around 10 a.m. (in addition to the other dates/times previously mentioned) to discuss a joint stipulation to continue the case deadlines if that works for you.

Regards,

Peter


Peter N. Villar
Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Tel:  949-622-2783

Fax:  949-622-2739
Email: peter.villar@troutmansanders.com

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

# EXHIBIT 24

Case 2:15-cv-02158-PA-FFM   Document 64-3   Filed 01/15/16   Page 17 of 65   Page ID
Case 2:15-cv-02158-PA-FFM   Document 30-3   Filed 12/08/15   Page 1 of 4   Page ID
#:3939

1 | DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
2 | MOLLY M. LENS (S.B. #283867)
mlens@omm.com
3 | CAMERON H. BISCAY (S.B. # 266786)
cbiscay@omm.com
4 | O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
5 | Los Angeles, California  90067-6035
Telephone:  (310) 553-6700
6 | Facsimile:   (310) 246-6779

7 | Attorneys for Twentieth Century Fox
Television, a division of Twentieth Century
8 | Fox Film Corporation, and Fox
Broadcasting Company

9 |
PAUL L. GALE (S.B. # 065873)
10 | paul.gale@troutmansanders.com
PETER N. VILLAR (S.B. #204038)
11 | peter.villar@troutmansanders.com
TROUTMAN SANDERS LLP
12 | 5 Park Plaza, Suite 1400
Irvine, California 92616-2545
13 | Telephone:  (949) 622-2704
Facsimile:   (949) 769-2052
14 |
15 | Attorneys for Empire Distribution, Inc.

16 | ## UNITED STATES DISTRICT COURT

17 | ## CENTRAL DISTRICT OF CALIFORNIA

18 | TWENTIETH CENTURY FOX
TELEVISION, a division of
19 | TWENTIETH CENTURY FOX FILM
CORPORATION, a Delaware company,
20 | and FOX BROADCASTING
COMPANY, a Delaware corporation,

21 |                         Plaintiffs,

22 |          v.

23 | EMPIRE DISTRIBUTION, INC., a
California corporation,
24 |
                        Defendant.
25 |

26 |

27 | _____
And related counterclaims
28 |

Case No. 2:15-cv-02158 PA(FFMx)

Hon. Percy Anderson

**JOINT STIPULATION
REGARDING MOTION CUT-
OFF DATE; LENS
DECLARATION IN SUPPORT OF
JOINT STIPULATION;
[PROPOSED] ORDER**

Discovery Cut-off:       1/25/2016
Motion Cut-off:          2/1/2016
Pretrial Conference:     3/4/2016
Trial:                   4/5/2016

1   　　　The parties to this action, Plaintiffs and Counterclaim Defendants Twentieth

2   Century Fox Television, a division of Twentieth Century Fox Film Corporation,

3   and Fox Broadcasting Company (collectively, "Fox") and Defendant and

4   Counterclaimant Empire Distribution, Inc. ("Empire Distribution" and together

5   with Fox, "the Parties"), respectfully request that the Court approve the following

6   approximate one-month extension of the summary judgment motion cut-off date

7   and briefing schedule in accordance with the Court's Scheduling Order entered July

8   23, 2015.

9   　　　WHEREAS the Court's Scheduling Order in the above-captioned matter

10   provides that summary judgment motions must be heard on or before February 1,

11   2016, *see* Dkt. No. 23 at 1;

12   　　　WHEREAS, the Court's Scheduling Order provides that rebuttal expert

13   reports are due on December 21, 2015, *see id.* at ¶ 1;

14   　　　WHEREAS the Court's Scheduling Order provides that discovery must

15   conclude by January 25, 2016, *see id.* at 1;

16   　　　WHEREAS the Court's Scheduling Order provides that, "in the usual case,

17   the Court expects that more than the minimum notice will be provided to counsel

18   opposing motions for summary judgment," *see id.* at ¶ 3;

19   　　　WHEREAS the Court's Scheduling Order provides that, "[i]n virtually every

20   case, the Court expects that the moving party will provide more than the minimum

21   twenty-eight (28) day notice for such motions," *see id.* at ¶ 5(d);

22   　　　WHEREAS the Court's Standing Order provides that "no motion shall be

23   noticed for hearing more than thirty-five days after service of the motion unless

24   ordered by the Court," *see* Dkt. 10 at ¶ 6(a);

25   　　　WHEREAS, on November 23, Fox asserted its intent to move for summary

26   judgment ("Motion") on all claims and counterclaims in the above-captioned case

27   and requested a Local Rule 7-3 conference on its anticipated Motion;

28

---

JOINT STIPULATION REGARDING MOTION CUT-OFF DATE

EXHIBIT 24

12

1    WHEREAS Empire Distribution has asserted its intent to oppose Fox's

2    Motion on the grounds, *inter alia*, under Federal Rule of Civil Procedure 56(d) that

3    it cannot—prior to the close of discovery—present facts essential to justify its

4    opposition;

5    WHEREAS the Parties have met and conferred concerning the schedule for

6    Fox's anticipated Motion, including the briefing schedule and the hearing date for

7    the Motion;

8    WHEREAS there have not been any prior requests for extensions or

9    continuances in this matter;

10   NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND AMONG

11   THE PARTIES HERETO AND THEIR COUNSEL OF RECORD THAT to allow

12   for the completion of discovery, including expert discovery, and to streamline the

13   issues presented by the Motion to the Court, the Parties respectfully request that the

14   motion cut-off date be continued to allow the Motion be heard on March 4, 2016

15   (the date of the Final Pretrial Conference under the Court's Scheduling Order), and

16   that the Parties brief the Motion as follows:  Fox shall file its Motion by January 22,

17   2016 (essentially contemporaneous with the close of discovery); Empire

18   Distribution shall file its Opposition by February 10, 2016, and Fox shall file its

19   Reply by February 19, 2016.

20   In the alternative, in the event that the Court does not grant the Parties' joint

21   request to continue the hearing date for the Motion, the Parties have agreed to the

22   following briefing schedule for the Motion:  Fox shall file its Motion by December

23   15, 2015; Empire Distribution shall file its Opposition by January 6, 2016; and Fox

24   shall file its Reply by January 15, 2016.

25   In the event that the Court rejects both proposals, Fox will move for

26   summary judgment on or about December 28, 2015, consistent with the Standing

27   Order, *see* Dkt. No. 10.

28

JOINT STIPULATION REGARDING MOTION CUT-OFF DATE

EXHIBIT 24
13

Case 2:15-cv-02158-FMO-AFM Document 64-3 Filed 01/15/16 Page 20 of 65 Page ID
Case 2:15-cv-02158-FMO-AFM Document 39-1 Filed 12/08/15 Page 4 of 4 Page ID #:586
#:3942

| | | | |
|---|---|---|---|
| 1 | Dated: | December 8, 2015 | Respectfully submitted, |
| 2 | | | DANIEL M. PETROCELLI |
| 3 | | | MOLLY M. LENS<br>O'MELVENY & MYERS LLP |
| 4 | | | |
| 5 | | | By: /s/ Molly M. Lens |
| 6 | | | Molly M. Lens<br>Attorneys for Fox |
| 7 | | | Plaintiffs and Counterclaim Defendants |

| | | | |
|---|---|---|---|
| 8 | Dated: | December 8, 2015 | Respectfully submitted, |
| 9 | | | PAUL L. GALE |
| 10 | | | PETER N. VILLAR<br>TROUTMAN SANDERS LLP |
| 11 | | | |
| 12 | | | By: /s/ Peter N. Villar |
| 13 | | | Peter N. Villar<br>Attorneys for Empire Distribution |
| 14 | | | Defendant and Counterclaimant |

15
16
17 Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other signatories
18 listed, and on whose behalf the filing is submitted, concur in the filing's content and
19 have authorized the filing.

| | | | |
|---|---|---|---|
| 20 | Dated: | December 8, 2015 | Respectfully submitted, |
| 21 | | | O'MELVENY & MYERS LLP |
| 22 | | | By: /s/ Molly M. Lens |
| 23 | | | Molly M. Lens<br>Attorneys for Fox |
| 24 | | | Plaintiffs and Counterclaim Defendants |

25
26
27
28

- 3 -

# EXHIBIT 25

**Volpe, Stephen**

| | |
|---|---|
| **From:** | Villar, Peter N. <Peter.Villar@troutmansanders.com> |
| **Sent:** | Wednesday, December 09, 2015 4:38 PM |
| **To:** | Lens, Molly |
| **Cc:** | Petrocelli, Daniel; Biscay, Cameron H.; Bowler, John M.; Henner, Lindsay Mitchell; Gale, Paul L. |
| **Subject:** | Empire |

Molly –

I wanted to follow up on our discussion yesterday regarding deposition dates and the "priority" of the depositions we have noticed.  As mentioned, our first priority is the 30(b)(6) deposition.  While you mentioned that you would be serving objections to certain topics of inquiry in the deposition notice by the end of the week, we intend to proceed with the deposition and can work with you to resolve any such issues before, during and/or after the deposition.  The next priorities would be Geoff Bywater and Shannon Ryan.  Please provide dates for those witnesses as soon as possible and then we can discuss dates for the other witnesses.

In addition, as discussed, please let me know when we can expect the production of documents by Danny Strong, Lee Daniels and Lee Daniels Entertainment in response to the subpoenas as those documents will be needed for the depositions.

Regards,

Peter

Peter N. Villar
Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Tel:  949-622-2783
Fax:  949-622-2739
Email: peter.villar@troutmansanders.com

---

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

# EXHIBIT 26

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WESTERN DIVISION

TWENTIETH CENTURY FOX            )

TELEVISION, a division of        )

TWENTIETH CENTURY FOX FILM       ) Case No.

CORPORATION, a Delaware          ) 2:15-cv-02158-PA-FFM

corporation; and FOX             )

BROADCASTING COMPANY, a          )

Delaware corporation,            )

                    Plaintiffs,  )

        vs.                      )

EMPIRE DISTRIBUTION INC., a      )

California corporation,          )

            Defendant.           )

_____  )

                                 )

AND RELATED COUNTERCLAIM         )

_____  )

        DEPOSITION OF:   PHILIP JOHNSON

        DATE:            Tuesday, December 29, 2015

        REPORTED BY:     George A. Haas, CSR 5939

        Job Number 599889



Page 42

1    the Amazon Desktop/Laptop.
2    A.    Yes.
3    Q.    For a respondent in your survey who is
4    looking at that Amazon Desktop/Laptop page to respond
10:19:05    5    he was confused by the Empire word mark or a
6    variation, what must transpire?
7    MR. RAPHAEL: Objection, vague.
8    THE WITNESS: Primarily they would have to
9    identify the Empire TV show of Fox or TV show as
10:19:29    10    being the source or being related or being
11    authorized.
12    BY MR. BOWLER:
13    Q.    Before they get there, would the
14    respondent first have to recognize that the album was
10:19:48    15    made or put out by Empire Distribution?
16    A.    I don't understand that question.
17    Q.    If a respondent looking at the Amazon
18    Desktop/Laptop stimuli doesn't recognize that the
19    album was made or put out by Empire Distribution,
10:20:20    20    then how would you measure confusion?
21    A.    It says on the exhibit, 2014 Empire
22    Distribution/Republic. So they are exposed to it.
23    The question is do they get confused and associate
24    this product page with Empire the TV show. That's
10:21:00    25    the measure of confusion.

Page 43

1    Q.    My question is a bit more specific.
2    If in order to identify reverse
3    confusion is it necessary that respondents be able to
4    link their chosen stimuli, in this case on the Amazon
10:21:24    5    Desktop/Laptop, with some sort of distribution?
6    A.    I'm not sure what you mean by "link."
7    The very first thing it says Sage to
8    Gemini March 25, 2014, hip hop or rap, 2014, Empire
9    Recording –
10:21:45    10    I'm sorry. Am I on the wrong page.
11    Q.    Yes.
12    A.    The Amazon page says --
13    Q.    You are on Page No. 2, the second
14    screen.
10:21:54    15    A.    Yes. This is shown on two pages, but
16    it's scrolled as one on the actual exhibit.
17    Empire Distribution/Republic, copyright
18    2014, Empire Recording and exclusive license to
19    Republic Records, a division of UMG Recordings Inc.
10:22:12    20    So in the exhibit they are exposed to
21    that. Whether or not that registers with them is the
22    whole point of doing the survey. You are exposed to
23    it as you would normally be exposed to it when you
24    are purchasing this product on an Amazon
10:22:29    25    Desktop/Laptop site.

Page 44

1    Q.    If respondents are unable to link the
2    stimuli, this particular stimuli with Empire
3    Distribution, would that impact the ability to
4    identify reverse confusion?
10:22:46    5    A.    No.
6    Q.    Why not?
7    A.    Because you have exposed them. It's
8    the exposure that counts. Whether the word is
9    meaningful or important to them is the point. You
10:22:55    10    are trying to see whether the exposure causes people
11    to become confused. That's what reverse confusion
12    is.
13    Q.    I know you are talking about exposure.
14    If the respondents don't see the word "Empire" on the
10:23:15    15    second screen page you just referred to, would that
16    impact give you difficulty in identifying reverse
17    confusion?
18    MR. RAPHAEL: Objection, asked and answered.
19    THE WITNESS: No.
10:23:38    20    BY MR. BOWLER:
21    Q.    You conducted the survey using
22    different stimuli. You testified earlier you could
23    have?
24    A.    It's the same when you are conducting
10:24:01    25    any survey. You can always do things differently.

Page 45

1    You can always.
2    Q.    Did you consider using different
3    stimuli other than the Sage to Gemini album that you
4    said you saw referenced in the counterclaim?
10:24:16    5    A.    As I said, you could. But when I
6    looked at the products referenced in the
7    counterclaim, this was the one product that did have
8    an Empire Distribution identification on each of the
9    critical portals where you could purchase the
10:24:35    10    product. So it's a uniquely good choice.
11    Actually, I do not see anything that
12    would have been nearly as good as this choice.
13    Q.    I thought you testified you hadn't made
14    any investigation outside of Snoopp Dogg and a couple
10:24:51    15    of other artists referenced?
16    A.    I think that the things were referenced
17    in the counterclaim, and this was clearly the one
18    used to be representative.
19    Q.    Let's go back to how much time the
10:25:15    20    average purchaser spends buying hip hop music.
21    Do purchasers of hip hop or rap make
22    involved, deliberate decisions as do purchasers of
23    any other genre of music?
24    A.    I'm not aware of their purchase
10:25:42    25    decision or that the depth of thinking that goes into

Page 58

```
 1    Q.   What was Republic's role in the
 2  production or distribution of the Sage to Gemini
 3  album; do you know?
 4    A.   It said in the counterclaim they were
 5  the artist and the best selling album.  I don't
 6  recall exactly what they did.
 7    Q.   Do you know if Empire Distribution has
 8  put out albums on its own and not through Republic
 9  Records?
10    A.   I don't know the ways they do things.
11    Q.   Some of your respondents actually
12  answered Question No. 2a with the name Republic and
13  not Empire; is that correct?
14    A.   Well, they answered Republic.  I don't
15  know if they also said Empire or not.
16    Q.   Would you expect more than 20
17  respondents to have answered Question No. 2a by
18  naming Empire Distribution?
19    A.   Not particularly, no.
20    Q.   Why not?
21    A.   Why would I?
22    Q.   I'm just asking the question.
23    A.   I don't know how else to answer it.
24         I see no reason why I would expect more
25  than that.
```

Page 59

```
 1    Q.   20 respondents who answered Question
 2  No. 2a with Empire Distribution represent
 3  approximately what percentage of your total study,
 4  about 2 percent?
 5    A.   About 2 percent.  It was roughly 1,000
 6  people.
 7    Q.   Does this mean that in subsequent
 8  questions when respondents are asked, for example, in
 9  Question No. 3a, what other products are put out by
10  this company, that only 2 percent of respondents are
11  thinking of Empire Distribution?
12    A.   Nobody said 2 percent of the people
13  were thinking of Empire Distribution.
14         2 percent specifically named them, but
15  that doesn't mean only 2 percent are thinking of
16  them.
17    Q.   Your survey by no means is able to
18  measure how many people were actually thinking about
19  Empire Distribution?
20    A.   100 percent of them were exposed to
21  Empire Distribution.  So in the conducts of a typical
22  purchasing cycle, having that exposure, they are all
23  thinking of them.  What they know about them or what
24  they care about them or how important that is to them
25  is what it is in the typical purchasing cycle.
```

Page 60

```
 1    Q.   You just said that respondents other
 2  than those 2 percent were actually thinking of Empire
 3  Distribution who were exposed to the stimuli?
 4    A.   No.
 5    Q.   How is that not speculation?
 6    A.   It's not speculation.  It's the tip of
 7  the iceberg for the ones that actually named them
 8  because there are other things they can name and say
 9  what they know about it.  They were all exposed to
10  it.
11    Q.   You don't know how many of the
12  respondents actually saw the words "Empire
13  Distribution" on that stimuli?
14    A.   Everyone was shown it on the stimuli.
15    Q.   That's a different question.
16         You have shown the stimuli, but you
17  don't know how many respondents actually saw the
18  words, registered the words "Empire Distribution"?
19    A.   They all were exposed to the words in
20  the normal context of a purchase.  Whether it was
21  important information to them and whether they
22  assimilated it as part of an important part of the
23  purchase cycle is what it is.  That's how they shop.
24  That's why you do things this way.  This is
25  recreating the purchase cycle.
```

Page 61

```
 1    Q.   You don't know as you sit here how many
 2  of the respondents may not have even actually seen
 3  the words "Empire Distribution" on the stimuli?
 4    A.   I believe they all saw it.
 5    Q.   What is your basis for saying that?
 6    A.   It was shown in the stimuli.
 7    Q.   And that's your only basis?
 8    A.   That's my basis, yes.
 9    Q.   How many respondents answered Question
10  No. 2a with the answer Don't Know?
11    A.   60 percent.
12    Q.   You are looking on what page of your
13  report?
14    A.   Page No. 18.
15    Q.   Under your table?
16    A.   In the table, in the Total column.
17    Q.   So more than half your survey
18  respondents did not provide an answer other than
19  Don't Know to Question No. 2a?
20    A.   Well, 60 percent answered that they
21  don't know who makes it.
22    Q.   Does that 60 percent suggest that
23  respondents were confused by the phrase "makes or
24  puts out"?
25    A.   No, not at all.
```

Page 62

| | | |
|---|---|---|
| | 1 | Q.   Why not? |
| | 2 | A.   First, this is typical for an Eveready |
| | 3 | study. |
| | 4 | Secondly, it shows they really don't |
| 10:55:01 | 5 | know who makes or puts it out. |
| | 6 | Q.   Is it your testimony that 60 percent of |
| | 7 | respondents in an Eveready study don't know the |
| | 8 | answer to the who makes or puts out question? |
| | 9 | A.   I said that's not atypical. It's a |
| 10:55:33 | 10 | frequent kind of percent. Yes, it's not an unusual |
| | 11 | number is what I said, I believe. |
| | 12 | Q.   Does that percentage suggest that |
| | 13 | respondents could not answer Question No. 2a based on |
| | 14 | the stimuli that were used? |
| 10:55:53 | 15 | A.   No, it does not. |
| | 16 | Q.   Why not? |
| | 17 | A.   As I said, it's pretty typical. But it |
| | 18 | would be easiest -- it didn't register who the |
| | 19 | producer was in a way that is important to them, in a |
| 10:56:09 | 20 | way they are able to recall it subsequently. |
| | 21 | Q.   Did any of the respondents respond to |
| | 22 | your question by saying some of them were confusing? |
| | 23 | A.   I'm not sure I understand the question. |
| | 24 | Q.   Did any respondents respond to, for |
| 10:56:27 | 25 | example, Question No. 3a, stating it was confusing? |

Page 63

| | | |
|---|---|---|
| | 1 | A.   There are always a few people in the |
| | 2 | survey who say a question is confusing or repetitive, |
| | 3 | and they don't understand it. |
| | 4 | Q.   Are there instances where use of the |
| 10:57:06 | 5 | Eveready format is more appropriate than others? |
| | 6 | A.   The general fact is to use the Eveready |
| | 7 | survey. It's considered the gold standard of |
| | 8 | computing surveys. |
| | 9 | Q.   Is an Eveready study particularly |
| 10:57:45 | 10 | appropriate if the senior mark is strong and widely |
| | 11 | recognized? |
| | 12 | A.   It depends if you are doing forward and |
| | 13 | reverse. |
| | 14 | Usually a reverse confusion study is |
| 10:58:03 | 15 | the least used mark that needs to be well-known for |
| | 16 | it to come to mind otherwise there would be no |
| | 17 | confusion if it was not well-known. |
| | 18 | Maybe I didn't understand the question. |
| | 19 | Q.   You answered it. |
| 10:58:21 | 20 | In a reverse confusion case, does the |
| | 21 | Eveready survey format assume that respondents are |
| | 22 | aware of the senior user's mark from prior |
| | 23 | experiences? |
| | 24 | A.   Senior user? |
| 10:58:51 | 25 | Q.   Yes. |

Page 64

| | | |
|---|---|---|
| | 1 | A.   Usually you can't have reverse |
| | 2 | confusion if -- unless the junior user's mark is |
| | 3 | well-known so it comes to mind when you see the |
| | 4 | senior user. The senior user's name is not usually |
| 10:59:14 | 5 | available, it's the junior user's. If the junior |
| | 6 | user's isn't well-known, it couldn't come to mind |
| | 7 | easily. |
| | 8 | Q.   Let me tweak the question a little. |
| | 9 | In a reverse confusion case, does the |
| 10:59:43 | 10 | Eveready survey format assume that the respondents |
| | 11 | are aware of the junior user's mark from prior |
| | 12 | experiences? |
| | 13 | A.   "Assume" is the word I'm struggling |
| | 14 | with. I'm trying to measure what is the degree of |
| 11:00:02 | 15 | confusion in the entire universe of people. So you |
| | 16 | show them the senior user's mark, and if it doesn't |
| | 17 | call to mind the junior user, then there is no |
| | 18 | confusion with the junior user. |
| | 19 | So the junior user, to the extent they |
| 11:00:25 | 20 | are when shown, that's the level of confusion you measure. |
| | 21 | But that's what you are trying to do, is measure what |
| | 22 | the actual confusion level is in the whole world. |
| | 23 | Q.   In your survey, who would be |
| | 24 | characterized as confused? |
| 11:00:40 | 25 | A.   People who named the Fox television |

Page 65

| | | |
|---|---|---|
| | 1 | show when they are given the stimulus of the senior |
| | 2 | user. |
| | 3 | Q.   Did that occur? |
| | 4 | A.   Only in two instances out of 1050, 1060 |
| 11:01:07 | 5 | exposures. |
| | 6 | Q.   Can anyone else be characterized as |
| | 7 | confused other than someone who answered that Fox or |
| | 8 | the TV show puts out the product? Anyone shown those |
| | 9 | stimuli. |
| 11:01:34 | 10 | A.   I'm not sure. |
| | 11 | Q.   I'm not sure either. |
| | 12 | If the respondent correctly answered |
| | 13 | that Empire Distribution puts out the product shown |
| | 14 | in the stimuli, but mentioned the  television show |
| 11:02:05 | 15 | Empire or any other Fox TV show when asked what other |
| | 16 | products are put out by Empire Distribution in |
| | 17 | Question No. 3a, would that respondent be |
| | 18 | characterized as confused? |
| | 19 | A.   Any respondent was confused who gave an |
| 11:02:25 | 20 | answer that the Fox TV show or Empire the TV show or |
| | 21 | the Simpson's or other Fox TV show product came from |
| | 22 | the same people who put out the album they were shown |
| | 23 | with the Empire Distribution label on it. |
| | 24 | Q.   Did the scenario I just asked about |
| 11:02:43 | 25 | ever happen? |

PHILIP JOHNSON  -  12/29/2015

27 (Pages 102 to 104)

Page 102

```
      1   trial?
      2   A.    These are all trials.
      3   Q.    Did you have any going back to October
      4   1, going back another here, did you have any more
12:28:40  5   trials?
      6   A.    This is the last 48 months.  That's
      7   four years.
      8   Q.    It asks for six years.
      9   A.    It's 2015 now.  That's 48 months.
12:28:57 10   Q.    We are missing a year?
     11   A.    Yes.
     12   MR. BOWLER:  I have no other questions.
     13   MR. RAPHAEL:  Okay.
     14        It's 12:30, we started at 9:00.
12:29:42 15
     16        (The deposition was concluded
     17        at 12:30 P.M.)
     18
     19
     20
     21
     22
     23
     24
     25
```

Page 103

```
      1        WITNESS'S DECLARATION
      2
      3        I, PHILIP JOHNSON, declare under
      4   penalty of perjury that I have read the foregoing
      5   transcript and that I have made any corrections,
      6   additions, or deletions that I was desirous of making
      7   in order to render the within transcript true and
      8   correct.
      9        IN WITNESS WHEREOF, I have hereunto
     10   subscribed my name this _____ day of
     11   _____ 2015.
     12
     13
     14
     15        _____
     16             PHILIP JOHNSON
     17
     18
     19
     20
     21
     22
     23
     24
     25
```

Page 104

```
      1        Certificate
      2        Of
      3        Certified Shorthand Reporter
      4
      5        I, George A. Haas, Certified Shorthand
      6   Reporter, duly qualified in and for the State of
      7   California, do hereby certify there came before me
      8   the deponent herein, who was by me duly sworn to
      9   testify to the truth and nothing but the truth
     10   concerning the matters in this cause.
     11        I further certify that the foregoing
     12   transcript is a true and correct transcript of my
     13   original stenographic notes.
     14        I further certify that I am neither
     15   attorney or counsel for, nor related to or employed
     16   by any of the parties to the action in which this
     17   deposition is taken; and furthermore, that I am not a
     18   relative or employee of any attorney or counsel,
     19   employed by the parties hereto or financially
     20   interested in said action.
     21        IN WITNESS WHEREOF, I have hereunto set
     22   my hand this    day of      2015.
     23
     24
     25        GEORGE A. HAAS, CSR NO. 5939
```

# EXHIBIT 27



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |  |
|---|---|---|
| TWENTIETH CENTURY FOX TELEVISION, a division of TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware company, and FOX BROADCASTING COMPANY, a Delaware corporation, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 2:15-cv-02158-PA-FFM |
| EMPIRE DISTRIBUTION, INC., a California corporation, | ) ) ) | |
| Defendant. | ) ) | |
| AND RELATED COUNTERCLAIM. | ) ) ) | |

DEPOSITION OF DEBORAH JAY, Ph.D.

Menlo Park, California

Wednesday, December 30, 2015

Job Number 599890

Reported by:

JANIS JENNINGS, CSR, CLR, CCRR

DEBORAH JAY, Ph.D. –   12/30/2015

Page 18

1      Q.     Okay.   How did you choose the stimuli for the

2    survey?

3      A.     I wanted -- I looked at materials associated

4    with the television series as well as watching the

5    television series, and it was my understanding that the

6    greatest exposure in connection with the television --

7    with the television show would be the series itself.

8    And because the trailers are clips from the series, that

9    represents -- was the best representation of what people

10   would be exposed to who were potential viewers of the

11   show or viewers of the show.   So it seemed to be the

12   most appropriate stimulus, plus I was aware that the

13   particular trailers that I showed also were shown the

14   most frequently on the Fox channel so that, again, this

15   was a stimulus that I thought -- or these were the

16   stimuli that people would be -- would capture the most

17   exposure and also adequately or provide an excellent

18   description of what the show is about.

19     Q.     Could your --

20          MS. LENS:   Sorry.   Before you ask your next

21   question, my pen keeps running out.   Can we either go

22   off or can I just run out and grab another one.

23          MR. BOWLER:   Yeah.   Let's go off the record.

24          (Off the record.)

25   / / /

DEBORAH JAY, Ph.D. –   12/30/2015

```
 1    BY MR. BOWLER:
 2         Q.      Where in the -- strike the question.
 3                 Could you describe -- why did you use two of
 4    the trailers?
 5         A.      Because ordinarily, when one does -- chose an
 6    advertisement in Lanham Act surveys, one shows it twice
 7    and so I thought rather than showing the same trailer
 8    twice, it would be best to show the trailer -- one
 9    trailer for the series premiere or the first season and
10    then another trailer for the second season.  So I -- it
11    was consistent with the standard way that advertisements
12    are shown in Lanham Act surveys.
13         Q.      Could you have used a -- one of the video
14    trailers as a stimulus and then as a second stimulus
15    something else like a screenshot of the -- a show's
16    advertisement?
17                 MS. LENS:  Incomplete hypothetical.
18                 You can answer.
19                 THE WITNESS:  Again, I think what I did was
20    the most appropriate and it captured what the largest
21    percentage of potential consumers would be exposed to.
22    Plus my understanding is that Empire Distribution
23    objects to the television series and I believe that the
24    trailers best characterized the television series.
25    / / /
```

DEBORAH JAY, Ph.D. – 12/30/2015

Page 20

1   BY MR. BOWLER:

2       Q.     Do you know if Empire Distribution objects to

3   the Empire series music?

4              MS. LENS:  Objection.  Vague and ambiguous.

5              You can answer.

6              THE WITNESS:  My understanding is that Empire

7   Distribution objects to the television series and

8   anything associated with the television series.

9   BY MR. BOWLER:

10      Q.     Did you consider using as a stimulus the

11  Empire series music, the compilation CD?

12             MS. LENS:  Objection.  Vague and ambiguous.

13  Incomplete hypothetical.

14             You can answer.

15  BY MR. BOWLER:

16      Q.     Do you understand the question?

17      A.     Are you talking about the Empire television

18  series soundtrack?

19      Q.     Correct.

20      A.     I considered all the advertising as well as

21  materials associated with the television series, but I

22  selected what I thought would have the largest exposure,

23  that the most people would be exposed to.  And so I

24  believe that the trailers reflect the content of the

25  series and that the most people would be exposed to the

1   series, and therefore the trailers represented the best

2   stimuli.

3          Furthermore, I understand that people who

4   might buy products associated with the television show

5   would most likely be exposed to the television show

6   first, therefore it makes sense to show them something

7   that reflects the content of the show.

8       Q.    Did you make an assumption that most people

9   would be exposed to the Empire series show before being

10  exposed to the series music?

11      A.    It's my general understanding that people who

12  buy soundtracks, whether it's for a play or a movie or a

13  television show, are often viewers of the play, the

14  television show, or the movie, that that -- that what

15  comes first often -- and that there are more people

16  exposed to the television series than the soundtrack.

17      Q.    Do you know if Fox releases individual songs

18  following the show, other than in a compilation format?

19          MS. LENS:  Objection.  Vague and ambiguous.

20  Assumes facts not in evidence.

21          You can answer.

22  BY MR. BOWLER:

23      Q.    The question was, do you know if they do that?

24          MS. LENS:  Same objections.

25          THE WITNESS:  I don't recall whether it's

DEBORAH JAY, Ph.D. –  12/30/2015

Page 22

```
 1    albums or individual songs.  I don't recall.
 2    BY MR. BOWLER:
 3         Q.    Do you know if consumers can purchase an
 4    individual Empire series song as they've heard it on the
 5    radio without ever having seen the show before?
 6         A.    My understanding is that people can purchase
 7    soundtracks or songs related to a television series
 8    without having seen the television series, but that far
 9    fewer people purchase soundtracks or songs associated
10    with a television series.  In other words, it's a subset
11    of the overall viewership and that the majority of the
12    people who purchase songs or soundtracks would be
13    viewers.  So that's my understanding.
14         Q.    In what context would respondents typically
15    see trailers for a TV show?
16              MS. LENS:  Objection.  Overbroad.  Incomplete
17    hypothetical.  Calls for speculation.
18              You can answer.
19              THE WITNESS:  Well, you see trailers on
20    television, but the trailers contain clips from the show
21    so they also are generalizable to the show.  And if you
22    look at some of Empire's advertising other, for example,
23    the billboards, they contain the same information that's
24    in the trailers, even the same themes.  So there's a lot
25    of similarity between the trailers and at least some of
```

DEBORAH JAY, Ph.D. - 12/30/2015

```
1    the advertising, posters, billboards, as well as the
2    content of the show.  The theme of, you know, they
3    mention the series, they mention "power," "family," "the
4    battle begins."
5    BY MR. BOWLER:
6        Q.    Would respondents typically see trailers for a
7    TV show in the process of watching another TV show?
8             MS. LENS:  Objection.  Overbroad.  Incomplete
9    hypothetical.
10            You can answer.
11            THE WITNESS:  Again, trailers -- I don't know
12   all of the places that people would see the trailers.
13   I've seen trailers for television shows in a movie
14   theater, not just on television.  I -- it's just my
15   understanding that it was the most representative of the
16   content of the show.  And also, most people would be
17   exposed to either the trailers or the show relative to
18   other advertising or products associated with the show.
19   BY MR. BOWLER:
20       Q.    Would respondents also see trailers for a TV
21   show when they're actively searching for the show's
22   trailers?
23            MS. LENS:  Objection.  Overbroad.  Incomplete
24   hypothetical.  Calls for speculation.
25            You can answer.
```

DEBORAH JAY, Ph.D. -  12/30/2015

Page 24

1          THE WITNESS:  I don't exactly know what kind

2     of search you're talking about.  I mean, you can go on

3     the Fox website and watch trailers, you can watch

4     trailers on YouTube, you can -- you know, there's just a

5     variety of venues in which you can be exposed to

6     different kinds of information.  But the point is the

7     content of the trailer not only reflects the content of

8     the television series, but it also reflects the content

9     of other advertising for the television series.

10    BY MR. BOWLER:

11        Q.    Assume that -- assume that trailers for the

12    Empire TV series could be found on YouTube or Google, a

13    Google search.  In either situation, could respondents

14    have been exposed to other products or search results

15    that contain the word "Empire"?

16          MS. LENS:  Objection.  Incomplete

17    hypothetical.

18    BY MR. BOWLER:

19        Q.    Or browsing?

20          MS. LENS:  Calls for speculation.  You can

21    answer.

22          THE WITNESS:  I am aware that there are a lot

23    of third party uses of the word "Empire" both in the

24    music and the entertainment industry, so a search could

25    show the movie, Empire Records, it could show a variety

1          I, JANIS JENNINGS, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were placed under oath; that a verbatim

7     record of the proceedings was made by me using machine

8     shorthand which was thereafter transcribed under my

9     direction; further that the foregoing is an accurate

10    transcription thereof.

11         I further certify that I am neither

12    financially interested in the action nor a relative or

13    employee of any attorney or any of the parties.

14         IN WITNESS WHEREOF, I have this date

15    subscribed my name.

16

17    Dated:   December 31, 2015

18

19    _____

20    JANIS JENNINGS

21    CSR No. 3942, CLR, CCRR

22

23

24

25

                                                          87

EXHIBIT 27
29

# EXHIBIT 28

| To: | Empire Distribution, Inc. (trademarks@troutmansanders.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 86590365 - EMPIRE - 247036.1 |
| Sent: | 7/17/2015 3:18:26 PM |
| Sent As: | ECOM119@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION SERIAL NO.** 86590365

**MARK:**     EMPIRE

**CORRESPONDENT ADDRESS:**
  AUSTIN PADGETT
  Troutman & Sanders
  600 Peachtree St NE Ste 5200
  Atlanta, GA 30308-2216

**APPLICANT:** Empire Distribution, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
  247036.1
**CORRESPONDENT E-MAIL ADDRESS:**
  trademarks@troutmansanders.com

# *86590365*

**GENERAL TRADEMARK INFORM/**
http://www.uspto.gov/trademarks/inde

VIEW YOUR APPLICATION FILE

## SUSPENSION NOTICE: NO RESPONSE NEEDED

**ISSUE/MAILING DATE: 7/17/2015**

The trademark examining attorney is suspending action on the application for the reason stated below.
*See* 37 C.F.R. §2.67; TMEP §§716 *et seq.*

**PRIOR-FILED PENDING APPLICATION FOUND:** The trademark examining attorney has
searched the USPTO's database of registered and pending marks and has found no similar registered
marks that would bar registration under Trademark Act Section 2(d). TMEP §704.02; *see* 15 U.S.C.
§1052(d). However, a mark in a prior-filed pending application may present a bar to registration of
applicant's mark.

The effective filing date of the pending application identified below precedes the filing date of
applicant's application.   If the mark in the referenced application registers, applicant's mark may be
refused registration under Section 2(d) because of a likelihood of confusion with that registered mark. *See*

EXHIBIT 28
30

15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.*  Therefore, action on this application is suspended until the earlier-filed referenced application is either registered or abandoned.  37 C.F.R. §2.83(c).  A copy of information relevant to this referenced application is attached.

- Application Serial No(s). 86498111

The USPTO will periodically conduct a status check of the application to determine whether suspension remains appropriate, and the trademark examining attorney will issue as needed an inquiry letter to applicant regarding the status of the matter on which suspension is based.  TMEP §§716.04, 716.05.  Applicant will be notified when suspension is no longer appropriate.  *See* TMEP §716.04.

No response to this notice is necessary; however, if applicant wants to respond, applicant should use the "Response to Suspension Inquiry or Letter of Suspension" form online at  http://teasroa.uspto.gov/rsi/rsi.

**RESPONSE GUIDELINES**

To expedite prosecution of the application, applicant is encouraged to file its response to this Office action online via the Trademark Electronic Application System (TEAS), which is available at http://www.uspto.gov/trademarks/teas/index.jsp.  If applicant has technical questions about the TEAS response to Office action form, applicant can review the electronic filing tips available online at http://www.uspto.gov/trademarks/teas/e_filing_tips.jsp and e-mail technical questions to TEAS@uspto.gov.

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney.  All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.  Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights.  *See* TMEP §§705.02, 709.06.

**Note:** The Trademark Status and Document Retrieval (TSDR) database on the USPTO website at http://tsdr.uspto.gov/ is available 24 hours a day, 7 days a week, and provides status information about trademark and service mark applications and registrations. To view this information, enter the application serial number or registration number and click on "Status."

/Toby E. Bulloff/
Trademark Examining Attorney
Law Office 119
(571) 270-1531
toby.bulloff@uspto.gov

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep

EXHIBIT 28
31

a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the Trademark Electronic Application System (TEAS) form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

EXHIBIT 28
32

**Print: Jul 17, 2015**                    **86498111**

**DESIGN MARK**

**Serial Number**
86498111

**Status**
NOTICE OF UNRESPONSIVE AMENDMENT - MAILED

**Word Mark**
AUDIO EMPIRE

**Standard Character Mark**
Yes

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Brunston, Roy INDIVIDUAL UNITED STATES 105 Herman St Hackensack NEW JERSEY 07601

**Owner**
Marcus, Dave INDIVIDUAL UNITED STATES 56 Irving Place Garfield NEW JERSEY 07026

**Owner**
Manfre, Chris INDIVIDUAL UNITED STATES 56 Irving Place Garfield NEW JERSEY 07026

**Goods/Services**
Class Status -- ACTIVE.  IC 041.  US  100 101 107.  G & S:
Entertainment rendered by a musical group, namely, entertainment in
the nature of live visual and audio performances by a musical group;
live performances by a musical group; Providing an Internet website
portal in the field of music; Entertainment services, namely, live,
televised and movie appearances by a musical group; Entertainment
services, namely, personal appearances by a musical group.

**Filing Date**
2015/01/08

**Examining Attorney**
DELGIZZI, RONALD E.

**Attorney of Record**

-1-

EXHIBIT 28
33

Print: Jul 17, 2015                    86498111

Mitesh Patel

-2-

EXHIBIT 28
34

# AUDIO EMPIRE

EXHIBIT 28
35

| To: | Empire Distribution, Inc. (trademarks@troutmansanders.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 86590365 - EMPIRE - 247036.1 |
| Sent: | 7/17/2015 3:18:27 PM |
| Sent As: | ECOM119@USPTO.GOV |
| Attachments: | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## IMPORTANT NOTICE REGARDING YOUR U.S. TRADEMARK APPLICATION

### USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED ON **7/17/2015** FOR U.S. APPLICATION SERIAL NO.86590365

Please follow the instructions below:

**(1) TO READ THE LETTER:** Click on this link or go to http://tsdr.uspto.gov/, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2) QUESTIONS:** For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney. For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## WARNING

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations. These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document. Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation. All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov." For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

EXHIBIT 28
36

# EXHIBIT 29

| To: | Empire Distribution, Inc. (trademarks@troutmansanders.com) |
| Subject: | U.S. TRADEMARK APPLICATION NO. 86590402 - EMPIRE - 247036.1 |
| Sent: | 7/17/2015 3:17:52 PM |
| Sent As: | ECOM119@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
#### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION SERIAL NO.**  86590402

**MARK:**     EMPIRE

**\*86590402\***

**CORRESPONDENT ADDRESS:**
   AUSTIN PADGETT
   Troutman & Sanders
   600 Peachtree St NE Ste 5200
   Atlanta, GA 30308-2216

**GENERAL TRADEMARK INFORM/**
http://www.uspto.gov/trademarks/inde

VIEW YOUR APPLICATION FILE

**APPLICANT:** Empire Distribution, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
   247036.1
**CORRESPONDENT E-MAIL ADDRESS:**
   trademarks@troutmansanders.com

### SUSPENSION NOTICE: NO RESPONSE NEEDED

**ISSUE/MAILING DATE:** 7/17/2015

The trademark examining attorney is suspending action on the application for the reason stated below. *See* 37 C.F.R. §2.67; TMEP §§716 *et seq.*

**PRIOR-FILED PENDING APPLICATION FOUND:**  The trademark examining attorney has searched the USPTO's database of registered and pending marks and has found no similar registered marks that would bar registration under Trademark Act Section 2(d).  TMEP §704.02; *see* 15 U.S.C. §1052(d).  However, a mark in a prior-filed pending application may present a bar to registration of applicant's mark.

The effective filing date of the pending application identified below precedes the filing date of applicant's application.   If the mark in the referenced application registers, applicant's mark may be refused registration under Section 2(d) because of a likelihood of confusion with that registered mark. *See*

EXHIBIT 29
37

15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.* Therefore, action on this application is suspended until the earlier-filed referenced application is either registered or abandoned. 37 C.F.R. §2.83(c). A copy of information relevant to this referenced application is attached.

  - Application Serial No(s). 86498111

The USPTO will periodically conduct a status check of the application to determine whether suspension remains appropriate, and the trademark examining attorney will issue as needed an inquiry letter to applicant regarding the status of the matter on which suspension is based. TMEP §§716.04, 716.05. Applicant will be notified when suspension is no longer appropriate. *See* TMEP §716.04.

No response to this notice is necessary; however, if applicant wants to respond, applicant should use the "Response to Suspension Inquiry or Letter of Suspension" form online at  http://teasroa.uspto.gov/rsi/rsi.

**RESPONSE GUIDELINES**

To expedite prosecution of the application, applicant is encouraged to file its response to this Office action online via the Trademark Electronic Application System (TEAS), which is available at http://www.uspto.gov/trademarks/teas/index.jsp. If applicant has technical questions about the TEAS response to Office action form, applicant can review the electronic filing tips available online at http://www.uspto.gov/trademarks/teas/e_filing_tips.jsp and e-mail technical questions to TEAS@uspto.gov.

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney. All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06.

**Note:** The Trademark Status and Document Retrieval (TSDR) database on the USPTO website at http://tsdr.uspto.gov/ is available 24 hours a day, 7 days a week, and provides status information about trademark and service mark applications and registrations. To view this information, enter the application serial number or registration number and click on "Status."

/Toby E. Bulloff/
Trademark Examining Attorney
Law Office 119
(571) 270-1531
toby.bulloff@uspto.gov

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/. Please keep

EXHIBIT 29
38

a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the Trademark Electronic Application System (TEAS) form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

EXHIBIT 29
39

**Print: Jul 17, 2015**                     **86498111**

**DESIGN MARK**

**Serial Number**
86498111

**Status**
NOTICE OF UNRESPONSIVE AMENDMENT - MAILED

**Word Mark**
AUDIO EMPIRE

**Standard Character Mark**
Yes

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Brunston, Roy INDIVIDUAL UNITED STATES 105 Herman St Hackensack NEW
JERSEY 07601

**Owner**
Marcus, Dave INDIVIDUAL UNITED STATES 56 Irving Place Garfield NEW
JERSEY 07026

**Owner**
Manfre, Chris INDIVIDUAL UNITED STATES 56 Irving Place Garfield NEW
JERSEY 07026

**Goods/Services**
Class Status -- ACTIVE.  IC 041.  US  100 101 107.  G & S:
Entertainment rendered by a musical group, namely, entertainment in
the nature of live visual and audio performances by a musical group;
live performances by a musical group; Providing an Internet website
portal in the field of music; Entertainment services, namely, live,
televised and movie appearances by a musical group; Entertainment
services, namely, personal appearances by a musical group.

**Filing Date**
2015/01/08

**Examining Attorney**
DELGIZZI, RONALD E.

**Attorney of Record**

-1-

EXHIBIT 29
40

**Print: Jul 17, 2015**                    **86498111**

Mitesh Patel

-2-

EXHIBIT 29
41

# AUDIO EMPIRE

EXHIBIT 29
42

| To: | Empire Distribution, Inc. (trademarks@troutmansanders.com) |
| Subject: | U.S. TRADEMARK APPLICATION NO. 86590402 - EMPIRE - 247036.1 |
| Sent: | 7/17/2015 3:17:53 PM |
| Sent As: | ECOM119@USPTO.GOV |
| Attachments: | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## IMPORTANT NOTICE REGARDING YOUR U.S. TRADEMARK APPLICATION

### USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED ON 7/17/2015 FOR U.S. APPLICATION SERIAL NO. 86590402

Please follow the instructions below:

**(1)  TO READ THE LETTER:** Click on this link or go to http://tsdr.uspto.gov/, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2)  QUESTIONS:** For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney.  For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## WARNING

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations. These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document. Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation. All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov."  For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

EXHIBIT 29
43

EXHIBIT 29
44

# EXHIBIT 30

| To: | Empire Distribution Inc. (trademarks@troutmansanders.com) |
| --- | --- |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 86476822 - EMPIRE DISTRIBUTION - 247036.1 EMP |
| **Sent:** | 10/19/2015 7:58:47 PM |
| **Sent As:** | ECOM101@USPTO.GOV |
| **Attachments:** | |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
#### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION SERIAL NO.** 86476822

**MARK:** EMPIRE DISTRIBUTION

# *86476822*

**CORRESPONDENT ADDRESS:**
  Michael D. Hobbs, Jr., Esq.
  Troutman Sanders LLP
  600 Peachtree Street NE, Suite 5200
  Atlanta GA 30308

**GENERAL TRADEMARK INFORMATION:**
http://www.uspto.gov/trademarks/index.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Empire Distribution Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
  247036.1 EMP
**CORRESPONDENT E-MAIL ADDRESS:**
  trademarks@troutmansanders.com

## SUSPENSION NOTICE: NO RESPONSE NEEDED

**ISSUE/MAILING DATE:** 10/19/2015

This Office action is in response to applicant's communication filed on 5 October 2015.

The trademark examining attorney is suspending action on the application for the reason(s) stated below. *See* 37 C.F.R. §2.67; TMEP §§716 *et seq.*

**PENDING CIVIL PROCEEDING(S):** The pending civil proceeding(s) below pertains to (1) a registered mark that conflicts with applicant's mark under Trademark Act Section 2(d), (2) a mark in a pending application(s) that could conflict with applicant's mark under Section 2(d) if it registers, and/or (3) the registrability of applicant's mark. *See* 15 U.S.C. §1052; 37 C.F.R. §2.83; TMEP §§716.02(a), (c)-(d), 1208 *et seq.* Because the civil proceeding(s) pertains to an issue that could directly affect whether applicant's mark can be registered, action on this application is suspended pending termination of the civil proceeding(s). *See* 37 C.F.R. §2.67; TMEP §§716.02(a), (c)-(d).

EXHIBIT 30
45

- Cancellation No(s). re: U.S. Registration No. 3919554

**REFUSAL(S)/REQUIREMENT(S) CONTINUED AND MAINTAINED:**  The following
refusal(s)/requirement(s) is/are continued and maintained:

### Section 2(d) Refusal – With Respect to U.S. Registration No. 3919554 – MAINTAINED
Pending the outcome of the above-referenced cancellation proceeding, the refusal under Section 2(d),
citing U.S. Registration No. 3919554, is MAINTAINED.

### Section 2(d) Refusal – With Respect to U.S. Registration No. 3586140 – WITHDRAWN
As U.S. Registration No. 3586140 has been cancelled, the refusal under Section 2(d) citing it is
WITHDRAWN.

### Recitation of Services -- REPEATED
The applicant's argument has been carefully considered.   However, the examining attorney remains
unpersuaded.  Reference to a single registration that has been registered almost five years ago is
insufficient to overcome the requirement for clarification of the applicant's recitation of services.
Therefore, the requirement for clarification of the identification of services because it is too broad and
could include services classified in other international classes is REPEATED.  *See* TMEP §§1402.01,
1402.03.  "Retail stores services and On-line retail store services featuring sound recordings, audio and
audio-visual recordings, audio and audio-visual DVDs, and audio and audio-visual CD-ROMs" in Class
35; and/or "Delivery of digital music by electronic transmission, via wired and wireless networks
including mobile phone and wireless device carriers, all of the above excluding the delivery of custom-
created content to the customers that commissioned the creation of such content; Streaming of videos,
video clips, films and film footage via a global computer network, all of the above excluding the delivery
of custom-created content to the customers that commissioned the creation of such content; Virtual chat
rooms established via text messaging pertaining to music, videos and films via wired and wireless
networks including mobile phone and wireless device carriers, all of the above excluding the delivery of
custom-created content to the customers that commissioned the creation of such content" in Class 38.

For assistance with identifying and classifying goods and services in trademark applications, please see
the USPTO's online searchable  *U.S. Acceptable Identification of Goods and Services Manual*  at
http://tess2.uspto.gov/netahtml/tidm.html.  *See* TMEP §1402.04.

An applicant may only amend an identification to clarify or limit the services, but not to add to or broaden
the scope of the services.  37 C.F.R. §2.71(a); *see* TMEP §§1402.06 *et seq.*, 1402.07.

### Classification
The applicant must properly classify the amended services in the correct International Class(es).  *See* 37
C.F.R. §§2.32(a)(7), 2.85; TMEP §§1401.02(a), 1401.03(b).

### Possible Multi-Class Application
The application identifies goods and/or services that may be classified in more than 1 class; however,
applicant submitted a fee sufficient for only 1 class.  In a multiple-class application, a fee for each class is
required.  37 C.F.R. §2.86(a)(2), (b)(2); TMEP §§810.01, 1403.01.

Therefore, applicant must either (1) restrict the application to the number of classes covered by the fees
already paid, or (2) submit the fees for each additional class.

EXHIBIT 30
46

The fees for adding classes to a regular TEAS application are $325 per class when the fee is paid using the Trademark Electronic Application System (TEAS) and $375 per class when the fee is paid in a paper submission. *See* 37 C.F.R. §2.6(a)(1)(i)-(ii); TMEP §§810, 1403.02(c).

The application identifies goods and/or services in more than one international class; therefore, applicant must satisfy all the requirements below for each international class based on use in commerce under Section 1(a):

(1)   List the goods and/or services by their international class number in consecutive numerical order, starting with the lowest numbered class.

(2)   Submit a filing fee for each international class not covered by the fee(s) already paid (view the USPTO's current fee schedule at http://www.uspto.gov/trademarks/tm_fee_info.jsp). The application identifies goods and/or services that may be classified in more than one class; however, applicant submitted a fee sufficient for only 1 class. Applicant must either submit the filing fees for the classes not covered by the submitted fees or restrict the application to the number of classes covered by the fees already paid.

(3)   Submit verified dates of first use of the mark anywhere and in commerce **for each international class**.

(4)   Submit a specimen for each international class. The current specimen is acceptable for class 38; and applicant needs a specimen for any additional class(es).

Examples of specimens for goods include tags, labels, instruction manuals, containers, and photographs that show the mark on the actual goods or packaging, or displays associated with the actual goods at their point of sale. Webpages may also be specimens for goods when they include a picture or textual description of the goods associated with the mark and the means to order the goods.

Examples of specimens for services include advertising and marketing materials, brochures, photographs of business signage and billboards, and website printouts that show the mark used in the actual sale, rendering, or advertising of the services.

(5)   Submit a verified statement that "**The specimen was in use in commerce on or in connection with the goods and/or services listed in the application at least as early as the filing date of the application.**"

*See* 15 U.S.C. §§1051(a), 1112; 37 C.F.R. §§ 2.32(a)(6)-(7), 2.34(a)(1), 2.86(a); TMEP §§904, 1403.01, 1403.02(c).

For an overview of the requirements for a Section 1(a) multiple-class application and how to satisfy the requirements online using the Trademark Electronic Application System (TEAS) form, please go to http://www.uspto.gov/trademarks/law/multiclass.jsp.

The USPTO will periodically conduct a status check of the application to determine whether suspension remains appropriate, and the trademark examining attorney will issue as needed an inquiry letter to applicant regarding the status of the matter on which suspension is based. TMEP §§716.04, 716.05. Applicant will be notified when suspension is no longer appropriate. *See* TMEP §716.04.

EXHIBIT 30
47

No response to this notice is necessary; however, if applicant wants to respond, applicant should use the "Response to Suspension Inquiry or Letter of Suspension" form online at  http://teasroa.uspto.gov/rsi/rsi.

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney.  All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights.  *See* TMEP §§705.02, 709.06.

/Katherine Stoides/
Examining Attorney
Law Office 101
571-272-9230
katherine.stoides@uspto.gov (unofficial use only)

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the Trademark Electronic Application System (TEAS) form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

EXHIBIT 30
48

| To: | Empire Distribution Inc. (trademarks@troutmansanders.com) |
| Subject: | U.S. TRADEMARK APPLICATION NO. 86476822 - EMPIRE DISTRIBUTION - 247036.1 EMP |
| Sent: | 10/19/2015 7:58:48 PM |
| Sent As: | ECOM101@USPTO.GOV |
| Attachments: | |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## IMPORTANT NOTICE REGARDING YOUR
## U.S. TRADEMARK APPLICATION

### USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
### ON 10/19/2015 FOR U.S. APPLICATION SERIAL NO. 86476822

Please follow the instructions below:

**(1) TO READ THE LETTER:** Click on this link or go to http://tsdr.uspto.gov/, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2) QUESTIONS:** For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney. For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## WARNING

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations. These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document. Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation. All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov." For more information on how to handle private company solicitations, see

EXHIBIT 30
49

http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

EXHIBIT 30
50

# EXHIBIT 31

# FILED SEPARATELY UNDER SEAL

# PURSUANT TO L.R. 79-5.2.2

EXHIBIT 31
51-56

# EXHIBIT 32

# FILED SEPARATELY UNDER SEAL PURSUANT TO L.R. 79-5.2.2

EXHIBIT 32
57-70

# EXHIBIT 33

# FILED SEPARATELY UNDER SEAL
# PURSUANT TO L.R. 79-5.2.2

EXHIBIT 33
71-72